IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **Benjamin George,** | ) | |
| | ) | Case No. 20-cv-06911 |
| Plaintiff, | ) | |
| | ) | Hon. Judge Blakey |
| v. | ) | |
| | ) | Hon. Magistrate Judge Jantz |
| **City of Chicago, James Gardiner, Charles Sikanich, Chicago Police Officers Solomon Ing, Peter Palka, Daniel Smith, Bilos, Joseph Ferrara, Sergio Corona, Ortiz, and Unknown Chicago Police Officers,** | ) ) ) ) ) ) ) | |
| Defendants. | ) | **JURY TRIAL DEMANDED** |

### DEFENDANTS JAMES GARDINER'S AND CHARLES SIKANICH'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Defendants James Gardiner ("Gardiner") and Charles Sikanich ("Sikanich"), (collectively, "Movant's"), by and through their attorney, Thomas D. Carroll of Thomas R. Raines Attorney at Law, LLC, hereby move to dismiss Counts I-V of Plaintiffs' Complaint (the "Complaint"), with prejudice, pursuant Federal Rule of Civil Procedure 12(b)(6). In support of the motion, Defendants state as follows:

### INTRODUCTION

Plaintiff Benjamin George ("Plaintiff") advances his Complaint against the individual Movants on the strength of an implausible set of allegations intended to conjure a malicious, apparently improvised, conspiracy among the Movants and the defendant police officers (the "Officers") to deprive him of various civil rights. Plaintiff offers minimal allegations of misconduct by the Movants, none of which rise to the level of state action on their parts, relying instead on innuendo, rote recitations, bare assertions, and allegations based on "information and

1

belief." Stripped of innuendo and unwarranted assumptions, taking the well-pleaded allegations as true, the Plaintiff alleges that Sikanich reported a stolen phone which was in Plaintiff's possession for most of the day, filed a criminal complaint about the phone, and spoke with Plaintiff's roommate, and that Gardiner spoke with Plaintiff's roommate. The rest of the Complaint pertaining to the Movants is unsupported speculation. Movants should not have to spend time and money disprove a speculative conspiracy theory designed to impose liability on them for Plaintiff's subsequent personal misfortunes. Counts I-V are inadequate as matters of law, and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## LEGAL STANDARDS

### FRCP 12(b)(6)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint. See, e.g., *Bell v. City of Country Club Hills*, 841 F.3d 713, 716 (7th Cir. 2016). In ruling on a Rule 12(b)(6) motion, the court accepts all well-pleaded facts in a plaintiff's complaint as true and views them in the light most favorable to the plaintiff. See *United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 839 (7th Cir. 2018). To survive a motion to dismiss, the complaint must contain sufficient factual information to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also, e.g., Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (plaintiffs cannot satisfy the notice pleading rule by "merely parrot[ing] the

statutory language of the claims that they are pleading"; rather, they must provide "some specific facts to ground those legal claims").

42 U.S.C. Sec. 1983

Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ….

42 U.S.C. § 1983.

"[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). In order to state a claim under Section 1983, a plaintiff must allege that the defendant(s) deprived him of a right secured by the Constitution or laws of the United States, and that the defendant(s) acted under color of state law. *Starnes v. Capital Cities Media, Inc.,* 39 F.3d 1394, 1396 (7th Cir.1994).

**ALLEGATIONS OF FACT PERTAINING TO MOVANTS**

Sikanich is a Ward Superintendent for the City of Chicago's (the "City's") 45th Ward. (Cmplt., ¶ 8). Gardiner is the City's 45th Ward Alderman, and supervises Sikanich who is his Ward Superintendent. (Cmplt., ¶¶ 8-9).

On the morning of August 19, 2019, Sikanich left his cell phone at a 7/11 store, which Plaintiff later discovered and picked-up. (Cmplt., ¶¶ 15-16). Sikanich eventually noticed the missing phone and reported to Gardiner that he had lost it. (Cmplt., ¶ 22). Gardiner told Sikanich to report the phone as stolen to the police. (Cmplt., ¶ 23). Sikanich reported the phone stolen to the police. (Cmplt., ¶ 24). Officers Corona and Ortiz went to the home of Plaintiff's roommate

3

and inquired about the phone's whereabouts. (Cmplt., ¶ 26). Over the phone, Officer Ortiz instructed Plaintiff to turn-in the phone to the 16th District Police Station. (Cmplt., ¶27).

At a later, unspecified time, Sikanich and Gardiner each made separate trips to Plaintiff's roommate's home and, "upon information and belief," asked Plaintiff's roommate why he allowed Plaintiff to live there. (Cmplt., ¶¶ 28-29). Sikanich drove around Plaintiff's neighborhood for an unspecified amount of time in his City truck. (Cmplt., ¶30). "Upon information and belief," Gardiner called George and accused him of stealing Sikanich's phone. (Cmplt., ¶ 33). Plaintiff informed the unidentified caller (presumed to be Gardiner) that he was taking the phone to the 16th District Police Station. (Cmplt., ¶ 34).

Plaintiff went to the police station and gave Sikanich's phone to an unknown officer. (Cmplt. ¶ 43). Sikanich arrived at the station and walked into the back with several officers. (Cmplt., ¶ 45). Plaintiff was being detained at the time of Sikanich's arrival. (Cmplt., ¶ 45). Sikanich then swore out a criminal complaint against Plaintiff for stealing his phone, and Plaintiff was arrested. (Cmplt., ¶¶ 46-47). Plaintiff was charged with theft of lost property, released the next day, and the case against him was dismissed 21 days later, after none of the arresting officers nor Sikanich showed up to complain in court. (Cmplt., ¶¶ 57, 59, 60).

Plaintiff alleges that as a result of Sikanich's report that his phone was stolen (which he was directed to report by Gardiner), Plaintiff was arrested and prosecuted, causing him to lose business income, employees, his housing at the time, and eventually causing him to need inpatient treatment at a psychiatric hospital. (Cmplt., ¶¶ 66-69).

## ARGUMENT

I.  <u>The Complaint's Allegations Pertaining to Movants Fail the *Iqbal* Plausibility Test.</u>

Counts I-V of the Complaint should be dismissed for failure to meet the threshold requirement of "plausibility" under *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Plaintiff sets forth a fantastical sequence of events by which Movants conspired to deprive him of his civil rights, apparently without prompting of any kind, for the mere act of picking-up and seeking to return a misplaced phone to its owner.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly,* 550 U.S. at 555). "Determining whether a complaint states a plausible claim for relief will… be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. "[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*.

Virtually all of the allegations of wrongful conduct by Sikanich and Gardiner are speculative, or rely on legal conclusions unsupported by well-pleaded baseline facts. Plaintiff

asserts that Sikanich was aware that the phone was lost but not stolen, apparently from the moment he realized it was missing. (Cmplt., ¶ 22). He alleges that Sikanich's boss, Gardiner, insisted that the phone had been stolen and demanded that he report it to police as such, before undertaking a "de facto vigilante police" investigation of the matter, borne of "personal animus." (Cmplt., ¶¶ 23, 90, 92). These actions eventually resulted in Plaintiff's arrest and alleged subsequent damages. (Cmplt., ¶¶ 22, 23, 90, 92). Plaintiff asserts that Movants conspired with the Officers in order concoct a false police report indicating that the phone was stolen, rather than missing, even after Plaintiff had willingly surrendered the phone to police, even after Plaintiff had personally spoken with Gardiner ("upon information and belief") and informed him that he planned to return the phone. (Cmplt., ¶¶ 45-46).

There are myriad problems with the Complaint, but the most basic one is that it is not plausible, based on the bare facts alleged. The only well-pleaded facts of the Complaint pertaining to Sikanich are that he lost his phone, reported it stolen, went to Plaintiff's home at some point and tried to get it back, asked why his roommate allowed him to live there, and swore out a criminal complaint while Plaintiff was already detained at the police station. The only well-pleaded facts of the Complaint pertaining to Gardiner are that he went to Plaintiff's home at some point and tried to get Sikanich's phone back, asked why his roommate allowed him to live there, and possibly spoke to the Plaintiff on the phone and asked or told him to turn Sikanich's phone over to police.

The Court is bound to accept the sparse allegations described above as true, but should not throw out common sense or disregard the context of the allegations while assessing the overall plausibility of the Complaint. *Iqbal*, 556 U.S. at 679. The fact that Plaintiff has couched these basic and completely understandable actions by the Movants as part of a malicious and

hastily-concocted conspiracy to deprive the Plaintiff, an apparent stranger, of his civil rights should not distract the court from the paucity of tangible actions directed toward the Plaintiff by either Movant. It is not impossible that the Movants undertook their courses of action in the manner and for the reasons Plaintiff speculates. But that is not the *Iqbal* standard. Plausibility is the standard, and Plaintiff's Complaint, as it pertains to the Movants, is not plausible. Counts I-V, as they pertain to the Movants, should be dismissed.

      II.      <u>The Allegations Against Movants are not Actions Taken "Under Color of Law."</u>

Section 1983 only pertains to actions of state (or local) actors taken under "color of state law." None of the Movants' actions alleged in the Complaint were taken in their official capacities. Even if Plaintiff's allegations were plausible as a whole, they would fail that most basic test for causes of action under Section 1983. Therefore, Counts I – V should be dismissed.

Plaintiff repeatedly asserts that the actions taken by Gardiner and Sikanich were taken in their respective capacities as City of Chicago officials. But he does not bother to articulate how or why it would be an official act for an alderman or his deputy, a streets and sanitation worker, to misreport report a cell phone as stolen, visit a person's residence and yell at his roommate while encouraging him to kick the person out, swear out a false criminal complaint, engage in a "vigilante" police investigation, or conspire with police officers (who are not prosecutors) to have someone maliciously prosecuted. Some of these actions are innocuous. Those that aren't would be abuses of power outside the ambit of official duties. None is remotely connected to the legislative duties of an alderman, his deputy, or a streets and sanitation worker.

"[A]n action is taken under color of state law when it 'involves a misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.... As a result, acts by a state officer are not made under color of state

7

law unless they are related in some way to the performance of the duties of the state office.'" *Honaker v. Smith,* 256 F.3d 477, 484-85 (7th Cir. 2001) (citation omitted). "To establish an official policy or custom, [a plaintiff] must show that his constitutional deprivation was caused 'by (1) the enforcement of an express policy [of the state or locality], (2) a widespread practice that is so permanent and well settled as to constitute a custom or usage with the force of law, or (3) a person with final policymaking authority." *Wragg v. Village of Thornton,* 604 F.3d 464, 467 (7th Cir. 2010) (quoting *Latuszkin v. City of Chi.,* 250 F.3d 502, 504 (7th Cir. 2001)). "Under the Illinois Municipal Code, aldermen are elected members of the municipality's city council, and in that capacity serve a 'purely legislative' function." *Wilson v. Price*, 624 F.3d 389, 392 (7th Cir. 2010) (citing 65 Ill. Comp. Stat. § 5/6–4–6). "When officials possess no authority to act, [courts] have found that their conduct is outside the ambit of Section 1983." *Id*. (citing *Gibson v. City of Chicago,* 910 F.2d 1510, 1518 (7th Cir. 1990)).

Plaintiff does not even attempt to describe a rational relationship between Gardiner's alleged actions and his aldermanic duties. As an alderman serving a purely "legislative function," Gardiner had no power to direct the police to do anything, and whatever power he has to control his deputy's actions do not extend to the filing of false police reports. The moment an alderman undertakes to exercise executive authority, such as stepping into the shoes of police or directing them to take certain actions, he exceeds his authority as a legislator, and cannot be said to have acted under "color of state law." See *Wilson,* 624 F.3d at 392-394.

The analysis is even simpler for Sikanich, because Plaintiff effectively describes him as a servant of his boss's whims who filed a false police report on Gardiner's instruction. (Cmplt., ¶ 113). If there is no nexus between an alderman's duties and the filing of a false police report, directing the police to take certain actions, or engaging in a conspiracy to commit malicious

prosecution, there is certainly no nexus between the filing of a false report and the duties of an alderman's deputy/streets and sanitation worker. The only non-conclusory allegation of the Complaint relating to Sikanich's actions as a City employee is that he drove around Plaintiff's neighborhood in a City truck after speaking with Plaintiff's roommate. That is neither a tortious act, nor one that can support a claim under Section 1983.

Plaintiff may respond that private actors can be liable under Section 1983 "where they have been jointly engaged with public officers in the denial of civil rights." *Mirshak v. Joyce*, 652 F.Supp. 359 (N.D. Ill. 1987) (citing *Tarkowski v. Robert Bartlett Realty Co.,* 644 F.2d 1204, 1206 (7th Cir.1980)). However, "it is not sufficient… to allege that the defendants acted in concert or with a common goal." *Id.* "There must be allegations that the defendants directed themselves toward an unconstitutional action by virtue of a mutual understanding." *Id.* "Even where such allegations are made, they must further be supported by some factual allegations suggesting such a 'meeting of the minds.'" *Id.*

The Complaint is bereft of tangible factual allegations supporting a meeting of the minds between Sikanich and Gardiner, acting outside the scope of their official capacities, and the Officer defendants. The entire premise of a meeting of the minds hinges on a single vague allegation that one of the officers told Plaintiff he "wasn't going to arrest [him], but this person has power and I have bosses."[1] (Cmplt., ¶¶ 81, 91). Plaintiff alleges no underlying understanding on the officer's part, nor any facts indicating when, how, why or under what circumstances Gardiner and/or Sikanich conveyed their wishes that Plaintiff be arrested despite having willingly returned Sikanich's phone. Plaintiff does not allege that they had any motive for doing

---

[1] It is worth noting that Alderman Gardiner had been in office for a total of 174 days at the time he is alleged to have engaged in this abuse of his "power" to which the unnamed officer's "bosses" responded. This fact undercuts the plausibility of any conspiracy based on the Officers' fear of Gardiner's power.

so. The quote is not even specific about whom the officer was referring to by "this person" or his "bosses."

"Neither 'a bare allegation of conspiracy,' nor 'mere suspicion that persons adverse to the plaintiff had joined a conspiracy against him or her [is…] enough to survive a motion to dismiss for failure to state a claim." *Cooney v. Rossiter,* 583 F.3d 967, 971 (7th Cir. 2009). A plaintiff must indicate the nature of an alleged conspiratorial agreement. *Walker v. Thompson,* 288 F.3d 1005, 1007–08 (7th Cir. 2002). "[Courts] have repeatedly held that 'the mere act of furnishing information to law enforcement officers' does not constitute joint activity in an unconstitutional arrest." *Spiegel v. McClintic*, 916 F.3d 611, 616-617 (7th Cir. 2019) (quoting *Butler v. Goldblatt Bros.*, 589 F.2d 323, 327 (7th Cir. 1978)). Further, "the mere act of filing false police reports is not actionable under Section 1983." *Id*. at 617.

Plaintiff effectively concedes that Sikanich's and Gardiner's actions during the day – their only alleged actions premised on well-pleaded information – were taken outside their official capacities, by describing them as "de facto vigilante police officers" who took "a police investigation into their own hands." (Cmplt., ¶¶ 92, 107). While he couples those allegations with bare assertions that the actions were taken in their official capacities, Plaintiff surely recognizes that "de facto" police officers are not acting in any official capacity, and that "vigilantism" is at odds with lawful official behavior. *Wilson v. Price* is instructive. In *Wilson*, the court determined that a Harvey alderman who allegedly confronted and battered the plaintiff for failing to move vehicles during a snowstorm stepped out of his legislative shoes and into those of a private actor the moment he sought to make the plaintiff take a given action. *Wilson*, 624 F.3d 389, 392 ("Price crossed that line and entered the realm of law enforcement—which is wholly unrelated to the duties of a legislator—the moment he demanded that Wilson move the

cars."). Price could not be liable under Section 1983 because alderman are not police officers, and his only official duties were the legislative duties of an alderman.

Plaintiff has not alleged any actions by either Movant that can be plausibly tied to their respective official duties. Plaintiff has not alleged a conspiracy between Sikanich, Gardiner and the Officers to deprive him of constitutional rights with sufficient particularity. However egregious Plaintiff considers their actions, they were not actions "taken under color of state law," so Counts I – V of the Complaint must be dismissed with prejudice.

      III.    <u>Count III Fails Because It Does Not Sufficiently Plead an Underlying Tort.</u>

Even if Plaintiff had alleged state action by the Movants in any of the counts, he does not coherently allege a "conscience-shocking" tort or torts by the Movants underlying his claim that they violated his constitutional rights in Count III. It should be dismissed.

"The Supreme Court has held that state action that shocks the conscience is conduct which may be deemed 'arbitrary in the constitutional sense.'" *Jackson v. Indian Prairie School Dist. 204,* 653 F.3d 647, 654-655 (7th Cir. 2011) (quoting *County of Sacramento v. Lewis,* 523 U.S. 833, 846 (1998)). "Only 'the most egregious official conduct' will satisfy this stringent inquiry." *Id.* (quoting *Lewis*, 523 U.S. at 846). "We have previously noted that while the 'shocks the conscience' standard lacks precise measurement, only conduct falling towards the more culpable end of the tort law spectrum of liability will be found to shock the conscience. *Id*. at 655 (citing *King ex rel. King,* 496 F.3d at 818–19).

Plaintiff alleges that the Movants' respective actions were "willful, wanton and intentional" but he does not even name an intentional or reckless tort they are supposed to have committed. Count III is a recitation of the Complaint's prior conclusory allegations, framed by the assertion that Movants "worked to deprive" Plaintiff of various constitutional rights. The

11

only tort that is referenced in passing within the count is "interference with business relationships," but the allegations supporting that potential tort are so bare that they hardly warrant serious analysis.

If Plaintiff means to sustain a cause of action against Movants for a conscience-shocking deprivation of rights, he must coherently plead not only that Movants were acting in their official capacities (which is undercut by allegations of "taking a police investigation into their own hands" in paragraph 107), but that they committed one or more reckless or intentional torts against him such that he was deprived of rights. The allegation that Movants badgered his roommate, drove around in his neighborhood, and swore out a police report for "Theft of Lost or Mislaid Property," (after he had admittedly held onto Sikanich's phone all day while apparently knowing it belonged to Sikanich), do not meet the standard of "conduct towards the more culpable end of the tort spectrum" such that Count III should survive. Count III should be dismissed.

    IV.    <u>Counts I, II, IV and V Fail to State Coherent Claims and Should Be Dismissed</u>.

While Movants are defending this action in their individual capacities, they agree with the arguments pertaining to Counts I, II, IV and V set forth by the Officers in their Motion to Dismiss. See generally, <u>Dkt. 31</u>. Movants will not belabor the points raised in that motion, beyond observing that as those counts pertain to them, each count fails to allege a conspiracy between the Officers acting in their official capacities, including the power to investigate crimes and arrest suspects upon probable cause, and the Movants acting in their private capacities and, as alleged, well outside the scope of their respective duties as alderman and deputy.

A plaintiff "must plead and offer sufficient evidence to support a conspiracy between private and public actors in order to state a claim under Section 1983 against

12

the private party for malicious prosecution." *Davis v. Union Nat. Bank*, 46 F.3d 24 (7th Cir. 1994). Plaintiff alleges that the Movants cooperated among themselves in the filing of a "false" police report, despite the admission that Plaintiff picked-up Sikanich's phone and held on to it all day, and he alleges that the Officers took Sikanich's complaint while already in possession of the missing phone. But the Complaint fails to allege a coherent conspiracy premised on a meeting of the minds to prosecute him, and practically falls apart when confronted with the fact that none of the Defendants showed up to complain of him in court, resulting in the case's dismissal.

## CONCLUSION

Plaintiff's Complaint barely alleges any concrete actions by the Movants directed toward him. It relies on allegations made on "information and belief," loose characterizations and wild presumptions to make up for its lack of plausibility and failure to allege coherent causes of action under Section 1983. The Movants should be spared the time and expense of conducting discovery and proceeding in the case on a thin allegation of malicious conspiracy. Even before *Iqbal*, courts recognized that "[a] party may not cry 'conspiracy' and throw himself on the jury's mercy. *Gramenos v. Jewel Companies, Inc.*, 797 F.2d 432, 436 (7th Cir. 1986). Counts I-V fail as a matter of law, and the Movants, Charles Sikanich and James Gardiner, should be dismissed as defendants, with prejudice.

WHEREFORE, the Defendants, James Gardiner and Charles Sikanich, move this honorable Court to grant their Motion to Dismiss Counts I – V of Plaintiff's Complaint, with prejudice, pursuant to Fed. R. Civ. P. 12(b)(6), and for any additional relief that the Court deems just.

>Respectfully Submitted,
>THOMAS R. RAINES
>ATTORNEY AT LAW, LLC
>
>/s/ Thomas D. Carroll
>Thomas D. Carroll
>Thomas R. Raines Attorney at Law, LLC
>20 N. Wacker Dr., Suite 556
>Chicago, IL 60606
>T: (312) 750-1166
>F: (312) 750-1164
>tcarroll@traalaw.com

Dated: February 25, 2021

**CERTIFICATE OF SERVICE**

The undersigned, an attorney of record for the Defendants, hereby certifies that on February 25, 2021 he served a copy of the Defendants James Gardiner's and Charles Sikanich's Motion to Dismiss Plaintiff's Complaint on all counsel of record by electronic means via the Northern District of Illinois's Electronic Case Filing (ECF) system, which notifies all counsels and parties of record.

/s/ Thomas D. Carroll
Thomas D. Carroll

15