## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| Benjamin George, | |
| Plaintiff, | |
| v. | Case No: 20-cv-6911 |
| City of Chicago, James Gardiner, Charles Sikanich, Chicago Police Officers Solomon Ing (#4117), Peter Palka (#9413), Daniel Smith (#20066), Bilos (#21010), Joseph Ferrara (#233), Sergio Corona (#3331), Ortiz (Star # unknown), and Unknown Chicago Police Officers, | Hon. Judge Blakey Hon. Magistrate Judge Jantz |
| Defendants. | **JURY TRIAL DEMANDED** |

## FIRST AMENDED COMPLAINT

NOW COMES Plaintiff BENJAMIN GEORGE, by and through his undersigned attorneys, pursuant to Federal Rules of Civil Procedure and this Court's Order of February 22, 2021, and files his First Amended Complaint against the CITY OF CHICAGO, ALDERMAN JAMES GARDINER and CHARLES SIKANICH, in their individual capacities, as well as CHICAGO POLICE OFFICERS SOLOMON ING, PETER PALKA, JOSEPH FERRARA, SERGIO CORONA, and ORTIZ, DETECTIVES DANIEL SMITH and BILOS, and UNKNOWN CHICAGO POLICE OFFICERS ("DEFENDANT OFFICERS"), in their individual capacities, on personal knowledge as to Plaintiff BENJAMIN GEORGE and his actions and upon information and belief, where so stated, as to Defendants and their actions, alleging as follows:

## INTRODUCTION

1.     This action is brought pursuant to 42 U.S.C. § 1983 to address deprivations of Plaintiff's rights under the Constitution of the United States.

2.     After Plaintiff and small business owner BENJAMIN GEORGE, through no malice or ill intent of his own, drew the ire of a powerful elected member of Chicago's governing body and his Ward Official, his life was upended by the collective actions of Chicago police and other representatives of city government.

3.     These individuals, jointly and individually, abused their authority to single him out for a baseless arrest, prosecution, and harassment. As a result of this treatment, GEORGE lost his home and was psychiatrically committed, among other injuries; indeed, the trauma leveraged against him caused him to move first from his neighborhood and subsequently from the state.

## JURISDICTION AND VENUE

4.     The jurisdiction of the court is invoked pursuant to the Civil Rights Act, 42 U.S.C. § 1983; the Judicial Code, 28 U.S.C. §1331 and §1343(a); and the Constitution of the United States. Further, this Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over claims arising under Illinois state law.

5.     Venue is appropriate under 28 U.S.C. § 1391(b), as all defendants reside in this judicial district. In addition, substantial parts of the events giving rise to the claim occurred in this judicial district.

## PARTIES

6.     Plaintiff BENJAMIN GEORGE (hereinafter "PLAINTIFF" or "GEORGE") is a United States Citizen who at all times mentioned herein resided in the Northern District of Illinois.

7.     Defendant CITY OF CHICAGO is, and at all times mentioned herein was, a municipality organized and operating under the statutes of the State of Illinois. It is authorized under the statutes of the State of Illinois to maintain the Chicago Police Department, which acts as the City's agent in the areas of municipal law enforcement, and for which the City is ultimately responsible. Defendant City was, at all times material to this Complaint, the employer and principal of each and every Individual Defendant.

8.     Defendant CHARLES SIKANICH is a resident of the City of Chicago and the Ward Superintendent for Chicago's 45th Ward under the Department of Streets and Sanitation.

9.     Defendant Alderman JAMES GARDINER is a resident of the City of Chicago and the Alderman of the 45th Ward in the City of Chicago.

10.     Defendant OFFICERS SOLOMON ING, PETER PALKA, SERGIO CORONA, JOSEPH FERRERA, DANIEL SMITH, BILOS, ORTIZ, and UNKNOWN CHICAGO POLICE OFFICERS ("DEFENDANT OFFICERS"), were at all times relevant to this Complaint duly appointed and sworn law enforcement officers for the Defendant City of Chicago. Each is sued in his or her individual capacity for violating the constitutional rights of the individual named Plaintiffs. They are referred to collectively herein as the "DEFENDANT OFFICERS."

11.     When DEFENDANTS engaged in the conduct described in this Complaint, they were acting under color of law, while on duty, and as agents of Defendant City of Chicago.

12.     At all times material to this Complaint, DEFENDANTS were acting under the color of state law.

13.     This action is brought against DEFENDANT OFFICERS in their individual capacities and DEFENDANTS GARDINER AND SIKANICH in their individual capacities.

## FACTS

14.     BENJAMIN GEORGE was, at all times relevant to this Complaint, a Chicago resident who owned and operated a construction and repair company called Acer Construction, LLC. GEORGE moved out of state in early November 2020.

15.     On or about the morning of August 19, 2019, GEORGE and an employee stopped at a busy 7/11 convenience store located at 6000 W. Higgins, Chicago, IL 60630.

16.     While checking out at the counter, GEORGE picked up a misplaced cell phone, later discovered to belong to 45th Ward Official Charles SIKANICH.

17.     GEORGE did not know the identity of the owner of the phone at the time he obtained temporary possession of it, nor did he have the ability to identify the owner.

18.     At no point during the course of the day did the phone in question ring, nor did GEORGE see any text messages appear on the screen seeking out the phone.

19.     GEORGE did not intend to keep the mislaid cell phone, did not keep the mislaid cell phone, and always intended to return it to the 16th District police station after work.

20.     After work at the job site concluded, on the way to return the phone, GEORGE and his employee and coworker, Julian Devon, received an emergency service call regarding a fence down at a customer's house.  GEORGE attended to that call immediately in a nearby suburb near the end of his workday.

21.     At some unknown point after the loss of the phone, 45th Ward Superintendent SIKANICH noticed its absence.

22.     SIKANICH believed this phone to be lost, not stolen, and informed 45th Ward Alderman James GARDINER and other 45th Ward personnel at the Ward office that he had lost his phone.

4

23. GARDINER ordered SIKANICH to report the phone as stolen, despite SIKANICH's prior statement that it was lost, not stolen.

24. At the direction of GARDINER, SIKANICH reported the phone stolen to police that same day, August 19, 2019. At this time, GEORGE had the phone in his possession and was at a work site.

25. Upon the resolution the work emergency service call, GEORGE drove towards the 16th District police station.

26. At this time, GEORGE received a phone call from his then-roommate, Robert Cantrell, who informed him that some combination of DEFENDANT OFFICERS ING, CORONA, and/or an officer who identified himself as ORTIZ were at their home inquiring about the phone. They stated at this time that it "belonged to someone important."

27. GEORGE asked his roommate if he could speak with an officer present at the residence and informed the person who identified himself as OFFICER ORTIZ that he was on his way to return the phone to the 16th District Police Station, and inquired whether he should come directly to the residence instead. The person who identified himself as OFFICER ORTIZ instructed him to return the phone to the police station.

28. After police left GEORGE's home, GEORGE's roommate noticed a white City of Chicago-marked pickup truck driving up and down his block, operated by SIKANICH.

29. Shortly thereafter, 45th Ward Alderman GARDINER visited GEORGE's roommate at the home, immediately inquiring if he was a firefighter--GARDINER himself is or was a firefighter.

30. While Alderman GARDINER and GEORGE's roommate spoke, SIKANICH continued driving his City of Chicago vehicle up and down the block in front of the residence.

31. Upon GARDINER's request, GEORGE's roommate called GEORGE and allowed GARDINER to speak with him.

32.     GEORGE received this phone call while on his way to the 16th District police station, and Alderman GARDINER accused GEORGE of stealing his Ward Superintendent SIKANICH's lost phone using profane, accusatory, and inflammatory language despite knowing the phone had simply been lost.

33.     GEORGE was afraid and unnerved by the call, and informed GARDINER that he was taking the phone to the 16th District Police Station, as he had planned to do and as instructed by DEFENDANT OFFICERS. At this time, he was only 5-6 blocks away from the Station.

34.     Following the call, GARDINER became angry, and asked GEORGE's roommate, "Why do you let a piece of shit like that live in your home?"

35.     Following the conclusion of the call, GARDINER walked down from the residence's porch, turned his attention to SIKANICH in the City of Chicago Vehicle, and called out, "have him [GEORGE] locked up!"

36.     Following the conclusion of the call, SIKANICH circled the block for approximately 20 minutes in his City of Chicago truck before leaving.

37.     SIKANICH returned approximately an hour later and stated to GEORGE's roommate: "The cops arrested your friend and he had a big gun on him," inquired, "who owns this house?", and stated "did you know you had a gypsy living in your basement?"

38.     GEORGE's roommate responded that he had a friend living in his basement.

39.     GEORGE's arrest--which occurred due to the misconduct of the DEFENDANTS--led PLAINTIFF's roommate to force PLAINTIFF to move out.

40.     There was no prior strife between PLAINTIFF's roommate and PLAINTIFF, and PLAINTIFF's loss of housing directly resulted from the false arrest and malicious prosecution described in this Complaint.

41.   GEORGE arrived at the 16th District Police Station fewer than 10 minutes after the phone calls ceased. GEORGE was accompanied by his employee, Julian Devon, who was in GEORGE's work van following their work on a job site.

42.   GEORGE carried a licensed firearm to his job sites. This was on his person on his way from the job site to the Police Station.

43.   At all times pertinent to this matter, PLAINTIFF possessed a valid Firearm Owners Identification ("FOID") Card and Concealed Carry License ("CCL"). He typically carried his licensed weapon in a holster on his person.

44.   Upon his arrival at the 16th District Police Station, GEORGE removed his firearm, which was unloaded, from its holster, prudently not wanting to carry a weapon into a police station, and placed it in his vehicle. His companion exited the work van and GEORGE locked the vehicle before entering the Station.

45.   Upon arrival, GEORGE sought the attention of a desk sergeant with whom he had an existing relationship. Unfortunately, the desk sergeant on duty at the time was not the individual GEORGE sought, and was on the phone at the time and unavailable to take possession of the mislaid cell phone.

46.   Failing to attract attention from the desk sergeant, GEORGE stepped outside in front of the police station to make a phone call back to his roommate in an attempt to speak with DEFENDANT OFFICERS who had visited the home.

47.   At this time, an UNKNOWN CHICAGO POLICE OFFICER came outside and asked GEORGE "can I help you with something?"

48.   GEORGE explained that he had found a phone and was attempting to return it.

49.   GEORGE gave the cell phone to the UNKNOWN CHICAGO POLICE OFFICER and voluntarily returned inside to the station and sat down to wait.

7

50. Soon after, UNKNOWN CHICAGO POLICE OFFICERS came out from behind the station's barrier dividing the secure area from the lobby and seized PLAINTIFF. PLAINTIFF did not know why he was being seized, given that he had already returned the cell phone as he had planned to do for the entirety of the day.

51. While the police were initially detaining PLAINTIFF, 45th Ward official Charles SIKANICH, and several other DEFENDANTS—UNNAMED CHICAGO POLICE OFFICERS, PALKA, and the officer who identified himself as ORTIZ—entered the station and walked to a back room with detectives, upon information and belief, Defendant Officers SMITH and BILOS.

52. SIKANICH, who had previously traveled to PLAINTIFF's apartment and stalked about his neighborhood before being instructed to "have him [GEORGE] locked up!" by GARDINER, swore out the criminal complaint that led to PLAINTIFF's arrest and criminal prosecution for Theft of Lost or Mislaid Property. It consisted of a rote recitation of the language of that offense's statutory definition, 720 ILCS 5/16-2. A copy of this criminal complaint is attached to and incorporated in this Complaint as Exhibit 1.

53. The language of SIKANICH's criminal complaint indicates that he was provided with the exact statutory language of the offense by DEFENDANT OFFICERS at the time of his swearing of the criminal complaint.

54. SIKANICH did not have personal knowledge as to the veracity of the allegations in the Complaint, having initially described the phone to Alderman GARDINER as "lost," not stolen.

55. SIKANICH further knew from his conversations with Alderman GARDINER and DEFENDANT OFFICERS that GEORGE did not intend to keep the phone.

56. SIKANICH further knew, as a result of his conversations with DEFENDANT OFFICERS, that GEORGE had already returned the phone at the time the criminal

complaint was sworn, making it impossible for him to credibly swear that GEORGE intended to permanently deprive him of possession of his property.

57.    Defendant OFFICERS oversaw the preparation and execution of the criminal complaint. Exhibit 1.

58.    Defendant Officer FERRARA was the supervising officer who approved probable cause, even though the phone had already been returned.

59.    While GEORGE was being held, UNKNOWN CHICAGO POLICE OFFICERS, including the desk sergeant, and possibly Charles SIKANICH, belittled him, calling him a gypsy—he is of Romanian descent—and threatened to charge him with a felony.

60.    Defendant OFFICERS, who had accompanied SIKANICH into the back room to jointly prepare the complaint that commenced his criminal prosecution, returned and formally arrested GEORGE, bringing him further into the station and beginning a search of his person.

61.    Despite the fact that there were several officers at the station involved in these events, and detectives operating out of Area North, only officers ING and CORONA were reported as the arresting officers.

62.    At the time of his arrest, GEORGE pleaded with Defendant OFFICERS and tried to explain that he intended to return the phone, and in fact returned the phone, but he was told to "shut up."

63.    When GEORGE asked for legal representation, he was again told to "shut up."

64.    GEORGE was berated by multiple DEFENDANT OFFICERS, including being threatened with charges of a felony, not being informed of the actual charge against him, and also not being informed as to why returning a missing mobile phone would result in his detention and arrest.

65.    At no point during the entirety of PLAINTIFF's interactions with the police in this matter does PLAINTIFF recall being informed of his Miranda Rights, or provided counsel, despite his repeated requests.

66.    PLAINTIFF previously had a very positive relationship with Chicago police.

67.    While PLAINTIFF was being searched following his arrest, UNKNOWN CHICAGO POLICE OFFICERS discovered his empty gun holster.

68.    When UNKNOWN CHICAGO POLICE OFFICERS asked PLAINTIFF about the empty holster, GEORGE informed them that he had a weapon, as well as a valid FOID card and CCL, and that he had left his weapon in his vehicle rather than bringing a firearm into a police station.

69.    At some point thereafter, UNKNOWN CHICAGO POLICE OFFICERS performed a search of GEORGE's vehicle, where they discovered the weapon and took possession of it. This wrongfully seized, legally owned weapon has not been returned to GEORGE at the time of this filing.

70.    At the time of this search, UNKNOWN OFFICERS held PLAINTIFF's employee, Julian Devon, at gunpoint, a course of action drastically incommensurate with the offense for which PLAINTIFF was suspected.

71.    PLAINTIFF was arrested by DEFENDANT OFFICERS at or about 6 P.M. on August 19, 2019, and he was not released from state custody until the following evening, August 20, 2019 at or about 9 P.M.

72.    While GEORGE was in the station's lockup, the Officer who identified himself as Officer ORTIZ informed the PLAINTIFF something substantially similar to "I believe you, I wasn't going to arrest you, but this person [GARDINER and SIKANICH] has power and I have bosses." The person who identified himself as Officer ORTIZ also stated to PLAINTIFF

during his time at the station that officers would not show up to his court date, implying that the matter would be dismissed.

73.    As a result of his voluntarily returning a lost phone to a police station, PLAINTIFF was charged with Theft of Lost or Mislaid Property, 720 ILCS 5/16-2.

74.    On or about September 5, 2019, this case was stricken off the criminal call with leave to reinstate, upon information and belief due to the failure of police witnesses to appear for court.

75.    The Clerk of Court's records indicate that PLAINTIFF, through counsel, made a demand for trial at the court appearance on or about September 5, 2019.

76.    Pursuant to Illinois Speedy Trial Act, 725 ILCS 5/103-5(a), and the Illinois Supreme Court's holding in Ferguson v. City of Chicago, 213 Ill. 2d 94 (2004), PLAINTIFF's criminal case "terminated" 160 days later, in 2020, when prosecutors could no longer reinstate the charge onto the criminal call.

77.    After the arrest, PLAINTIFF was forced to live out of his car for a period of time due to the damage to his reputation and relationships as a result of the arrest.

78.    On or about October 17, 2019, due to the mounting stresses directly resulting from this incident, his loss of housing, and interference with his business, PLAINTIFF's mental state deteriorated, leading his family to transport him to the emergency room at Northshore Evanston Hospital, where he was eventually admitted to psychiatric confinement.

79.    PLAINTIFF was released from the hospital after several days.

80.    PLAINTIFF has still not financially or emotionally recovered from these events.

81.   As a result of his arrest and prosecution, the harassment of himself, his roommate, and his employee, and the attendant damage to his reputation, PLAINTIFF lost business income.

82.   As a result of his arrest and prosecution, the harassment of himself, his roommate, and his employee, and the attendant damage to his reputation, PLAINTIFF lost employees.

83.   As a result of his arrest and prosecution, and the harassment of his roommate, PLAINTIFF lost his housing.

84.   As a result of his arrest and prosecution, the harassment of himself, his roommate, and his employee, and the attendant damage to his reputation, PLAINTIFF was psychiatrically admitted and spent almost a week in psychiatric confinement.

85.   As a result of his arrest and prosecution, the harassment of himself, his roommate, and his employee, and damage to his reputation, PLAINTIFF experienced mental anguish, emotional trauma, and other negative health ramifications.

86.   As a result of his arrest and prosecution, PLAINTIFF's property--a legally owned, licensed, and registered firearm--was seized and not returned.

87.   As a result of his arrest and prosecution, the harassment of himself, his roommate, and his employee, and the attendant damage to his reputation, PLAINTIFF lost trust in an institution and City ostensibly designed to protect him, causing fear of retaliation for any actions he took in good faith in the future.

88.   As a result of his arrest and prosecution, and the harassment of himself, PLAINTIFF decided to move away from the city of Chicago, which he did in November of 2020.

89.    This incident is not the first time DEFENDANTS GARDINER and SIKANICH have abused or attempted to abuse city authority, abused or attempted to abuse legal process, or to coordinate with or act as de facto police.

90.    In 2014 Charles SIKANICH was arrested for impersonating a police officer.

91.    In 2020 Charles SIKANICH swore a demonstrably false petition for an emergency order of protection against a former coworker. The petition was eventually dismissed.

92.    Alderman GARDINER has been active in coordinating and sometimes participating in police actions in his Ward on other matters; police have distributed literature on GARDINER's behalf to Ward residents.

93.    In 2019 Charles SIKANICH, with the knowledge of Alderman GARDINER, carried out a scheme to have a critic of their office ticketed for keeping certain alleged "weeds" on the lawn of a home, and, upon information and belief, coordinated with an official from another ward to issue the tickets in order to misdirect blame from them.

94.    In 2019 Alderman GARDINER and Charles SIKANICH obtained the criminal history of a critic and discussed publicly disseminating the information via text message, and to some degree, disseminated this information.

95.    Both GARDINER and SIKANICH carry city-issued six pointed, metallic, aldermanic "badges" either in their truck or on their person while on duty.

### COUNT I: 42 U.S.C. Section 1983 - False Arrest and Unlawful Seizure
### Against All Individual Defendants
### (Federal Claim)

96.    PLAINTIFF realleges paragraphs 1 to 95 as though fully set forth herein.

97.    Defendant OFFICERS caused PLAINTIFF to be seized when they first detained and then arrested PLAINTIFF on or about 6 PM on August 19, 2019, and also seized his property--a legally owned, licensed, and registered firearm--at that time.

98.    PLAINTIFF was at the police station to return a mislaid phone that he had temporarily acquired possession of, did not know the owner of, and intended to return to the police station.

99.    Defendant OFFICERS did not have probable cause to believe PLAINTIFF had committed a crime when they seized PLAINTIFF due to the fact that he had already returned the phone, his inability to ascertain its owner upon picking it up with the intention of returning it, and obvious lack of intention to retain possession.

100.    PLAINTIFF at all times acted in a manner that would indicate compliance with the law. He brought the phone in question to the police station of his own free will, asked officers at each stage of the event what he should do to return the mislaid phone, removed his weapon prior to entry to the Police Station, and complied with all demands of officers involved.

101. SIKANICH made this false police report under pressure from Defendant GARDINER, the alderman in that district, who, through his office, possessed close ties to the police.

102. The eventual criminal complaint was sworn and attested after PLAINTIFF had already voluntarily returned the phone in question, and while the phone was already in police possession.

103. The officer who identified himself as Officer ORTIZ stated the following or something substantially similar to PLAINTIFF: "I believe you, I wasn't going to arrest you, but this person has power and I have bosses." Despite having reason to believe that the

allegations against GEORGE were false at the time the complaint was sworn, DEFENDANT OFFICERS arrested PLAINTIFF.

104. DEFENDANT OFFICERS did not have reasonable suspicion to believe PLAINTIFF was about to commit a crime, was committing a crime, or had committed a crime when they seized PLAINTIFF for reasons stated elsewhere herein.

105. Defendant OFFICERS did not have probable cause to believe that PLAINTIFF had committed a crime, was committing a crime, or was about to commit a crime at the time he was arrested.

106. Defendant SIKANICH falsely reported a lost phone as stolen and swore out a false criminal complaint and did so at GARDINER's direction.

107. DEFENDANTS were acting under color of law at all times material to this Count.

108. Such actions described here and elsewhere within this Complaint constitute DEFENDANTS' violation of PLAINTIFF's rights under the United States Constitution in violation of the Fourth Amendment.

109. The actions of DEFENDANTS were objectively unreasonable and were undertaken intentionally with malice, willfulness, and reckless indifference to PLAINTIFF's rights.

110. DEFENDANTS' actions in arresting and/or causing this arrest of GEORGE, despite the lack of probable cause for this arrest, caused injury to Plaintiff including the deprivation of his liberty, loss of property, loss of housing, emotional distress, lost business income, medical bills, interference with employment relationships, interference with his ability to become properly licensed to possess a firearm, damage to reputation, and mental anguish and distress.

WHEREFORE the Plaintiff, BENJAMIN GEORGE demands judgment against all individual Defendants, for compensatory and punitive damages, the costs of this action, and attorneys' fees, the return of his wrongfully seized property, and for any other relief this Honorable Court deems equitable and just.

### COUNT II: 42 U.S.C. Section 1983 – Equal Protection – Class of One
### Against All Individual Defendants
### (Federal Claim)

111. PLAINTIFF realleges paragraphs 1 to 95 as though fully set forth herein.

112. DEFENDANTS acted arbitrarily, irrationally, and with personal animus toward PLAINTIFF during the course of his arrest and prosecution.

113. PLAINTIFF was explicitly told by the individual who identified himself as Officer ORTIZ that he was being singled out for arrest and prosecution with words substantially similar to: "I believe you, I wasn't going to arrest you, but this person has power and I have bosses."

114. Alderman GARDINER and Charles SIKANICH personally travelled to PLAINTIFF's home the day of the incident, using the imprimatur of city authority and office to act as de facto vigilante police officers, an outrageous, spiteful, arbitrary, irrational, and unconscionable use of state power that caused the arrest that led PLAINTIFF's roommate to require PLAINTIFF to move from the residence.

115. Charles SIKANICH, after leaving PLAINTIFF's residence, remained in the neighborhood, circling in a city vehicle.

116. After GARDINER directed SIKANICH to concoct a lie that his phone was stolen, not lost, SIKANICH, following through on GARDINER's explicit instructions to not only report a lost phone as stolen but also to "have him [PLAINTIFF] locked up," GARDINER and SIKANICH, upon information and belief, also brought the power of their own

government positions to bear on a harmless individual by pressuring DEFENDANT OFFICERS to baselessly arrest and charge PLAINTIFF.

117. PLAINTIFF was mocked for his Romanian ethnicity by being called a "gypsy" by a DEFENDANT OFFICER at the police station, and again by SIKANICH at PLAINTIFF's residence.

118. DEFENDANTS intentionally treated PLAINTIFF differently than similarly situated individuals, and departed from norm or common practice, acted with animus, and acted with discriminatory motive with no rational basis for doing so.

119. DEFENDANTS were acting under color of law at all times material to this Count; in fact, GARDINER relied his role as alderman and firefighter, while SIKANICH travelled in a City of Chicago vehicle to PLAINTIFF's residence on multiple occasions

120. The actions of the DEFENDANTS were willful and wanton, and were undertaken intentionally with malice, willfulness, and reckless indifference to PLAINTIFF's rights.

121. DEFENDANTS actions caused injury to Plaintiff including the deprivation of his liberty, loss of property, loss of housing, emotional distress, lost business income, medical bills, interference with employment relationships, interference with his ability to become properly licensed to possess a firearm, damage to reputation, and mental anguish and distress.

WHEREFORE the Plaintiff, BENJAMIN GEORGE demands judgment against DEFENDANTS for compensatory and punitive damages, the costs of this action, and attorneys' fees, and for any other relief this Honorable Court deems equitable and just.

### COUNT III: 42 U.S.C. Section 1983 — Due Process — Shocks the Conscience
### Against Defendants Sikanich and Gardiner
### (Federal Claim)

122. PLAINTIFF realleges paragraphs 1 to 95 as though fully set forth herein.

123. The Fourteenth Amendment to the United States Constitution, enforceable against Defendants pursuant to 42 U.S.C. §1983, provides that no state actor shall deprive any person of life, liberty, or property, without due process of law.

124. As demonstrated by their actions, SIKANICH and GARDINER worked to deprive PLAINTIFF of constitutionally protected interests, including his right to freedom from unreasonable seizure, false arrest and baseless prosecution, freedom from arbitrary government action, freedom from interference with business relationships, right to bear arms, and other liberty interests.

125. SIKANICH and GARDINER traveled to PLAINTIFF's home after instigating a false police investigation which damaged PLAINTIFF's relationship with his roommate and deprived him of his right to be free from arbitrary and vindictive government action.

126. In response to SIKANICH's false police report (made at GARDINER's instruction), and GARDINER's instructions to SIKANICH to "have him [PLAINTIFF] locked up," DEFENDANT OFFICERS seized PLAINTIFF, searched his person and vehicle, and arrested PLAINTIFF and took him into custody without probable cause.

127. Defendant OFFICERS and SIKANICH (on GARDINER's instruction) prepared and/or approved a false criminal complaint that they knew prosecutors would rely upon to pursue false criminal charges against PLAINTIFF.

128. The deliberate actions of the Defendants were done willfully, wantonly, and intentionally in order to deprive PLAINTIFF of his right to due process of law.

129. Alderman GARDINER and SIKANICH abused city office when they traveled to PLAINTIFF's home, taking a police investigation into their own hands.

130. Taken in total, these actions, which negatively impacted both PLAINTIFF and the fairness, integrity, and public reputation of judicial proceedings and the responsibilities attendant in serving as a holder of a public office or position, shock the conscience.

18

131. DEFENDANTS were acting under color of law at all times material to this Count.

132. The actions of the DEFENDANTS willful and wanton, and were undertaken intentionally with malice, willfulness, and reckless indifference to PLAINTIFF's rights.

133. DEFENDANTS' actions directly and proximately caused injury to Plaintiff including the deprivation of his liberty, loss of property, loss of housing, emotional distress, lost business income, medical bills, interference with employment relationships, interference with his ability to become properly licensed to possess a firearm, damage to reputation, and mental anguish and distress.

WHEREFORE the Plaintiff, BENJAMIN GEORGE demands judgment against SIKANICH and GARDINER for compensatory and punitive damages, the costs of this action, and attorneys' fees, and for any other relief this Honorable Court deems equitable and just.

## COUNT IV: Malicious Prosecution
## Against All Individual Defendants
## (State Law Claim)

134. PLAINTIFF realleges paragraphs 1 to 95 as though fully set forth herein.

135. By committing the acts detailed above, Defendant OFFICERS and Charles SIKANICH, acting at the instruction of co-defendant Alderman GARDINER, knowingly sought to and did in fact maliciously commence and continue the prosecution of PLAINTIFF on false charges for which they knew there was no probable cause, charges which were terminated in PLAINTIFF's favor and which damaged PLAINTIFF.

136. DEFENDANTS combined to maliciously cause the swearing to a criminal complaint and commencement of a criminal prosecution for which they knew there was no probable cause.

137. The criminal charges against PLAINTIFF were disposed of favorably when the case was Stricken Off the criminal call with Leave to reinstate and not reinstated within the 160-day Speedy Trial Period, terminating the prosecution in 2020.

138. Defendant OFFICERS dictated a criminal complaint for SIKANICH to sign that was a rote recital of statutory language despite both SIKANICH and the OFFICERS' knowing that the elements of the offense were not and could not be met.

139. In dictating this Complaint to Sikanich, DEFENDANTS acted with malice in commencing this criminal prosecution without probable cause and knowledge of the absence of probable cause.

140. The actions of the DEFENDANTS willful and wanton, and were undertaken intentionally with malice, willfulness, and reckless indifference to PLAINTIFF's rights.

141. As a direct and proximate result of the malicious prosecution, Plaintiff was damaged, including the value of his deprivation of his liberty, loss of property, loss of housing, emotional distress, lost business income, medical bills, interference with employment relationships, interference with his ability to become properly licensed to possess a firearm, damage to reputation, and mental anguish and distress.

WHEREFORE the Plaintiff, BENJAMIN GEORGE demands judgment against DEFENDANTS for compensatory and punitive damages, the costs of this action, and attorneys' fees, and for any other relief this Honorable Court deems equitable and just.

### COUNT V: Conspiracy to Commit Malicious Prosecution
### Against All Individual Defendants
### (State Law Claim)

142. PLAINTIFF realleges paragraphs 1 to 95 as though fully set forth herein.

143. DEFENDANTS acted in concert in a conspiracy to maliciously prosecute PLAINTIFF.

144. DEFENDANTS, acting in concert, conspired to accomplish an unlawful purpose by unlawful means, the principal element of which was to inflict wrongs and injury by maliciously prosecuting PLAINTIFF as described herein.

145. In furtherance of this conspiracy, each of the DEFENDANT co-conspirators committed overt acts, such as approving probable cause, dictating the complaint, swearing the complaint, and taking other actions, and each defendant was a willful participant in joint activity.

146. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of PLAINTIFF.

147. DEFENDANTS' actions directly and proximately caused injury to Plaintiff including the deprivation of his liberty, loss of property, loss of housing, emotional distress, lost business income, medical bills, interference with employment relationships, interference with his ability to become properly licensed to possess a firearm, damage to reputation, and mental anguish and distress.

WHEREFORE the Plaintiff, BENJAMIN GEORGE demands judgment against DEFENDANTS for compensatory and punitive damages, the costs of this action, and for any other relief this Honorable Court deems equitable and just.

### COUNT VI: 745 ILCS 10/9-102 – Indemnification
### Against Defendant City of Chicago
### (State Law Claim)

148. PLAINTIFF realleges paragraphs 1 to 95 as though fully set forth herein.

149. Defendant CITY OF CHICAGO is the employer of the individual DEFENDANTS.

150. The individual DEFENDANTS committed the above-alleged acts under color of law and in the scope of their duties and employment as employees of the CITY OF CHICAGO.

151. In Illinois, public entities are directed to pay for any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities. 745 ILCS 10/9-102.

152. As a direct and proximate cause of DEFENDANTS' unlawful acts, which occurred within the scope of their employment activities, PLAINTIFF was damaged, including the deprivation of his liberty, loss of property, loss of housing, emotional distress, lost business income, medical bills, interference with employment relationships, interference with his ability to become properly licensed to possess a firearm, damage to reputation, and mental anguish and distress.

WHEREFORE the Plaintiff, BENJAMIN GEORGE demands judgment against DEFENDANT CITY OF CHICAGO for compensatory and punitive damages, the costs of this action, and for any other relief this Honorable Court deems equitable and just.

**PLAINTIFF DEMANDS TRIAL BY JURY.**

Respectfully Submitted,

/s/Daniel E. Massoglia

*One of Plaintiff's Attorneys*

Bobby Vanecko*
Brittany Shaw (#6333347)
Daniel Massoglia (#6317393)
First Defense Legal Aid
601 S. California Ave.
Chicago, IL 60612
P: 708-797-3066
E: bobby@first-defense.org
E: brittany@first-defense.org
E: daniel@first-defense.org

Elizabeth Homsy (#6307858)
The Law Offices of Elizabeth A. Homsy
2506 N. Clark St.
Suite 286
Chicago, IL 60614
P: 708-669-6148
E: eahomsy@gmail.com

* Law Student Licensed Under Illinois
Supreme Court Rule 711

## CERTIFICATE OF SERVICE

I, Daniel Massoglia, an attorney, hereby certify that a copy of this ***First Amended Complaint*** was filed before 11:59pm on 3/12/21 using the Court's CM/ECF filing system, which generates electronic notice to all parties of record in the case.

Respectfully submitted,

Daniel Massoglia
*One of Plaintiff's Attorneys*

Daniel Massoglia
(#6317393)
First Defense Legal Aid
601 S. California Ave.
Chicago, IL 60612
P: 708-797-3066
E: daniel@first-defense.org

# Exhibit 1

23-2
(Court Branch # or District #)

05 Sep 2016
(Court Date/Time)

C.P.D 017th
(Arresting Agency #)

District

MISDEMEANOR COMPLAINT  (This form replaces CCG-0655, CCMC-0222 & CCMC-0225)

(Rev. 12/7/00) CCCR 0655

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

The People of State of Illinois,

Plaintiff

v.

George, Benjamin

Defendant.

NO. 19121 2723

Charles Sikanich
(Complainant's Name Printed or Typed)

complainant, now appears before

The Circuit Court of Cook County and states the following:

That: George, Benjamin
(defendant)

of 4949 W Berlie Plaine
listed. (address)

has, on or about

14 Aug 2016 at the location of 6000 W. Higgins
(date) (place of offense)

committed the offense(s) of Theft - of lost / Mislaid Property

in that he/she obtained control over lost/mislaid property, being an Apple Iphone,
knowing the identity/learns the identity/is aware of/ learns of a reasonable method of identifying
the owner charles sikanich and failed to take reasonable measures to restore the property to charles sikanich
intending to deprive the owner permanently of the use/benefit of the property

in violation of 720 Illinois Compiled Statutes 5 0 / 16 2
(Chapter) (Section) (Sub Section)

AOIC Code

[blank boxes]

FILED

AUG 20 2019

DOROTHY BROWN
CLERK OF CIRCUIT COURT

X ▓▓▓▓▓▓▓▓
(Complainant's Signature)

Classified.
(Complainant's Address)

Listed
(Complainant's Telephone)

Charles Sikanich
(Complainant's Name Printed or Typed)

STATE OF ILLINOIS }
COOK COUNTY } SS:

The complainant, being first duly sworn on oath, deposes and says that he/she read the foregoing complaint by him/her subscribed and that the same is true.

X ▓▓▓▓▓▓▓▓
(Complainant's Signature)

Subscribed and sworn to before me on this 19th day of AUG ▓▓▓▓ , 2019
D. Brown 2019.
(Judge or Clerk)

I have examined the above complaint and the person presenting the same and have heard evidence thereon, and am satisfied that there is probable cause for filing same.  Leave is given to file said complaint.

Judge's No. _____

SUMMONS ISSUED, Judge _____
or

WARRANT ISSUED, Bail set at: _____
or

Judge's No. _____

BAIL SET AT: _____ Judge _____

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS