**THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| BENJAMIN GEORGE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 20 CV 6911 |
| v. | ) | |
| | ) | |
| CITY OF CHICAGO, JAMES GARDINER | ) | Judge: Honorable Robert Blakey |
| CHARLES SIKANICH, CHICAGO | ) | |
| POLICE OFFICERS SOLOMON ING, | ) | Magistrate Judge: Honorable Beth Jantz |
| PETER PALKA, DANIEL SMITH, BILOS, | ) | |
| JOSEPH FERRARA, SERGIO CORONA, | ) | |
| ORTIZ, AND UNKNOWN CHICAGO | ) | |
| POLICE OFFICERS | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Defendants Ing and Corona, by and through one of their attorneys, Jennifer Kristine Bagby; Defendants Palka, Smith, Ferrera, and Bilos, (hereinafter "Defendant Officers") by and through one of their attorneys, Gregory Beck; and Defendant City of Chicago (hereinafter "Defendant City), by and through Celia Meza, Acting Corporation Counsel for the City of Chicago, (collectively "Defendants"), move to dismiss Plaintiff's Amended Complaint in its entirety and state as follows:

### BACKGROUND[1]

Benjamin George (hereafter "Plaintiff") picked up a misplaced cellphone at a 7-11 on the morning of August 19, 2019. First Amended Complaint, ECF Dkt. No. 37, ("FAC") at ¶¶ 15, 16. Plaintiff left the 7-11 with the cellphone and held onto it throughout the day. *See Id.* at ¶¶ 16-18. The cellphone belonged to Defendant Charles Sikanich. *Id.* at ¶ 16. At some point after Plaintiff took the cellphone from 7-11, Sikanich reported to police that the cellphone had been stolen. *Id.* at ¶ 24. Near the end of the workday, Plaintiff learned that police officers were at his home asking about the cellphone. *Id.* at

---

[1] For purposes of this motion to dismiss, the factual allegations in Plaintiff's complaint are undisputed and are considered in the light most favorable to Plaintiff. In no way are Defendants conceding the correctness of Plaintiff's allegations.

¶¶ 20, 25-26. Only after learning this did Plaintiff inform the police that he had the cellphone and would return it. *Id.* at ¶¶ 26-27. A person who identified himself as Officer Ortiz instructed Plaintiff to take the cellphone to the police station. *Id* at ¶ 27.

When Plaintiff arrived at the police station he removed his firearm from its holster and placed the firearm in his vehicle before entering the station. *Id.* at ¶44. Plaintiff gave the cellphone to an unknown police officer and sat down in the police station to wait. *Id.* at ¶ 49. Soon after, unknown police officers came into the lobby and seized Plaintiff. *Id.* at ¶ 50. While Plaintiff was being detained, Sikanich and several other defendants – Officer Palka, the officer who identified himself as Ortiz, and unnamed Chicago police officers - entered the station and walked into the back with Detectives Smith and Bilos. *Id.* at ¶ 51. Sikanich swore out a criminal complaint against Plaintiff. *Id.* at ¶ 52; Exhibit 1 to FAC, Criminal Complaint for 191212723 (hereinafter "Criminal Complaint"). The officers who accompanied Sikanich to the back of the police station returned and arrested Plaintiff. FAC at ¶ 60. Plaintiff was charged with misdemeanor theft of lost or mislaid property. *Id.* at ¶ 73.

While Plaintiff was being searched following his arrest, unknown police officers discovered that Plaintiff had an empty gun holster on him. FAC at ¶ 67. When the unknown officers asked Plaintiff about the empty gun holster, Plaintiff informed them that he had a valid FOID card and CCL and that he had left his weapon in his vehicle. *Id.* at ¶ 68. The unknown officers went outside, located the firearm in Plaintiff's vehicle and retrieved it. *Id.* at ¶ 69.

Plaintiff claims that while he was in the lockup at the police station the officer who identified himself as Ortiz said something to the effect of "I believe you, I wasn't going to arrest you, but this person has power and I have bosses." *Id.* at ¶ 72. According to Plaintiff, other unknown officers also belittled him at some point calling him a "gypsy." *Id.* at ¶ 59. Plaintiff was released from state custody on August 20, 2019 at approximately 9:00p.m. *Id.* at ¶ 71.

Plaintiff brings the following claims against Defendant Officers: §1983 false arrest and unlawful seizure of his firearm (Count I); §1983 equal protection (Count II); state law malicious prosecution (Count IV); and state law conspiracy to commit malicious prosecution (Count V). Plaintiff also brings an indemnification claim against Defendant City (Count VI). *See generally*, FAC. Defendants move to dismiss all claims with prejudice.

## STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12 (b)(6), a complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). A complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When considering a motion to dismiss, the court accepts as true all well-pled facts alleged by the plaintiff and all reasonable inferences to be drawn therefrom. *See Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005). The "court need not accept as true 'legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *V. Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (*quoting Ashcroft*, 556 U.S. at 678).

## ARGUMENT

The allegations in Plaintiff's amended complaint are insufficient to state a claim for false arrest, unlawful seizure, equal protection, malicious prosecution, or conspiracy. Because Plaintiff has failed to plead a substantive claim, his indemnification claim must also be dismissed.

### A.    The False Arrest Claim Fails Because Probable Cause Existed for the Arrest

The Court should dismiss Plaintiff's false arrest claim because the allegations in the complaint establish that Defendant Officers had probable cause to arrest Plaintiff. To prevail on a § 1983 claim for false arrest, a plaintiff must show that he was arrested without probable cause. *See T. Brooks v. City of Chicago, et al.*, 564 F.3d 830, 832 (7th Cir. 2009); *Neita v. City of Chicago, et al.*, 830 F.3d 494, 497 (7th

Cir. 2016). "'Probable cause exists if at the time of the arrest, the facts and circumstances within the officers' knowledge are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Williamson v. Curran*, 714 F.3d 432, 441(7th Cir. 2013) (*quoting Mucha v. Vill. Of Oak Brook*, 650 F.3d 1053, 1056 (7th Cir. 2011). "The complaint of a single witness or putative victim alone generally is sufficient to establish probable cause to arrest unless the complaint would lead a reasonable officer to be suspicious, in which case the officer has a further duty to investigate." *Beauchamp v. City of Noblesville, IN, et al.*, 320 F.3d 733, 743 (7th Cir. 2003). "The existence of probable cause does not depend on the truth of a complaint of wrongdoing." *Williamson, 714 F.3d at 441* (*citing Mustafa v, City of Chicago*, 442 F.3d 544, 548 (7th Cir. 2006)). Officers may reasonably rely on the information provided by a putative victim or witness, even if the suspect denies the accusation of wrongdoing. *Id.* (internal citations omitted).

In the present case, Plaintiff was arrested for theft of lost or mislaid property. FAC at ¶ 73. A person commits this crime when he obtains control over the property and

(a) Knows or learns the identity of the owner or knows, or is aware of, or learns of a reasonable method of identifying the owner, and

(b) Fails to take reasonable measures to restore the property to the owner, and

(c) Intends to deprive the owner permanently of the use or benefit of the property.

720 ILCS 5/16-2.

The allegations in the complaint demonstrate that Defendant Officers had probable cause to arrest Plaintiff for theft of lost or mislaid property. Plaintiff was arrested after Sikanich swore out a criminal complaint against him for this crime. FAC at ¶¶ 52, 60, 73; Criminal Complaint. Defendant Officers were not present when the alleged theft occurred and therefore have no personal knowledge about what happened. When Sikanich travelled to the police station and swore out a complaint under penalty of perjury, Defendant Officers were entitled to rely on the information provided to them.

Plaintiff does not plead any facts to suggest that Defendant Officers should have been suspicious of Sikanich's complaint. Quite the opposite. Plaintiff admits that he took a cellphone from a 7-11 that did not belong to him, and that he kept the cellphone throughout the day. *Id.* at ¶¶ 15-18. The cellphone belonged to Sikanich, and Sikanich reported to the police that the cellphone had been stolen. *Id.* at ¶¶16, 24. The first time Plaintiff informed the police that he had the cellphone and would return it was after he learned that police officers were at his home asking about the cellphone. *Id.* at ¶¶ 20, 25-27. These allegations do not suggest that Defendant Officers should have disbelieved Sikanich's complaint. Rather, they bolster Sikanich's claim that Plaintiff had committed theft. Because the allegations in the complaint show that Defendant Officers had probable cause to arrest Plaintiff, his false arrest claim fails on its face and must be dismissed.

**B.** **The Unlawful Seizure Claim Fails Because The Seizure Was Reasonable Under the Community Caretaking Doctrine And Defendant Officers Did Not Seize The Firearm**

The Court should dismiss the unlawful seizure claim because Plaintiff did not plead any facts to suggest that Defendant Officers were personally involved in the alleged misconduct. Rather, he claims that unknown officers seized his firearm. FAC ¶ 69. However, "[a]n individual cannot be held liable in a §1983 action unless he caused or participated in an alleged constitutional deprivation." *Jenkins v. Keating*, 147 F.3d 577, 583 (7th Cir. 1998). As such, the Court should dismiss this claim.

This claim is deficient for a second, independent reason – namely, the seizure was reasonable under the community caretaking exception to the warrant requirement. Under the community caretaking doctrine, searches that are conducted not for any criminal law enforcement purpose but rather to protect members of the public are exempt from the Fourth Amendment warrant requirement. *Sutterfield v. City of Milwaukee*, 751 F.3d 542, 554 (7th Cir. 2014).

In *Cady v. Dombrowski,* 413 U.S. 433 (1973), a Chicago police officer named Dombrowski had been drinking and was involved in an automobile accident in Wisconsin. Believing that Chicago police

officers were required to carry their service revolvers with them at all times, the Wisconsin officers who responded to the scene looked for a gun on Dombrowski's person and in the glove compartment and front seat of the car, but did not find one, and the automobile was towed to a garage. One of the officers later went to the garage and searched the car again for the revolver. The officer opened the trunk and discovered clothing and other items with blood on them. When confronted with this evidence, Dombrowski directed police to a body that was located on his brother's farm and he was charged with murder. At his trial, the items from his trunk were admitted as evidence and he was convicted. *Id.* at 436-439.

The Supreme Court sustained the warrantless search of the vehicle, reasoning that the search was conducted not for evidence-gathering purposes but rather for safety reasons: the car had been towed to a garage lot which was not secured, leaving any gun inside accessible to vandals. *Id.* at 443, 448. Thus, the search, although unsupported by a warrant, was reasonable as it constituted a legitimate exercise of the police force's community caretaking function. *Id.* at 447-448.

In the present case, Plaintiff left a firearm in his vehicle unattended. FAC at ¶ 44. That vehicle was parked in a parking lot that was accessible to the public. *See id.* Plaintiff was placed under arrest at approximately 6:00p.m and was going to be held in custody. *Id.* at ¶ 71. So, when Plaintiff told the officers that he had a valid FOID card and CCL, and that he had a firearm outside in his vehicle, the officers retrieved the firearm from the vehicle. *Id.* at ¶¶ 68-69. Plaintiff does not claim that the officers seized any other item from his vehicle, nor does he claim that he was charged with any crime stemming from his possession of the firearm. Simply put, Plaintiff does not plead any facts to suggest that the officers seized the firearm for evidence-gathering purposes. And the facts which he does plead show that the officers retrieved the firearm for safety reasons: the car was left in a parking lot which was not secure, leaving the firearm inside accessible to vandals. This is precisely the type of community

caretaking function contemplated by the Supreme Court in *Cady*. Accordingly, the seizure was reasonable, and this claim should be dismissed.

**C.**    **The Equal Protection Claim Is Insufficiently Pled**

The Court should dismiss Plaintiff's equal protection claim because the complaint does not allege enough facts to state a claim. Generally, equal protection claims involve charges of singling out members of a vulnerable group for unequal treatment or allegations that a law or policy makes irrational distinctions between groups of people. See *Bell v. Duperrault*, 367 F.3d 703, 707 (7th Cir. 2004). Although rare and difficult to prove, a plaintiff may bring an equal protection claim as a class of one. See *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). To succeed on a class-of-one equal protection claim, Plaintiff must prove (1) he has been "intentionally treated differently from others similarly situated" and (2) "there is no rational basis for the difference in treatment." *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601–02 (2008) (quoting *Village of Willowbrook*, 528 U.S. at 564).

**1.**    **Plaintiff Failed to Allege Similarly Situated People Were Treated Differently**

Plaintiff has failed to plead facts plausibly showing that he is similarly situated to a group of individuals who were treated differently. "To be considered similarly situated, a plaintiff and his comparators (those alleged to have been treated more favorably) must be identical or directly comparable in all material respects." *LaBella Winnetka, Inc. v. Village of Winnetka*, 628 F.3d 937, 942 (7th Cir.2010). "Although the question of whether a comparator is similarly situated is usually a question for the fact-finder, dismissal at the pleading stage is appropriate if the plaintiff fails 'to allege facts tending to show that it was similarly situated to any of the comparators.'" *Pinedo v. City of Chicago*, 2011 WL 829305, at *2 (N.D. Ill. Mar. 4, 2011) (quoting *LaBella Winnetka, Inc*, 628 F.3d at 942).

In *Hanes v. Zurich*, 578 F.3d 491, 492 (7th Cir.2009), the plaintiff had an ongoing feud with his neighbor and alleged that regardless of who called the police, the officers always arrested him because they hated him. The plaintiff had been arrested at least eight times; his neighbor, never. *Id.* The Seventh

Circuit held that the plaintiff stated a claim under a class-of-one theory. *Id.* at 496. In *Ciechon v. City of Chicago*, 686 F.2d 511, 515–16 (7th Cir.1982), two paramedics responded to an emergency and treated a victim who later died. After the victim's family publicly criticized how the situation was handled, the City suspended and fired one of the paramedics. *Id.* at 516. The other paramedic who was equally responsible for patient assessment and treatment suffered no consequences. *Id.* at 522–23. The Seventh Circuit affirmed the district court's grant of summary judgment for the plaintiff, holding that "[t]here was no possible justification for treating [the similarly situated paramedics] differently." *Id.* at 523. In both of those cases, the discriminatory nature of the plaintiffs' claims could be ascertained by comparing the plaintiffs to similarly situated individuals who were treated more favorably.

Without such a comparison, the requisite allegations of discrimination are lacking. Merely alleging that a defendant has done some harmful act against the plaintiff, without more, fails to state an equal protection "class of one" claim. *Geinosky v. City of Chicago,* 675 F.3d 743, 747 (7th Cir.2012) ("[T]he purpose of entertaining a 'class of one' equal protection claim is not to constitutionalize all tort law ...."). Moreover, a claim that "other law-abiding persons were not subject to unlawful treatment" does not state a class of one equal protection claim either. *Muczynski v. Lieblick,* 769 F.Supp.2d 1129, 1136–37 (N.D. Ill. 2011) (dismissing a class of one claim where plaintiff alleged that he was "similarly situated" to "other individuals with whom the Defendant Officers had an investigatory basis to communicate who did not have false evidence generated against them and were not arrested or prosecuted"); *See Austin v. Varga*, 2011 WL 3841826, at *5 (N.D. Ill. 2011) (dismissing an equal protection claim where Plaintiff's group of similarly situated individuals would include every person who was not arrested based on false witness statements and every individual from whom exculpatory evidence was not withheld by the defendants). As the court in *Muczynski* explained:

> [If] a plaintiff could satisfy the discrimination requirement simply by alleging that other law-abiding persons were not subject to unlawful treatment, the scope of class-of-one claims would

be distorted to include almost any intentional tort committed by a state actor. An officer who arrests someone without probable cause or uses unreasonable force on an arrestee is certainly treating the victim differently than persons who have not been subject to false arrest or excessive force; and, almost by definition, those illegal acts are undertaken without a rational basis in the law. Class-of-one equal-protection claims must be limited to those in which the plaintiff pleads, with requisite specificity, that similarly situated persons were not subject to the specific conduct of which the plaintiff complains. Strict enforcement of this requirement ensures that the scope of such claims can be properly controlled and the potential of constitutionalizing all tort law on the basis of equal protection, avoided.

769 F.Supp.2d at 1136–37.

Here, Plaintiff alleges that "Defendants intentionally treated Plaintiff differently than similarly situated individuals" (FAC at ¶ 118) yet he fails to identify with any specificity who the 'similarly situated' individuals are who were treated more favorably. This is insufficient. *See* Pinedo, 2011 WL 829305 at *2 (finding that a complaint's conclusory allegation that Plaintiff was treated differently than similarly situated individuals failed to state a class-of-one equal protection claim); *Snedeker v. Girot*, 2017 WL 3704843, at *4 (N.D. Ill. Aug. 28, 2017) (finding that Plaintiff's allegation that he was "similarly situated to other individuals involved in interactions with [Defendant Officer] wherein [Defendant Officer] did not fabricate evidence or provide a false rationale against those individuals" was insufficient to state a claim). Assuming arguendo that Plaintiff seeks to compare himself to other law-abiding persons were not arrested based on false accusations by the alleged victim of a crime, such a comparison is insufficient for the reasons described above. Given Plaintiff's failure to identify a single comparator, this claim should be dismissed.

## 2. Plaintiff Failed To Plead Facts Eliminating A Rational Basis For Any Disparate Treatment

Even if Plaintiff pled enough facts to plausibly show that he is similarly situated to a group of individuals who were treated differently (he did not), the Court should still dismiss Plaintiff's equal protection claim because the complaint fails to eliminate any rational basis for the alleged difference in treatment. "The rational-basis requirement sets the legal bar low and simply requires a rational relationship between the disparity of treatment and some legitimate governmental purpose." *D.B. ex*

*rel. Kurtis B. v. Kopp*, 725 F.3d 681, 686 (7th Cir. 2013). "[T]o get past a Rule 12(b)(6) motion to dismiss on a class-of-one equal protection claim, a plaintiff must allege facts sufficient to overcome the presumption of rationality that applies to government classifications." *Flying J Inc. v. City of New Haven*, 549 F.3d 538, 546 (7th Cir.2008). The burden is on plaintiff "to eliminate any reasonably conceivable state of facts that could provide a rational basis for the classification." *Srail v. Village of Lisle, Ill.*, 588 F.3d 940, 946-47 (7th Cir.2009); s*ee Miller v. City of Monona*, 784 F.3d 1113, 1121 (7th Cir. 2015) ("[E]ven at the pleadings stage, all it takes to defeat a class-of-one claim is a *conceivable* rational basis for the difference in treatment.").

Here, Plaintiff alleges that Defendant Officers "acted arbitrarily, irrationally, and with personal animus toward Plaintiff during the course of his arrest and prosecution" and "intentionally treated Plaintiff differently than similarly situated individuals, and departed from norm or common practice, acted with animus, and acted with discriminatory motive with no rational basis for doing so." FAC at ¶¶ 112, 118. These allegations amount to nothing more than conclusory legal statements, however, and are insufficient for purposes of withstanding a motion to dismiss. *See Brooks*, 578 F.3d at 581. Plaintiff claims the officer who identified himself as Ortiz stated "I wasn't going to arrest you, but this person has power and I have bosses" and that unknown officers mocked his Romanian ethnicity by calling him a gypsy. FAC at ¶¶ 59, 72. However, Plaintiff does not set forth any facts to suggest that Defendant Palka, Defendant Smith, Defendant Bilos, Defendant Ferrara, or Defendant Corona acted with a discriminatory motive or personal animus toward him.

Even if he did, allegations of animus do not overcome the presumption of rationality. *See Flying J Inc.*, 549 F.3d at 546-47. To the contrary, "a given action can have a rational basis and be a perfectly logical action for a government entity to take even if there are facts casting it as one taken out of animosity." *Id.* at 547. "If [the Court] can come up with a rational basis for the challenged action, that will be the end of the matter—animus or no." *Fares Pawn, LLC v. Indiana Dep't of Fin. Insts.*, 755 F.3d

839, 845 & n.2 (7th Cir. 2014). Any conceivable rational basis will do. It does not need to be the actual basis for defendant's actions. *Chicago Studio Rental*, 940 F.3d at 980; see Srail, 588 F.3d at 946–47). So, the proper question in the present case is this: does the amended complaint reveal a rational basis for treating Plaintiff differently notwithstanding any alleged animus? The answer is yes.

The amended complaint alleges that Sikanich arrived at the police station and swore out a criminal complaint against Plaintiff. FAC at ¶¶ 51-52. This suggests an objectively rational basis to arrest Plaintiff and not another individual accused of committing a crime, even if the Defendant Officers were subjectively motivated by a desire to curry favor with Sikanich or by personal animus toward the Plaintiff. It is rational to arrest a suspect when the victim of the alleged crime travels to the police station to swear out a criminal complaint against the suspect under penalty of perjury while declining to arrest a suspect accused of committing a crime where the alleged victim does not swear to the facts of the complaint under oath. Of course, Plaintiff maintains that political connections may also plausibly explain why he was arrested. "But the test for rationality does not ask whether the benign justification was the actual justification. All it takes to defeat the [Plaintiff's] claim is a conceivable rational basis for the difference in treatment." *D.B. ex rel. Kurtis B. v. Kopp*, 725 F.3d 681, 686–87 (7th Cir. 2013). Because Plaintiff has failed to eliminate any reasonably conceivable state of facts that could provide a rational basis for the alleged disparate treatment, the Court should dismiss his equal protection claim.

## D.    The Malicious Prosecution Claim Is Facially Deficient

The Court should dismiss Plaintiff's malicious prosecution claim because the allegations in the complaint establish that Defendant Officers did not commence or continue the criminal proceeding and that the criminal charges were supported by probable cause. To bring a claim for malicious prosecution under Illinois law, a plaintiff must show: (1) the commencement or continuance by the defendant of an original judicial proceeding against him; (2) the termination of the proceeding in his

11

favor; (3) the absence of probable cause for the proceeding; (4) malice; and (5) damages. *Barnes v. City of Centralia*, 943 F.3d 826, 833 (7th Cir. 2019); *see also Swick v. Liautaud*, 169 Ill. 2d 504, 512 (1996). The absence of any one element precludes the claim. *Johnson v. Saville*, 575 F.3d 656, 659 (7th Cir. 2009) (*citing Swick v. Liautaud*, 662 N.E.2d 1238, 1242–43 (Ill. 1996)).

### 1. The Amended Complaint Alleges Facts That Show Defendant Officers Did Not Commence or Continue A Criminal Prosecution Against Plaintiff

To begin with, the Court should dismiss Plaintiff's malicious prosecution claim because Defendant Officers did not commence or continue the criminal proceeding. "In Illinois, criminal proceedings are commenced by the filing of a complaint, an indictment, or an information." *Logan v. Caterpillar, Inc.*, 246 F.3d 912, 922 (7th Cir. 2001) (citing 725 ILCS 5/111-1 (West 1996)).

Here, the only criminal proceeding commenced against Plaintiff was the misdemeanor charge for theft of lost or mislaid property. Plaintiff's complaint makes perfectly clear that the criminal proceeding against him was commenced by Sikanich, not Defendant Officers. *See* FAC. at ¶ 52; Criminal Complaint. Specifically, on August 19, 2019, Sikanich signed a misdemeanor complaint charging Plaintiff with theft of lost or mislaid property. *See* Criminal Complaint. Consequently, Defendant Officers did not commence a criminal prosecution against Plaintiff.

Nor did they *continue* a criminal proceeding against Plaintiff. The Illinois Supreme Court has acknowledged that prosecutors are presumed to have independent discretion to commence or continue a criminal proceeding. *Beaman v. Freesmeyer*, 2019 IL 122654, ¶ 44. This presumption can be overcome when the defendant played a significant role in the criminal case. *Id.* However, if a private citizen knowingly gives false information to a detective or prosecuting attorney, it is impossible for the detective or prosecuting attorney to exercise their independent discretion, and a prosecution based upon that false information is solely attributable to the private citizen. *Randall v. Lemke*, 311 Ill. App. 3d 848, 851 (2000).

Here, Plaintiff alleges that Sikanich instigated a police investigation by falsely reporting that his cellphone had been stolen and then filled out a criminal complaint in which he falsely accused Plaintiff of stealing the cellphone. FAC at ¶¶ 52, 125-26. As such, but for the allegedly false information provided by Sikanich, Defendant Officers would have never arrested Plaintiff, and Plaintiff would not have been prosecuted. The allegedly false information made it impossible for Defendant Officers to exercise their independent discretion. Because the allegations in the complaint show that Defendant Officers neither commenced nor continued the criminal prosecution, Plaintiff's malicious prosecution claim fails on its face and must be dismissed.

### 2. The Amended Complaint Alleges Facts That Show The Criminal Charges Were Supported By Probable Cause

Plaintiff's malicious prosecution claim fails for a second and independent reason – namely, the criminal charges against him were supported by probable cause. Probable cause is an absolute bar to an action for malicious prosecution. *Turner v. Chicago*, 91 415 N.E.2d 481, 485 (1st Dist. 1980). A reasonable ground for belief of an accused's guilt may be on information from other persons as well as on personal knowledge. *Johnson v. Target Stores, Inc.,* 341 Ill. App. 3d 56, 71-72 (2003). Moreover, the complainant is not required to verify the correctness of each item of information obtained; it is sufficient to act with reasonable prudence and caution. *Id.* In addition, if the victim of the crime supplies police with the information forming probable cause, there is a presumption that the information is inherently reliable. *Sang Ken Kim v. City of Chicago*, 368 Ill. App. 3d 648, 655 (2006). "The pertinent time for making the probable cause determination is the time when the charging document is filed, rather than the time of the arrest." *Porter v. City of Chicago*, 393 Ill.App.3d 855 (2009).

The misdemeanor complaint was filed in this case on August 20, 2019. *See* Criminal Complaint. The complaint does not allege any facts to show that the evidence supporting probable cause was different at the time charges were filed than it was at the time Plaintiff was arrested. And, as discussed above, the allegations in the complaint establish that Defendant Officers had probable cause to arrest

Plaintiff. As such, the criminal proceedings were supported by probable cause and Plaintiff's malicious prosecution claim must be dismissed.

### E. The Conspiracy Claim Cannot Stand Without An Underlying Claim And Is Insufficiently Pled

The Court should dismiss Plaintiff's conspiracy claim because he failed to plead an underlying state law tort claim. Even if he did (he did not), the Court should still dismiss his conspiracy claim as it consists of nothing more than conclusory assertions.

#### 1. Plaintiff Failed to Plead an Underlying State Law Tort Claim

Plaintiff's conspiracy claim fails because he failed to plead an underlying claim. "Civil conspiracy claims cannot stand where there are no underlying intentional torts that defendants could have conspired to perform." *Farwell v. Senior Servs. Assocs., Inc.*, 970 N.E. 2d 49, 58 (Ill. S.Ct. 2012).

Here, Plaintiff claims that Defendant Officers conspired to commit malicious prosecution. *See* FAC at ¶¶ 142-147. As discussed above, Plaintiff has failed to state a claim for malicious prosecution. It follows then that Plaintiff's conspiracy claim must be dismissed.

#### 2. The Complaint Does Not Set Forth Facts to Support the Conspiracy Claim

Plaintiff's conspiracy claim must also be dismissed because it is insufficiently pled and woefully inadequate. To succeed on a state law claim of civil conspiracy, Plaintiff must establish "(1) an agreement between two or more persons for the purpose of accomplishing either an unlawful purpose or a lawful purpose by unlawful means; and (2) at least one tortious act by one of the co-conspirators in furtherance of the agreement that caused an injury to the plaintiff." *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 509 (7th Cir. 2007). "The agreement is a necessary and important element of this cause of action." *Id.* "A defendant who innocently performs an act which happens to fortuitously further the tortious purpose of another is not liable under the theory of civil conspiracy." *Id.*

Plaintiff's amended complaint makes no mention of any agreement between anyone to do anything, let alone commit malicious prosecution. Plaintiff alleges that "Defendants acted in concert

in a conspiracy," "Defendants, acting in concert, conspired to accomplish an unlawful purpose by unlawful means," and "each of the Defendant co-conspirators committed overt acts, and . . . was a willful participant." FAC at ¶¶ 143-45. These allegations are insufficient for purposes of surviving a motion to dismiss. *See Ryan v. Mary Immaculate Queen Ctr.*, 188 F.3d 857, 860 (N.D. Ill. 1999) (holding that a conspiracy claim was inadequately pled when "there is no indication of when an agreement between [the defendants] was formed, what its terms were . . ., or what [each defendant's] role was in the [agreement]"). As such, Plaintiff's conspiracy claim must be dismissed.

### F.    The Indemnification Claim Cannot Stand Without An Underlying Claim

Because Plaintiff has failed to state an underlying claim for liability, the Court should dismiss his indemnification claim against Defendant City. *See Baskins v. Gilmore*, 2018 WL 4699847, at *12 (N.D. Ill. Sept. 30, 2018) ("[a]n indemnification claim necessarily will be tied to an underlying claim for liability").

### CONCLUSION

**WHEREFORE**, for the foregoing reasons, Defendants respectfully request that this Honorable Court grant their Motion to Dismiss in its entirety and for any other just relief.

Date:  April 2, 2021

Respectfully submitted,


/s/ *Jennifer K. Bagby*
Jennifer K. Bagby
Chief Assistant Corporation Counsel
On behalf of Defendants Corona and Ing

/s/ *Gregory Beck*
Gregory Beck
Assistant Corporation Counsel Supervisor
On behalf of Defendants Palka, Smith, Bilos, and Ferrara

CELIA MEZA
Acting Corporation Counsel for the City of Chicago

BY:    /s/Joi Kamper
Assistant Corporation Counsel Supervisor
On behalf of Defendant City of Chicago

Jennifer K. Bagby, Chief Assistant Corporation Counsel
Jordan Yurchich, Assistant Corporation Counsel
Nicholas Perrone, Assistant Corporation Counsel
City of Chicago, Department of Law
2 N. LaSalle Street, Suite 420
Chicago, Illinois 60602
(312) 742-6408
Jennifer.Bagby@CityofChicago.org
Attorneys for Defendants Corona and Ing

Gregory Beck, Assistant Corporation Counsel Supervisor
Elizabeth Hanford, Assistant Corporation Counsel
Emily Bammel, Assistant Corporation Counsel
2 N. LaSalle Street, Suite 420
Chicago, Illinois 60602
(312) 742-5146
Gregory.Beck@CityofChicago.org
Attorneys for Defendants Palka, Smith, Bilos, Ferrara

Caroline Fronczak, Deputy Corporation Counsel
Joi Kamper, Assistant Corporation Counsel Supervisor
Nicholas Peluso, Assistant Corporation Counsel
City of Chicago, Department of Law
2 N. LaSalle Street, Suite 420
Chicago, Illinois 60602
T: (312) 744-0226
Joi.Kamper@cityofchicago.org
Attorneys for Defendant City of Chicago

## CERTIFICATE OF SERVICE

I hereby certify that on April 1, 2021, I served a copy of **DEFENDANTS' JOINT MOTION TO DISMISS** upon all parties via their attorneys of record by causing it to be filed by the CM/ECF system.

/s/ Gregory Beck
Gregory Beck

16