IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Benjamin George,<br><br>    PLAINTIFF,<br><br>    v.<br><br>City of Chicago, James Gardiner, Charles Sikanich, Chicago Police Officers Solomon Ing (#4117), Peter Palka (#9413), Daniel Smith (#20066), Bilos (#21010), Joseph Ferrara (#233), Sergio Corona (#3331), Ortiz (Star # unknown), and Unknown Chicago Police Officers,<br><br>    DEFENDANTS. | Case No: 20-cv-6911<br><br>Judge: Honorable Robert Blakey<br><br>Magistrate Judge: Honorable Beth Jantz<br><br><br><br>**JURY TRIAL DEMANDED** |

**DEFENDANT CITY OF CHICAGO'S MOTION TO DISMISS COUNT VI OF PLAINTIFF'S FIRST AMENDED COMPLAINT FOR INDEMNIFICATION OF DEFENDANTS SIKANICH AND GARDNIER**

Defendant, CITY OF CHICAGO ("City"), by and through Celia Meza, Acting Corporation Counsel for the City of Chicago, and pursuant to Fed.R.Civ.P. Rule 12(b)(6), move to dismiss Count VI of Plaintiff's First Amended Complaint ("FAC"), for indemnification of Defendants Sikanich and Gardiner only, as alleged against the City, and state in support of its motion as follows:

**Introduction**

The City moves to dismiss Plaintiff's claim against the City for indemnification for the actions of Defendants, Charles Sikanich ("Defendant Sikanich") and James Gardiner ("Defendant Gardnier"), contained in Count VI of Plaintiff's complaint. (*See* Doc. 37). To state a claim for indemnification against the City under 745 ILCS 10/9-102, Plaintiff must allege injury resulting from an act committed by a City employee while the employee is acting within the scope of his or her employment. Acts that fall outside the scope of employment cannot give rise to a cause of action against the City under Section 9-102.

1

In this case, Plaintiff alleges that certain city employees violated his 4th and 14th Amendment rights, committed malicious prosecution, and conspired to commit malicious prosecution when they arrested him for theft of a telephone that belonged to Defendant Sikanich and that the City should indemnify all defendants for these acts. But Plaintiff has failed to allege that he was injured by any act of either Defendant Sikanich or Defendant Gardiner that occurred while either defendant was acting within the scope of his City employment. Accordingly, for the reasons stated herein, Plaintiff's claim for the City to indemnify the actions of Defendants Sikanich and Gardiner must be dismissed.

## Relevant Factual Background

The Complaint alleges that on the morning of August 19, 2019, Plaintiff took possession of a cell phone that he found at a 7/11 store located at 6000 W. Higgins, Chicago, IL 60630. (*See Pl. FAC* ¶¶ 15 and 16). According to Plaintiff, he was not able to ascertain the owner of the phone and therefore intended to take it to the 16th District Police station after he finished work. (*Id.* ¶¶ 17 and 19).

The cell phone belonged to Defendant Sikanich, who is, and at all times relevant to the complaint was, the superintendent for streets and sanitation in the 45th Ward. (*Id.* ¶¶ 8, 16, 22 and *Exhibit 1 to FAC.*). After noticing at some point that it was missing, Defendant Sikanich informed Defendant Gardiner, the 45th Ward Alderman, that he had lost his cell phone. (*Id.* ¶¶ 9, 21 and 22). Defendant Gardiner is or was a firefighter in addition to being the 45th Ward Alderman. (*Id.* ¶¶ 29 and 119). Defendant Gardiner told Defendant Sikanich to report the phone as stolen despite having been told the phone was lost, not stolen. (*Id.* ¶ 23). At Defendant Gardiner's direction, Defendant Sikanich then, allegedly, falsely reported to police that his phone had been stolen and pressured police to arrest Plaintiff. (*Id.* ¶¶ 21-24, 35, 52, 54-56 and 89).

After Defendant Sikanich reported the phone as stolen, police officers visited Plaintiff's home and spoke with Plaintiff when his roommate called him. (*Id.* ¶ 26). While they were on the phone with Plaintiff, police instructed him to return the phone to the police station. (*Id.* ¶ 27). After police officers

2

visited Plaintiff's home, Defendant Gardiner visited Plaintiff's residence and asked his roommate to call Plaintiff. (*Id.* ¶ 31). During this call with Plaintiff, Defendant Gardiner accused Plaintiff of stealing Defendant Sikanich's phone and used "profane, accusatory and inflammatory language", despite knowing that Sikanich lost his phone. (*Id.* ¶¶ 31 and 32). Defendant Gardiner then asked Plaintiff's roommate why he allowed Plaintiff to live there. (*Id.* ¶ 34).

Defendant Sikanich drove his City of Chicago Department of Streets and Sanitation truck up and down Plaintiff's block just prior to, during and for 20 minutes after Gardiner's visit. (*Id.* ¶¶ 28, 30 and 36). An hour after Defendant Gardiner left Plaintiff's residence, Sikanich also visited Plaintiff's residence and told Plaintiff's roommate that Plaintiff had been arrested, that he had a gun on him and referred to Plaintiff as a gypsy. (*Id.* ¶ 37). Plaintiff also alleges that Defendants Gardiner and Sikanich carry city-issued, six-pointed, metallic, aldermanic badges either in their truck or on their person while on duty. (*Id.* ¶ 95).

Plaintiff alleges that in making these trips to Plaintiff's residence, Defendants Gardiner and Sikanich took a police investigation into their own hands, abused their city office and used the "imprimatur of city authority and office to act as de facto vigilante police". (*Id.* ¶¶ 129 and 114). Plaintiff also claims that by allegedly lying about Sikanich's phone being stolen, Defendants Sikanich and Gardiner used the power of their government office to pressure police officers to baselessly arrest Plaintiff. (*Id.* ¶ 116).

The Complaint fails entirely to plead any facts that would permit a reasonable inference that Sikanich and Gardiner were acting within the scope of their employment when they engaged in the above-described activities. For this reason, Count VI as it applies to a claim of indemnification for Defendants Gardiner and Sikanich should be dismissed with prejudice pursuant to Fed.R.Civ.P. Rule 12(b)(6).

**Pleading Requirements and Rule 12(b)(6) Motions to Dismiss Under *Twombly* and**

***Iqbal***

When evaluating a motion to dismiss, the court accepts a complaint's well-pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-556 (2007) (citations omitted). A well-pleaded complaint contains allegations that plausibly suggest that the plaintiff has a right to relief. *Id.* at 555; see also *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1953 (2009). The plausibility standard announced in *Twombly* and *Iqbal* states that the court will accept well-pleaded facts in a complaint as true, but legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to a presumption of truth. *Iqbal*, 129 S. Ct. at 1951 (2009). Once the conclusory allegations are taken away from consideration, the court determines whether the remaining factual allegations "plausibly suggest an entitlement to relief." *Id.* These allegations must not merely be consistent with an entitlement to relief, but they must plausibly suggest an entitlement to relief. *Id.* at 557. If the allegations give rise to an "obvious alternative explanation," the complaint may "stop short of the line between possibility and plausibility of 'entitle[ment] to relief." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011).

The Seventh Circuit has interpreted *Twombly* and *Iqbal* to require "some specific facts" that "give enough details about the subject-matter of the case to present a story that holds together." *Id.* at *12-13. (quoting *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010)). Factual specificity is determined by the complexity of the claim but the facts must give the defendants "notice of what the case is all about and show how, in the plaintiff's mind, at least, the dots should be connected." *Id.* at *13 (quoting *Swanson*, 614 F.3d at 405).

Applying these standards here, Plaintiff's claim against the City for indemnification for Defendants Sikanich and Gardiner fails for want of facts plausibly showing that they were acting

4

within the scope of their employment, which precludes the City's liability for their misconduct under an indemnification theory.

I. **Argument**

a. **Plaintiff's allegations do not plausibly suggest that Defendants Sikanich and Gardiner were acting within the scope of their employment.**

This Court should dismiss Plaintiff's claims seeking damages from the City, on the ground that the City has no duty to pay any judgment against Defendants Sikanich and Gardiner because the allegations in Plaintiff's complaint make clear that Defendants Sikanich and Gardiner were acting outside the scope of their employment. Plaintiff fails to describe any connection between Sikanich and Gardiner's actions and their employment with the City except repeatedly stating that they are City employees.

Under the Tort Immunity Act, a municipality must indemnify an employee who is liable for a judgment or settlement "while acting within the scope of his employment." 745 ILCS 10/9-102. Scope of employment is governed by Illinois law, which considers an employee's conduct within the scope of employment only if (1) it is of the kind he is employed to perform; (2) it occurs substantially within the authorized time and space limits; and (3) it is actuated, at least in part, by a purpose to serve the master. *Pyne v. Witmer*, 129 Ill. 2d 351, 359-60 (1989). If any of these criteria is not met, the employee's actions are outside the scope of his employment. *E.g., Adames v. Sheahan*, 233 Ill. 2d 276, 303 (2009). "Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master." Restatement (Second) of Agency § 228 (1958). When employee's deviation from scope of employment is exceedingly marked and unusual, employee may be found as matter of law to be outside scope of employment. *Pyne*, 129 Ill.2d at 361.

Here, Plaintiff alleges no facts plausibly showing that Defendants Sikanich and Gardiner's alleged misconduct was "of the kind" that they were "employed to perform" or that it was "actuated, at least in part, by a purpose to serve the master." *Pyne*, 129 Ill. at 359-60. Plaintiff describes several alleged activities by Sikanich and Gardiner but makes no effort to connect the dots between those activities and the kind of duties Gardiner and Sikanich are employed to perform or how their actions were motivated by a City interest.

Plaintiff asks this court to hold the City liable for the following actions by Defendants Gardiner and Sikanich: lying to police, attempting to act as de facto police to retrieve Sikanich's personal phone, filing a false police report, pressuring police, harassing Plaintiff's roommate and calling Plaintiff and using profane language because Plaintiff had Defendant Sikanich's phone. Wisely, Plaintiff does not attempt to describe how Sikanich and Gardiner's attempts to run down Sikanich's phone were duties that are of the kind they are employed to perform as these actions clearly are not. Instead, Plaintiff's demand for the City's indemnification of Defendants Sikanich and Gardiner rest solely on the basis that because they were employed by the City while they undertook the alleged actions, the City is liable. Merely being employed by the City, however, does not mean that Sikanich and Gardiner's actions fall within the scope of their employment. Plaintiff's allegations that the City is liable for Defendants Sikanich and Gardiner's alleged actions because they are city employees are the very type of conclusory allegations that are not entitled to a presumption of truth. *Iqbal*, 129 S. Ct. at 1951 (2009).

Even if Defendants Gardiner and Sikanich were acting under the color of law, as Plaintiff alleges, that would not by itself mean that they were acting within the scope of their employment. (*See Pl. FAC* ¶¶ 11, 107, 119, 131 and 150). Plaintiff describes activities in which Defendants Gardiner and Sikanich were using, or possibly carrying, some sort of city issued item such as driving city vehicles and possessing six-pointed city issued aldermanic badges. (*Id.* ¶¶ 28, 30, 35, 36 and 95). While Plaintiff

6

does not allege that the described aldermanic badges were even visible[1], Plaintiff's First Amended Complaint does make it clear that these were not Chicago Police Badges and not Chicago Police cars. Defendants Gardiner and Sikanich may have been holding themselves out as city employees during the events alleged, but the items they used to do so, do not broaden the scope of their employment duties from a city alderman/firefighter and streets and sanitation warden to police officers or mean they were acting in the City's interest. Acting "Under color of" state law under § 1983 is not coextensive with "scope of employment" under Section 9-102. *Anderson v. Moussa*, 250 F.Supp.3d 344, 350 (N.D. Ill. 2017)(citing *Coleman v. Smith*, 814 F.2d 1142, 1149 (7th Cir. 1987) ("We do not confuse the 'under color of state law' element of section 1983 with the 'scope of employment' requirement of the indemnification statute. A finding of the first element is not necessarily a finding as to the latter.")). As described below, Plaintiff's First Amended Complaint fails to describe how the actions of Defendants Gardiner and Sikanich, even if undertaken in a city vehicle or possibly while a city badge was somewhere in their possession, were duties encompassed by their employment, or how they were motivated by a City interest.

**b. Plaintiff only describes actions that have no plausible connection to the kind of work that Defendants Sikanich and Gardiner are employed to perform.**

The first requirement that must be met for an employee's actions to be within the scope of employment is that the conduct of the employee is of the kind he is employed to perform. *Pyne* at 360. Here, Plaintiff only describes actions by Gardiner and Sikanich that have no plausible connection to the type of duties they would be employed to perform.

First, at least three of the activities Plaintiff describes are illegal. Lying to police and filing a false police report, are criminal activities punishable under Illinois law because a person who files a

---

[1] Plaintiff does not describe any instance in which these badges were even visible. "Failure to identify oneself as a state official is inconsistent with being cloaked in one's official authority." *Wilson v. Price*, 624 F.3d 389, 392 (7th Cir.2010). There is no allegation that Defendants Sikanich or Gardiner used these badges as a cloak of authority.

false police report commits the crime of disorderly conduct. *See* 720 ILCS 5/26-1(a)(4). Furthermore, using their positions to exert pressure on law enforcement also suggest that Defendants Gardiner and Sikanich engaged in criminal intimidation and possibly aggravated felony intimidation under Illinois law because they allegedly exerted pressure on peace officers while those officers were engaged in their duties. *See* 720 ILCS 5/12-6(a)(6) and 720 ILCS 5/12-6.2 (a)(3)(A)(i).

While even the criminal acts of an employee may fall within the scope of employment (*see, e.g., Webb v. Jewel Cos.*,137 Ill.App.3d 1004, 1006, 92 Ill. Dec. 598, 485 N.E.2d 409 (1985); Restatement (Second) of Agency § 231 (1958)), if the employee's actions are different from the type of acts he is authorized to perform or were performed purely in his own interest, he has departed from the scope of employment (see *Sunseri v. Puccia*, 97 Ill.App.3d 488, 493, 52 Ill. Dec. 716, 422 N.E.2d 925 (1981); Restatement (Second) of Agency § 228(2) (1958)). Moreover, serious crimes are generally unforeseeable because they are different in nature from what employees in a lawful occupation are expected to do. *Wright v. City of Danville*, 174 Ill.2d 391, 405 (Ill.1996). Here, Plaintiff has provided no basis to make a plausible claim that the City employs people to commit criminal acts. Defendants Sikanich and Gardiner's alleged actions are clearly not of the kind that public officials like Gardiner, and public servants, like Sikanich, are authorized or expected to perform because they were either illegal, duties for the police to perform, or were not in the City's interest.

Even if Defendants Sikanich and Gardiner were acting in the City's interest, and there is nothing in Plaintiff's complaint to suggest that they were, an employer is not responsible for acts which are clearly inappropriate to or unforeseeable in the accomplishment of an authorized result. *See* Restatement (Second) of Agency § 231, Comment a (1958); see also *Webb*, 137 Ill.App.3d at 1006, 92 Ill. Dec. 598, 485 N.E.2d 409; *Nelson v. Nuccio*, 131 Ill.App.2d 261, 263, 268 N.E.2d 543 (1971). Aside from being unlawful, the only actions described in plaintiff's complaint are of a kind that are too far removed from the type of actions streets and sanitation superintendents, firefighters

8

or aldermen carry out as part of their employment to be foreseeable. Engaging in illegal activity, such as filing a false police report and lying to police, harassing residents and intimidating officers in order to obtain the lost personal cellphone of a streets and sanitation superintendent have no foreseeable connection to the employment duties of Defendant Sikanich or Defendant Gardiner.

First, the City has a police force to investigate crime and make arrests. Aldermen, firefighters, and streets and sanitation superintendents are not part of the Chicago Police Department, therefore, Sikanich and Gardiner's alleged actions as de facto police were clearly not foreseeable. If Gardiner and Sikanich were acting as de facto police, as Plaintiff claims, they were, by definition, not acting as de jure police. Further, under the Illinois Municipal Code, aldermen are elected members of the municipality's city council, and in that capacity serve a legislative function. *See* 65 Ill. Comp. Stat. § 5/6–4–6. None of Gardiner's actions have a plausible relation to a legislative function and Plaintiff does not describe any relation to a legislative function or duty. Similarly, Sikanich's actions could not possibly have been foreseeable to his duties in the Streets and Sanitation Department as they were all undertaken in the pursuit of retrieving his personal property or avenging its loss.

Second, harassment of city residents to retrieve one's personal phone is completely incompatible with public service and therefore, is unforeseeable. Even if retrieving Sikanich's phone was somehow an authorized result, and the Complaint does not allege that it was, the means by which this task was undertaken, was not foreseeable. There is no plausible scenario in which the City would expect employees in positions such as Defendants Sikanich and Gardiner to engage in the alleged conduct of harassment to obtain their personal property. *See Copeland v. Macon County*, 403 F.3d 929, 932-936 (7th Cir. 2005) (rejecting respondeat superior liability when the connection between a correctional officer recruiting inmates to assault another inmate was too attenuated to be within the scope of his employment).

While their employment with the City may have allowed them to engage in certain activities, that does not mean that Defendants Sikanich and Gardiner's actions were of the kind that they were employed to perform. See *Gambling v. Cornish*, 426 F. Supp. 1153 (N.D. Ill. 1977) (holding that off duty officers who sexually assaulted and falsely imprisoned a complainant were not within the scope of employment even though the defendants status as off-duty police officers enabled them to engage in the misconduct). Plaintiff's claim that Defendants Sikanich and Gardiner's actions were within the scope of their employment, or even incidental to their employment, is not based on any facts contained within his complaint.

**c. Plaintiff only describes actions motivated by Defendants Gardiner and Sikanich's personal interest or that serve to interfere with any City interest.**

The third requirement that must be met for an employee's actions to be within the scope of employment is that the conduct must be actuated, at least in part, by a purpose to serve the master. *Pyne* at 359-60. Where the motive for the employee's tort is personal and solely for the benefit of the employee, the employer is not subject to liability. *Wright*, 174 Ill.2d 391, 407. There is no possible City interest or benefit that could be served by the alleged behavior of Defendants Sikanich and Gardiner and Plaintiff's complaint does not describe one.

Sikanich and Gardiner were on a personal errand to retrieve Sikanich's property when they engaged in the alleged conduct. Both Plaintiff's First Amended Complaint and the criminal complaint regarding the theft of Sikanich's phone, signed by Sikanich, state that the cell phone at issue belonged to Sikanich, not the City. (*See FAC.* ¶¶ 16, 22 and *Exhibit 1 to FAC*). In the criminal complaint, Sikanich does not list his occupation with the City nor does he provide the address of any City office, instead, he describes his address as "classified". (*See Exhibit 1 to* FAC). There is no connection in either Plaintiff's First Amended Complaint or the attached criminal complaint between Sikanich's phone and the City.

In addition to failing to connect Defendants Gardiner and Sikanich's actions to any City interest, Plaintiff only describes actions that would serve to sabotage any City interest. For example, as Plaintiff alleges, their alleged conduct would not serve to instill trust in public officials but would instead serve to create a mistrust in government. *See FAC* ¶ 130. Their alleged actions also would not serve to help city government run more efficiently as lying to police and filing false reports is certainly a waste of police time.

Defendants Gardiner and Sikanich's actions were allegedly undertaken in the name of retrieving Sikanich's phone but nothing in Plaintiff's allegation describes how these actions serve any City interest. In *Boston v. U.S. Steel Corp.*, the court refused to hold U.S. Steel vicariously liable for the acts of an employee because the method in which she performed her duties was based on a personal motivation and did not serve her employers' interest. *Boston v. U.S. Steel Corp.*, 816 F.3d 455, 467 (7th Cir. 2016). The employee at issue provided inadequate training to other employees in an attempt to safeguard her own position. *Id.* at 467-468. Here, there are no facts in Plaintiff's complaint that plausibly infer that Sikanich and Gardiner were professionally motivated or were acting in the City's interest. If anything, every action described in Plaintiff's First Amended Complaint is linked to a personal desire to retrieve Sikanich's phone, or seek retribution, and is performed in a manner that conflicts with any City interest.

Absent factual allegations plausibly showing that Defendants Sikanich and Gardiner were acting within the scope of their employment during the times relevant here, Plaintiff cannot seek damages from the City for these defendants' misconduct under an indemnification theory.

## CONCLUSION

WHEREFORE, for the foregoing reasons, the City respectfully requests that this honorable Court dismiss, with prejudice, Count VI of Plaintiff's Complaint.

DATED: April 2, 2021 　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　CELIA MEZA
　　　　　　　　　　　　　　　　　　　　　　Acting Corporation Counsel for the City of Chicago

　　　　　　　　　　　　　　　BY:　/s/ Joi Kamper
　　　　　　　　　　　　　　　　　　　　　　Assistant Corporation Counsel Supervisor
　　　　　　　　　　　　　　　　　　　　　　On behalf of Defendant City of Chicago

Caroline Fronczak, Deputy Corporation Counsel
Joi Kamper, Assistant Corporation Counsel Supervisor
Nicholas Peluso, Assistant Corporation Counsel
City of Chicago, Department of Law
2 North LaSalle Street, Suite 420
Chicago, Illinois 60602
312.744.0226 (Phone)
Joi.Kamper@cityofchicago.org
Attorney No. 6300150

## CERTIFICATE OF SERVICE

I hereby certify that, on **April 2, 2021**, I submitted with the Clerk for the Northern District of Illinois using the Court's electronic filing system or CM/ECF **The City of Chicago's Motion to Dismiss Count VI of Plaintiff's First Amended Complaint.**

*/s/ Joi Kamper*

Joi Kamper

Assistant Corporation Counsel Supervisor