IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Benjamin George, | ) | |
| | ) | Case No. 20-cv-06911 |
| Plaintiff, | ) | |
| | ) | Hon. Judge Blakey |
| v. | ) | |
| | ) | Hon. Magistrate Judge Jantz |
| City of Chicago, James Gardiner, | ) | |
| Charles Sikanich, Chicago Police Officers | ) | |
| Solomon Ing, Peter Palka, Daniel Smith, | ) | |
| Bilos, Joseph Ferrara, Sergio Corona, | ) | |
| Ortiz, and Unknown Chicago Police | ) | |
| Officers, | ) | |
| | ) | |
| Defendants. | ) | JURY TRIAL DEMANDED |

**DEFENDANTS JAMES GARDINER'S AND CHARLES SIKANICH'S
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

Defendants James Gardiner ("Gardiner") and Charles Sikanich ("Sikanich"), (collectively, "Movants"), by and through their attorney, Thomas D. Carroll of Thomas R. Raines Attorney at Law, LLC, hereby move to dismiss Counts I-V of Plaintiffs' First Amended Complaint (the "Complaint"), with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(6). In support of the motion, Movants state as follows:

**INTRODUCTION**

Plaintiff Benjamin George ("Plaintiff") advances his First Amended Complaint against the individual Movants on the strength of an implausible set of allegations intended to conjure a malicious, improvised conspiracy among the Movants and the defendant police officers (the "Officers") to deprive him of various civil rights. Plaintiff offers a handful of new allegations in the amendment, none of which cure the basic defects of the original complaint. It still fails the basic plausibility test required of federal pleadings. It still fails to allege a coherent conspiracy. It

1

still fails to indicate how any of Movants' alleged actions are actions taken "under color of state law." The Complaint pertaining to the Movants relies almost entirely on unsupported speculation and vague allegations about their general bad natures, none of which serves to elucidate their reasons for pursuing a vendetta against Plaintiff. Movants should not have to spend time and money to disprove a speculative conspiracy theory designed to impose liability on them for Plaintiff's subsequent misfortunes. Plaintiff's amendments do not correct the basic failings of the Complaint. Counts I-V are inadequate as matters of law, and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## LEGAL STANDARDS

### FRCP 12(b)(6)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint. See, e.g., *Bell v. City of Country Club Hills*, 841 F.3d 713, 716 (7th Cir. 2016). In ruling on a Rule 12(b)(6) motion, the court accepts all well-pleaded facts in a plaintiff's complaint as true and views them in the light most favorable to the plaintiff. See *United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 839 (7th Cir. 2018). To survive a motion to dismiss, the complaint must contain sufficient factual information to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also, e.g., Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (plaintiffs cannot satisfy the notice pleading rule by "merely parrot[ing] the

statutory language of the claims that they are pleading"; rather, they must provide "some specific facts to ground those legal claims").

42 U.S.C. Sec. 1983

Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ….

42 U.S.C. § 1983.

"[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144, n.3 (1979). In order to state a claim under Section 1983, a plaintiff must allege that the defendant(s) deprived him of a right secured by the Constitution or laws of the United States, and that the defendant(s) acted under color of state law. *Starnes v. Capital Cities Media, Inc.,* 39 F.3d 1394, 1396 (7th Cir. 1994).

## ALLEGATIONS OF FACT PERTAINING TO MOVANTS

Sikanich is a ward superintendent for the City of Chicago's (the "City's") 45th Ward. (Cmplt., ¶ 8). Gardiner is the City's 45th Ward alderman, and supervises Sikanich. (Cmplt., ¶¶ 8-9).

On the morning of August 19, 2019, Sikanich left his cell phone at a 7/11 store, which Plaintiff later discovered and picked-up. (Cmplt., ¶¶ 15-16). Sikanich eventually noticed the missing phone and reported to Gardiner that he had lost it. (Cmplt., ¶ 22). Gardiner told Sikanich to report the missing phone to the police. (Cmplt., ¶ 23). Sikanich reported the missing phone to the police. (Cmplt., ¶ 24). Officers Corona and Ortiz went to the home of Plaintiff's roommate

and inquired about the phone's whereabouts. (Cmplt., ¶¶ 26-27). Over the phone, Officer Ortiz instructed Plaintiff to turn-in the phone to the 16th District Police Station. (Cmplt., ¶ 27).

Later, Sikanich and Gardiner each made separate trips to Plaintiff's roommate's home and asked Plaintiff's roommate why he allowed Plaintiff to live there. (Cmplt., ¶¶ 28-29, 37). Sikanich drove around Plaintiff's neighborhood for a period of time in his City truck. (Cmplt., ¶ 30). Gardiner spoke with Plaintiff by phone and accused him of stealing Sikanich's phone. (Cmplt., ¶ 32). Plaintiff informed Gardiner that he was taking the phone to the 16th District Police Station. (Cmplt., ¶ 33). Gardiner asked Plaintiff's roommate why he allowed Plaintiff to live in his home. (Cmplt., ¶ 34). Gardiner called out to Sikanich, who was nearby in his vehicle and told him to have Plaintiff "locked-up." (Cmplt., ¶35). Sikanich drove around the neighborhood for 20 minutes, and returned to the home an hour later to speak with Plaintiff's roommate. (Cmplt., ¶¶ 36-37).

Within ten minutes of Gardiner's phone conversation with Plaintiff, Plaintiff went to the police station and gave Sikanich's phone to an unknown officer. (Cmplt., ¶ 49). Plaintiff was then "seized" by some of the Officers. (Cmplt., ¶ 50). Sikanich arrived at the station and walked into the back with several Officers. (Cmplt., ¶ 51). Plaintiff was being detained at the time of Sikanich's arrival. (Cmplt., ¶ 51). Sikanich then swore out a criminal complaint against Plaintiff for stealing his phone, and Plaintiff was arrested. (Cmplt., ¶¶ 52-60). Plaintiff was charged with theft of lost property, released the next day, and the case against him was dismissed 21 days later, after none of the arresting officers nor Sikanich showed up to complain in court. (Cmplt., ¶¶ 57-74).

Plaintiff alleges that as a result of Sikanich's report that his phone was stolen (which he was directed to report by Gardiner), Plaintiff was arrested and prosecuted, causing him to lose

4

business income, employees, his housing at the time, and eventually causing him to need inpatient treatment at a psychiatric hospital. (Cmplt., ¶¶ 77-88).

## ARGUMENT

I. <u>The Complaint's Allegations Pertaining to Movants Fail the *Iqbal* Plausibility Test.</u>

Counts I-V of the Complaint should be dismissed for failure to meet the threshold requirement of "plausibility" under *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Plaintiff sets forth a fantastical sequence of events by which Movants conspired to deprive him of his civil rights, without provocation of any kind, for the mere act of picking-up and seeking to return a misplaced phone to its owner.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" *Id.* (quoting *Twombly*, 550 U.S. at 557). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.

Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly,* 550 U.S. at 555). "Determining whether a complaint states a plausible claim for relief will… be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. "[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they

are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*. "The degree of specificity required is not easily quantified, but 'the plaintiff must give enough details about the subject-matter of the case to present a story that holds together.'" *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Swanson v. Citibank, N.A.,* 614 F.3d 400, 404 (7th Cir. 2010)).

Virtually all of the allegations of wrongful conduct by Sikanich and Gardiner are speculative, or rely on legal conclusions unsupported by well-pleaded baseline facts. Plaintiff asserts that Sikanich was aware that the phone was lost but not stolen, apparently from the moment he realized it was missing. (Cmplt., ¶ 22). This allegation is not plausible; he would have no way of knowing. Plaintiff alleges that Sikanich's boss, Gardiner, insisted that the phone had been stolen and demanded that he report it to police as such, before undertaking a "de facto police" investigation of the matter, borne of "animus." (Cmplt., ¶¶ 23, 89, 118). This is not plausible either. Gardiner would have no reason to want the phone reported as stolen rather than missing, and no way of knowing if it was stolen or missing.

Plaintiff offers no hint of an explanation about why Gardiner or Sikanich bore him personal animus, or wished to see him prosecuted even after he had returned Sikanich's phone – an act that would presumably be seen as helpful. By Plaintiff's account, Gardiner was determined to instigate an arrest from the moment he knew the phone was missing, presumably without knowing who had it, by urging Sikanich to report the phone as stolen rather than missing. Gardiner allegedly stalked Plaintiff's residence and ordered Sikanich, a streets and sanitation worker with no law enforcement duties, to have Plaintiff "locked up," despite Plaintiff's alleged personal assurance that he was going to turn in the phone. (Cmplt., ¶¶ 23, 29-

6

35). Plaintiff baselessly asserts that Movants conspired with the Officers in order concoct a false police report indicating that the phone was stolen, rather than missing, after Plaintiff had willingly surrendered the phone to police and after Plaintiff had informed Gardiner and the Officers that he wanted to turn over the phone. (Cmplt., ¶¶ 50-57).

There are myriad problems with the Complaint, but the most basic one is that it is not plausible, based on the bare facts alleged. The only well-pleaded facts of the Complaint pertaining to Sikanich are that he lost his phone, reported it stolen, drove around near Plaintiff's home, swore out a criminal complaint, went to Plaintiff's home after his arrest and asked why Plaintiff's roommate allowed him to live there and disparaged Plaintiff to his roommate.

The only well-pleaded facts of the Complaint pertaining to Gardiner are that he went to Plaintiff's home at some point, apparently to inquire about Sikanich's phone, asked why his roommate allowed him to live there, and spoke to the Plaintiff on the phone and asked or told him to turn Sikanich's phone over to police, before ordering Sikanich to have Plaintiff locked up.

Plaintiff's amendments attempt to paper-over the factual deficiencies by portraying the Movants as bad people, via vague references to prior bad acts, but they do not lend any color to the claims at issue in this action. (Cmplt., ¶¶ 89-95). None of the facts alleged in paragraphs 89-95 demonstrate a tendency, custom or practice by the Movants to coordinate with Chicago Police to have people arrested for innocent actions, or shed any light on the genesis or details of the alleged conspiracy against the Plaintiff. They should be disregarded.

The Court is bound to accept the sparse allegations described above as true, but should not throw out common sense or disregard the context of the allegations while assessing the overall plausibility of the Complaint. *Iqbal*, 556 U.S. at 679. The fact that Plaintiff has couched these unremarkable actions by the Movants as part of a malicious and hastily-concocted

7

conspiracy to deprive the Plaintiff, an apparent stranger, of his civil rights should not distract the Court from the paucity of tangible actions alleged about either Movant. Nor is the Court bound to accept mere speculations about whether and when the Movants knew the phone was missing rather than stolen, or why they preferred to see Plaintiff arrested and ejected from his home instead of being glad that the phone was returned. It is not impossible that the Movants undertook their courses of action in the manner and for the reasons Plaintiff speculates. But that is not the *Iqbal* standard. Plausibility is the standard, and Plaintiff's Complaint, as it pertains to the Movants, is not plausible. Counts I-V, as they pertain to the Movants, should be dismissed.

II. The Allegations Against Movants are not Actions Taken "Under Color of Law."

Section 1983 only pertains to actions of state (or local) actors taken under "color of state law." None of the Movants' actions alleged in the Complaint were taken in their official capacities. Even if Plaintiff's allegations were plausible as a whole, they would fail that most basic test for causes of action under Section 1983. Therefore, Counts I – V should be dismissed.

Plaintiff repeatedly asserts that the actions taken by Gardiner and Sikanich were taken in their respective capacities as City officials. But he does not bother to articulate how or why it would be an official act for an alderman or his deputy, a streets and sanitation worker, to visit a person's residence and yell at his roommate while encouraging him to kick the person out, swear out a false criminal complaint, engage in a "vigilante" police investigation, or conspire with police officers (who are not prosecutors) to have someone maliciously prosecuted. All are actions taken outside the ambit of official duties. None is remotely connected to the legislative duties of an alderman, or his deputy, a streets and sanitation worker.

"[A]n action is taken under color of state law when it 'involves a misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with

8

the authority of state law.... As a result, acts by a state officer are not made under color of state law unless they are related in some way to the performance of the duties of the state office.'" *Honaker v. Smith,* 256 F.3d 477, 484-85 (7th Cir. 2001) (citation omitted). "To establish an official policy or custom, [a plaintiff] must show that his constitutional deprivation was caused 'by (1) the enforcement of an express policy [of the state or locality], (2) a widespread practice that is so permanent and well settled as to constitute a custom or usage with the force of law, or (3) a person with final policymaking authority." *Wragg v. Village of Thornton,* 604 F.3d 464, 467 (7th Cir. 2010) (quoting *Latuszkin v. City of Chi.,* 250 F.3d 502, 504 (7th Cir. 2001)). "Under the Illinois Municipal Code, aldermen are elected members of the municipality's city council, and in that capacity serve a 'purely legislative' function." *Wilson v. Price*, 624 F.3d 389, 392 (7th Cir. 2010) (citing 65 Ill. Comp. Stat. § 5/6–4–6). "When officials possess no authority to act, [courts] have found that their conduct is outside the ambit of Section 1983." *Id.* (citing *Gibson v. City of Chicago,* 910 F.2d 1510, 1518 (7th Cir. 1990)).

Plaintiff does not even attempt to describe a rational relationship between Gardiner's alleged actions and his aldermanic duties. As an alderman serving a purely "legislative function," Gardiner had no power to direct the police to do anything, or to direct Sikanich to have police lock somebody up. Arrests are made at the discretion of police officers. Whatever power Gardiner has to control his deputy's actions do not extend to the filing of false police reports. The moment an alderman undertakes to exercise executive authority, such as stepping into the shoes of police or directing them to take certain actions, he exceeds his authority as a legislator, and cannot be said to have acted under "color of state law." See *Wilson,* 624 F.3d at 392-394.

The analysis is even simpler for Sikanich, because Plaintiff effectively describes him as a servant of his boss's whims who filed a false police report on Gardiner's instruction. (Cmplt., ¶

113). If there is no nexus between an alderman's duties and the filing of a false police report, directing the police to take certain actions, or engaging in a conspiracy to commit malicious prosecution, there is certainly no nexus between the filing of a false report and the duties of an alderman's superintendent/streets and sanitation worker. The only non-conclusory allegation of the Complaint relating to Sikanich's actions as a City employee is that he drove around Plaintiff's neighborhood in a City truck before speaking with Plaintiff's roommate. That is neither a tortious act, nor one that can support a claim under Section 1983.

Plaintiff may respond that private actors can be liable under Section 1983 "where they have been jointly engaged with public officers in the denial of civil rights." *Mirshak v. Joyce*, 652 F.Supp. 359 (N.D. Ill. 1987) (citing *Tarkowski v. Robert Bartlett Realty Co.,* 644 F.2d 1204, 1206 (7th Cir.1980)). However, "it is not sufficient… to allege that the defendants acted in concert or with a common goal." *Id.* "There must be allegations that the defendants directed themselves toward an unconstitutional action by virtue of a mutual understanding." *Id.* "Even where such allegations are made, they must further be supported by some factual allegations suggesting such a 'meeting of the minds.'" *Id.* Even before *Twombly*, and *Iqbal*, a bare allegation of conspiracy was not enough to survive a 12(b)(6) motion to dismiss. *Cooney v. Rossiter*, 583 F.3d 967, 970 (7th Cir. 2009).

The Complaint is bereft of tangible factual allegations supporting a meeting of the minds between Sikanich and/or Gardiner, acting outside the scope of their official capacities, and the Officers. Gardiner is not alleged to have been present at the police station, or to have spoken with any of the Officers. Sikanich is not alleged to have done anything at the police station aside from talking with Officers in a separate room, and swearing out a complaint.

The entire premise of a meeting of the minds hinges on a single vague allegation that one of the officers told Plaintiff he "wasn't going to arrest [him], but this person has power and I have bosses."[1] (Cmplt., ¶¶ 72, 103, 113). Plaintiff alleges no underlying understanding on the officer's part, nor any facts indicating when, how, why or under what circumstances Gardiner and/or Sikanich conveyed their wishes that Plaintiff be arrested despite having willingly returned Sikanich's phone. Plaintiff does not allege that they had any motive for doing so. The quote is not even specific about whom the officer was referring to by "this person" or his "bosses."

"Neither 'a bare allegation of conspiracy,' nor 'mere suspicion that persons adverse to the plaintiff had joined a conspiracy against him or her [is…] enough to survive a motion to dismiss for failure to state a claim." *Cooney v. Rossiter,* 583 F.3d 967, 971 (7th Cir. 2009). A plaintiff must indicate the nature of an alleged conspiratorial agreement. *Walker v. Thompson,* 288 F.3d 1005, 1007–08 (7th Cir. 2002). "[Courts] have repeatedly held that 'the mere act of furnishing information to law enforcement officers' does not constitute joint activity in an unconstitutional arrest." *Spiegel v. McClintic*, 916 F.3d 611, 616-617 (7th Cir. 2019) (quoting *Butler v. Goldblatt Bros.*, 589 F.2d 323, 327 (7th Cir. 1978)). Further, "the mere act of filing false police reports is not actionable under Section 1983." *Id*. at 617.

Plaintiff effectively concedes that Sikanich's and Gardiner's actions during the day – their only alleged actions premised on well-pleaded information – were taken outside their official capacities, by describing them as "de facto vigilante police officers" who took "a police investigation into their own hands." (Cmplt., ¶¶ 114). While he couples those allegations with bare assertions that the actions were taken in their official capacities, Plaintiff surely recognizes

---

[1] It is worth noting that Alderman Gardiner had been in office for a total of 174 days at the time he is alleged to have engaged in this abuse of his "power" to which the unnamed officer's "bosses" responded despite their better instincts.

11

that "de facto" police officers are not acting in any official capacity, and that "vigilantism" is at odds with lawful official behavior.

*Wilson v. Price* is instructive. In *Wilson*, the court determined that a Harvey alderman who allegedly confronted and battered the plaintiff for failing to move vehicles during a snowstorm stepped out of his legislative shoes and into those of a private actor the moment he sought to make the plaintiff take a given action. *Wilson*, 624 F.3d 389, 392 ("Price crossed that line and entered the realm of law enforcement—which is wholly unrelated to the duties of a legislator—the moment he demanded that Wilson move the cars."). Price could not be liable under Section 1983 because alderman are not police officers, and his only official duties were the legislative duties of an alderman. *Id*.

Plaintiff has not alleged any actions by either Movant that can be plausibly tied to their respective official duties. Plaintiff has not alleged a conspiracy between Sikanich, Gardiner and the Officers to deprive him of constitutional rights with sufficient particularity. However egregious Plaintiff considers their actions, they were not actions "taken under color of state law," so Counts I – V of the Complaint must be dismissed with prejudice.

### III. Count III Fails Because It Does Not Sufficiently Plead an Underlying Tort.

Even if Plaintiff had alleged state action by the Movants in any of the counts, he does not coherently allege a "conscience-shocking" tort or torts by the Movants underlying his claim that they violated his constitutional rights in Count III. It should be dismissed.

"The Supreme Court has held that state action that shocks the conscience is conduct which may be deemed 'arbitrary in the constitutional sense.'" *Jackson v. Indian Prairie School Dist. 204,* 653 F.3d 647, 654-655 (7th Cir. 2011) (quoting *County of Sacramento v. Lewis,* 523 U.S. 833, 846 (1998)). "Only 'the most egregious official conduct' will satisfy this stringent

inquiry." *Id.* (quoting *Lewis*, 523 U.S. at 846). "We have previously noted that while the 'shocks the conscience' standard lacks precise measurement, only conduct falling towards the more culpable end of the tort law spectrum of liability will be found to shock the conscience. *Id.* at 655 (citing *King ex rel. King,* 496 F.3d at 818–19).

Plaintiff alleges that the Movants' respective actions were "willful, wanton and intentional" but he does not even name an intentional or reckless tort they are supposed to have committed. Count III is a recitation of the Complaint's prior conclusory allegations, framed by the assertion that Movants "worked to deprive" Plaintiff of various constitutional rights. The only tort that is referenced in passing within the count is "interference with business relationships," but the allegations supporting that potential tort are so bare that they hardly warrant serious analysis.

If Plaintiff means to sustain a cause of action against Movants for a conscience-shocking deprivation of rights, he must coherently plead not only that Movants were acting in their official capacities (which is undercut by allegations of "taking a police investigation into their own hands" in paragraph 129), but that they committed one or more reckless or intentional torts against him such that he was deprived of rights. The allegation that Movants badgered his roommate, drove around in his neighborhood, and swore out a police report for "Theft of Lost or Mislaid Property," (after he had admittedly held onto Sikanich's phone all day while apparently knowing it belonged to Sikanich), do not meet the standard of "conduct towards the more culpable end of the tort spectrum" such that Count III should survive. Count III should be dismissed.

IV.     Counts I, II, IV and V Fail to State Coherent Claims and Should Be Dismissed.

While Movants are defending this action in their individual capacities, they agree with the arguments pertaining to Counts I, II, IV and V set forth by the Officers in their Motion to Dismiss. See generally, Dkt. 39. Movants will not belabor the points raised in that motion, beyond observing that as those counts pertain to them, each count fails to allege a conspiracy between the Officers acting in their official capacities, including the power to investigate crimes and arrest suspects upon probable cause, and the Movants acting in their private capacities and, as alleged, well outside the scope of their respective duties as alderman and ward superintendent.

A plaintiff "must plead and offer sufficient evidence to support a conspiracy between private and public actors in order to state a claim under Section 1983 against the private party for malicious prosecution." *Davis v. Union Nat. Bank*, 46 F.3d 24 (7th Cir. 1994). Plaintiff alleges that the Movants cooperated among themselves in the filing of a "false" police report, despite the admission that Plaintiff picked-up Sikanich's phone and held on to it all day, and he alleges that the Officers took Sikanich's complaint while already in possession of the missing phone. But the Complaint fails to allege a coherent conspiracy premised on a meeting of the minds to prosecute him, and practically falls apart when confronted with the fact that none of the Defendants showed up to complain of him in court, resulting in the case's dismissal.

**CONCLUSION**

Plaintiff's Complaint barely alleges any concrete actions by the Movants directed toward him. It relies on speculation, loose characterizations and wild presumptions to make up for its lack of plausibility and failure to allege coherent causes of action under Section 1983. The Movants should be spared the time and expense of conducting discovery and proceeding in the case on a thin allegation of malicious conspiracy. Even before *Iqbal*, courts recognized that "[a]

14

party may not cry 'conspiracy' and throw himself on the jury's mercy. *Gramenos v. Jewel Companies, Inc.*, 797 F.2d 432, 436 (7th Cir. 1986). Counts I-V fail as a matter of law, and the Movants, Charles Sikanich and James Gardiner, should be dismissed as defendants, with prejudice.

WHEREFORE, the Defendants, James Gardiner and Charles Sikanich, move this honorable Court to grant their Motion to Dismiss Counts I – V of Plaintiff's Complaint, with prejudice, pursuant to Fed. R. Civ. P. 12(b)(6), and for any additional relief that the Court deems just.

Respectfully Submitted,
THOMAS R. RAINES
ATTORNEY AT LAW, LLC


/s/ Thomas D. Carroll
Thomas D. Carroll
Thomas R. Raines Attorney at Law, LLC
20 N. Wacker Dr., Suite 556
Chicago, IL 60606
T: (312) 750-1166
F: (312) 750-1164
tcarroll@traalaw.com

Dated: April 2, 2021

**CERTIFICATE OF SERVICE**

The undersigned, an attorney of record for the Defendants, hereby certifies that on April 2, 2021 he served a copy of the Defendants James Gardiner's and Charles Sikanich's Motion to Dismiss Plaintiff's First Amended Complaint on all counsel of record by electronic means via the Northern District of Illinois's Electronic Case Filing (ECF) system, which notifies all counsels and parties of record.

                                                /s/ Thomas D. Carroll
                                                Thomas D. Carroll