IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Benjamin George, <br><br> Plaintiff, <br><br> v. <br><br> City of Chicago, James Gardiner, Charles Sikanich, Chicago Police Officers Solomon Ing (#4117), Peter Palka (#9413), Daniel Smith (#20066), Bilos (#21010), Joseph Ferrara (#233), Sergio Corona (#3331), Ortiz (Star # unknown), and Unknown Chicago Police Officers, <br><br> Defendants. | Case No: 20-cv-6911 <br><br> Hon. Judge Blakey <br><br> Hon. Magistrate Judge Jantz <br><br><br> **JURY TRIAL DEMANDED** |

## PLAINTIFF'S RESPONSE TO DEFENDANT OFFICERS' MOTION TO DISMISS

Plaintiff Benjamin George, by and through his undersigned counsel, provides his Response to Defendant Officers' Motion to Dismiss his First Amended Complaint [Dkt. 40], stating as follows:

### BRIEF FACTUAL BACKGROUND

Plaintiff Benjamin George ("George" or "Plaintiff") picked up a lost cell phone on the morning of August 19, 2019, intending, as a good Samaritan, to bring the phone to a Chicago police station because he did not know its owner. First Amended Complaint, ¶ 15 (Dkt. 37).

George went about his workday for his construction company, attending to job sites and an emergency service call; all the while, the lost cell phone did not ring or otherwise provide a way to identify its owner. Dkt. 37 ¶¶ 17-20. George traveled to the 16th District police station after work. Dkt. 37 ¶ 25. While on the way to the station, George received a phone call from his roommate and landlord, who informed him that police were at their home inquiring about a missing cell phone. Dkt. 37 ¶ 26. George asked to speak with an officer, and talked with a Defendant who identified

himself as Officer Ortiz and told him that he was already on his way to the 16th District with the phone. Dkt. 37 ¶¶ 27, 34.

Earlier that day at Chicago's 45th Ward Office, Defendant Charles Sikanich, Chicago's 45th Ward Superintendent, informed Defendant James Gardiner, Chicago's 45th Ward Alderman, that he had lost his cell phone. Dkt. 37 ¶ 22. Gardiner instructed Sikanich to falsely report to police that the phone had been stolen, not lost. Dkt. 37 ¶¶ 8-9, 22-23. At no point that day did Sikanich call or text the lost phone in an attempt to locate it and regain possession. Dkt. 37 ¶ 18. Gardiner and Sikanich coordinated with police throughout the day while searching for the phone, and visited George's home as did police. Dkt. 37 ¶¶ 23-24, 26-29, 35-39, 51-60, 72. After an inflammatory conversation with his roommate and landlord, Gardiner turned and yelled to Sikanich, "Have him [George] locked up!", a direct instruction from a Chicago elected official to a Chicago employee to follow through on an earlier false police report by inducing police to carry out a false arrest. Dkt. 37 ¶¶ 34-35, 51-60. Gardiner has an active, close relationship with police officers in his ward, who have distributed literature for Gardiner on occasion, and Gardiner as well has accompanied police on investigations in the past as he and Sikanich did on August 19, 2019. Dkt. 37 ¶ 92.

George arrived at the police station, returned the lost telephone, and, after returning it, was arrested. Dkt. 37 ¶¶ 41, 49-52, 60. After George returned the phone, Sikanich entered the station walking closely with several Defendant Officers and swore out a complaint with their assistance for Theft of Lost or Mislaid Property. Dkt. 37 ¶¶ 51-56. While George was being processed, the Defendant who identified himself as Ortiz said: "I believe you, I wasn't going to arrest you, but this person has power and I have bosses," referring to some combination of Sikanich, Gardiner, and high-ranking police officials and the pressure and direction they exerted. Dkt. 37 ¶ 72. Officer Ferrara personally approved probable cause and was a participant in the plan along with Gardiner,

2

Sikanich, Corona, and the other defendants to falsely arrest and charge George for this crime without probable cause. Dkt. 37 ¶¶ 35, 52-58. George was mocked by police for his Romanian heritage at the station, being called the discriminatory slur "gypsy," and was repeatedly told to "shut up" and threatened with a felony when he asked for a phone call and an attorney. Dkt. 37 ¶¶ 59, 62-65.

While George was in the station, police approached George's work vehicle and held his employee at gunpoint where they seized George's unloaded gun, which had been inside the locked van and for which George had a valid CCL and FOID card. Dkt. 37 ¶¶ 67-70. The gun has never been returned and was not evidence of any crime. Dkt 37 ¶¶ 69-70. George's criminal case was stricken off the call with leave to reinstate at his first court date on September 5, 2019, and the Speedy Trial period passed without reinstatement. Dkt. 37 ¶ 74.

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure Rule 12(b)(6), a complaint must provide a "short and plain statement of the claim" showing a pleader's right to relief and so that the defendant has "fair notice" of the claim. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must contain sufficient factual matter to state a facially plausible claim such that the court may reasonably infer that defendants are liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a motion to dismiss under Rule 12(b)(6), the court accepts all well-pled allegations in the complaint as true, and construes the complaint in the light most favorable to the plaintiff with all possible inferences' being drawn in the plaintiff's favor. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

## ARGUMENT

Plaintiff stated a claim against Defendant Officers for False Arrest and Unlawful Seizure (Count I), Equal Protection Class of One (Count II), Malicious Prosecution (Count IV), and

3

Conspiracy to Commit Malicious Prosecution (Count V) because Plaintiff's First Amended Complaint: 1) appropriately places Defendants on notice of the claim against them; 2) does so by allegations that are neither vague nor improbable; and 3) does so without conclusory and threadbare recitations of a claim's elements. *See Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (summarizing pleading requirements after *Twombly* and *Iqbal*).

I. **THE COURT SHOULD DENY THE MOTION AS TO FALSE ARREST BECAUSE POLICE HAD A DUTY TO INVESTIGATE FURTHER WHEN FACED WITH STATEMENTS OF UNRELIABLE THIRD PARTY**

Plaintiff's First Amended Complaint adequately states a claim for false arrest against Defendant Officers and the Motion should be denied.

To state a claim for false arrest, a plaintiff must show that there was no probable cause to arrest them. *Neita v. City of Chicago*, 830 F.3d 494, 497 (7th Cir. 2016). Probable cause is present when "at the time of the arrest, the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person, or one of reasonable caution, in believing... that the suspect has committed, is committing, or is about to commit an offense." *Id.*

While officers may rely on a credible eyewitness' statement to supply probable cause, *Askew v. City of Chicago*, 440 F.3d 894, 985 (7th Cir. 2006), officers also have a duty to investigate beyond the initial information from that witness or victim where facts and circumstances exist that would lead a reasonable officer to be suspicious of the accuracy of a complaining witness. *Id.*

"Because of the fact-specific nature of the inquiry, the vast majority of cases dealing with the issue of a police officer's duty to conduct further investigation are decided on summary judgment or after a trial." *Evans v. Gasca*, 2016 WL 1407695, at *8 (N.D. Ill. 2016); *see also Love v. City of Chicago*, 2015 WL 2193712, at *9 (N.D. Ill. 2015) (denying motion to dismiss false arrest claim concluding discovery should resolve issue of degree and appropriateness of further investigation).

"[I]t is incumbent upon law enforcement officials to make a thorough investigation and exercise reasonable judgment before invoking the awesome power of arrest and detention." *Moore v. Marketplace Restaurant, Inc.*, 754 F.2d 1336, 1346 (7th Cir. 1985). "An officer should pursue reasonable avenues of investigation and may not close his eyes to facts that would clarify the situation...." *McBride v. Grice*, 576 F.3d 703, 707 (7th Cir. 2009); *See also Evans v. Gasca*, 2016 WL 1407695, at *7 n. 10 ("Persons arrested on suspicion of having committed a crime are owed a duty of police investigation of some sort before they are deprived of their liberty..."). Further, where an offense is not grave or in danger if imminent repetition, officers should conduct a more thorough investigation as to probable cause. *Llaguno v. Mingey*, 763 F.2d 1560, 1565-1566 (7th Cir. 1985), *abrogated on other grounds by Cnty. of Riverside v. McLaughlin*, 500 U.S. 44 (1991).

To properly make an arrest for the offense of Theft of Lost or Mislaid Property, there must be probable cause that a person obtains control of lost or mislaid property and:

> 1) knows or learns the identity of the owner or knows, or is aware of, or learns of a reasonable method of identifying the owner;
> 2) fails to take reasonable measures to restore the property to the owner; and
> 3) intends to deprive the owner permanently of the use or benefit of the property.

720 ILCS 5/16-2.

As an initial matter, Plaintiff's First Amended Complaint makes clear that based on the facts and circumstances available to officers at the time of George's arrest, there was probable cause for none of these three elements, much less all of them. *See Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 761 (7th Cir. 2006), *as amended on denial of reh'g* (May 25, 2006) ("Whether an officer has probable cause to arrest depends on the requirements of the applicable state criminal law."). George did not know the owner's identity, took reasonable measures to return the phone, and did not intend to retain possession of the phone. Dkt. 37 ¶ 17-19, 49. Defendants' Motion attempts to shift responsibility for their actions to co-Defendant Sikanich, but this effort fails.

5

Police had reason to doubt and discredit Sikanich's complaint—and thus investigate further—for three reasons. First, a defendant officer explicitly communicated doubt and disbelief as to Sikanich's speculative complaint to George ("I believe you, I wasn't going to arrest you, but this person has power and I have bosses"), yet carried forth and arrested George without further investigation. His statements reflect that a reasonable officer would have found, just as this officer did, that the Plaintiff was credible, and known that the only basis for criminal charges was the capricious and abusive whim of the complaining witness. Second, by virtue of their coordination with Sikanich and Gardiner, officers knew that Sikanich and Gardiner had taken inappropriate actions towards George and his roommate by traveling to their home, berating George by phone, and confronting his roommate. Dkt. 37 ¶¶ 24-26, 32, 37, 50-60, 64, 72. This occurred prior to the swearing of the complaint, indicating a grudge by accusers, a situation where more investigation is required. *Askew v. City of Chicago*, 440 F.3d at 895. Finally, Sikanich ascribed a specific intent to deprive possession to George when officers knew, by virtue of that same coordination with Sikanich throughout the day—indeed, Sikanich entered the police station walking closely with a handful of Defendant Officers—that Sikanich could not have known George's intent or mental state. Officers further knew that such intent to deprive was not actually present because of George's own actions (returning the phone prior to arrest and on his own volition).[1] *See Kelley v. Meiler*, 149 F.3d 641, 647 (7th Cir. 1998) (probable cause appropriate only because officers relied not only on victim complaint but also confirmed illegal conduct by plaintiff via independent investigation). Despite this

---

[1] It is similarly true, for example, that officers should have doubted Sikanich's statement that George knew of or could have learned his identity, element (1) of the offense, given that Sikanich had never met George nor George Sikanich, and that Sikanich made no attempt to call his phone during the day in an attempt to secure its return. Defendants Officers' motion tacitly admits the infirmity of Sikanich's statements by noting in defense of the officers that they "were not present when the alleged theft occurred and therefore have no personal knowledge about what happened," purportedly making their reliance on Sikanich's statements reasonable. Dkt. 40 at 4. By this same token, however, police would have similarly known that Sikanich did not have a basis for his allegations and was unreliable.

comprehensive evidence that Sikanich's complaint was not reliable or credible, they conducted no further investigation, which would have further confirmed that probable cause did not exist. *See Wilbon v. Plovanich*, 67 F. Supp. 3d 927, 942 (N.D. Ill. 2014) (concluding that credibility of a witness in duty to investigate context was issue for a trier of fact).

Case law offered by Defendant Officers in support of their right to follow Sikanich's reports while closing their eyes to other facts is distinguishable. For example, in *Williamson v. Curran*, officers spoke to a suspect and received independent and direct confirmation of a *mens rea* element to theft of a horse when the suspect refused to return it. 714 F.3d 432, 439 (7th Cir. 2013). In the present case, George returned a phone prior to the complaint by his accuser, prior to arrest, and never expressed an intent to permanently retain possession of the property. *Beauchamp v. City of Noblesville, Ind.* is similarly unavailing for Defendants. 320 F.3d 733 (7th Cir. 2003). *Beauchamp* involved an arrest for which officers *secured a warrant prior to arrest* based in part on a third party's statements, which consisted largely of identification of a suspect *via eyewitness testimony. Id.* In this case, no warrant was sought or obtained, and George's identity was not at issue, rather his intent, knowledge, and actions, which officers knew that Sikanich could not have known and did not know when he made his false, unreliable, and spiteful complaint.

The Seventh Circuit's *BeVier v. Hucal* more accurately instructs regarding the degree to which further investigation is required where probable cause is susceptible to doubt. 806 F.2d 103 (7th Cir. 1986). In *BeVier*, police investigated an alleged instance of child neglect under a statute which, like the alleged crime at issue here, carried requirements regarding the mental state of the suspect. *Id.* at 128. In *BeVier*, as in this case, an arrest was made without investigation into the mental state of the suspects, whose actions, upon review, indicated that the requisite mental state was not present. *Id.* at 126. In concluding that police made an unreasonable mistake by failing to speak with

7

witnesses or take other investigatory steps—by analogy, here, speaking with George's coworker, attempting to call the missing phone during the day, or simply asking the accuser for details beyond conclusory allegations—the court noted that given the missing proof of intent, "because Defendant failed to avail himself of the opportunity to elicit further facts which would have indicated that the arrest should not have been made, the arrest of plaintiffs was without the requisite probable cause." *Id.* at 128. Such is the case here. And *BeVier* is distinguishable in a manner that strengthens Plaintiff's position that further investigation was necessary here: the crime at issue in *BeVier*—child neglect—is unquestionably a grave offense with significant dangers associated. It may generally be considered susceptible to repetition. George's alleged crime—theft of lost property—was in no likelihood of repetition, because George had returned the phone, posed no danger, and is a minor misdemeanor. *See Llaguno v. Mingey*, 763 F.2d at 1565-1566.

It is unreasonable to rely on an uncredible witness. It is unreasonable to arrest when a defendant officer has stated directly to the suspect that no crime has occurred. It is unreasonable to arrest because of political pressure where there is no probable cause of a crime's commission. It is unreasonable to fail to take even the most basic investigatory steps. Plaintiff has pled facts to show that the totality of the circumstances renders the entire enterprise of arresting George to be a gross violation of his 4th Amendment rights. The motion should be denied on Count I.[2]

## II. PLAINTIFF PROPERLY PLED DEFENDANT OFFICERS' INVOLVEMENT IN THE SEIZURE OF GEORGE'S FIREARM, WHICH WAS WRONGFUL

A. <u>Plaintiff need not identify specific officers involved in the seizure of the firearm.</u>

---

[2] Pursuant to the Court's Standing Order on Motions to Dismiss, Plaintiff submits that should the Court find that if Count I false arrest is insufficiently pled, Plaintiff could cure deficiencies by steps including but not limited to: a) attempting to obtain facts from George's coworker; and b) specifying reasonable investigatory steps that were not taken. That said, however, the details of these issues are most suitable for resolution and exposition in discovery rather than at the pleading stage.

8

At the pleading stage, "a plaintiff may generally name those responsible for the alleged violation by grouping defendants into subgroups of individuals who are alleged to have acted jointly." See *Vandenburgh v. Bannockburn Police Officer Robert Ogden*, 2016 WL 403663 at *5 (N.D. Ill. February 3, 2016). Rule 8(a) is "not so rigid that it requires a plaintiff, without the benefit of discovery, to connect every single alleged instance of misconduct in the complaint to every single specific officer." *Gray v. City of Chicago*, 2019 WL 3554239 at *5 (N.D. Ill. 2019), quoting *Hyung Seoh Koh v. Graf*, 2013 WL 5348326 at *4. (N.D. Ill. 2013); Fed. R. Civ. P. 8(a).

In *Gray*, as is the case here, specific officer defendants were identified in certain places of the pleadings and defendant officers were referred to generally in other places; that court reasoned that although plaintiff would be eventually required to attribute specific actions to specific defendants to establish Section 1983 liability, the allegations against the group were sufficient to place all defendants on notice of the claims against them. 2019 WL 3554239 at *5-6. Discovery is appropriate in this situation to develop the factual record, and the Court should not dismiss on this ground.

B. <u>The Community Caretaking Doctrine is an affirmative defense premature for consideration at his stage, and, regardless, based on the present facts does not support dismissal</u>.

Defendants' motion also raises the affirmative defense of the Community Caretaking Doctrine, but courts apply a restrictive approach when considering affirmative defenses in the context of a Rule 12(b)(6) motion. *Clark v. City of Braidwood*, 318 F.3d 764, 767 (7th Cir. 2003) (a plaintiff is not required to negate an affirmative defense in his complaint); *see also Leavell v. Kieffer*, 189 F.3d 492, 494 (7th Cir. 1999); *Tregenza v. Great Am. Communications Co.*, 12 F.3d 717, 718 (7th Cir. 1993). A plaintiff only "pleads himself out of court when it would be necessary to contradict the complaint in order to prevail on the merits." *Kolupa v. Roselle Park Dist.*, 438 F.3d 713, 715 (7th Cir. 2006). "A complaint should rarely be dismissed based upon an affirmative defense at the pleading stage without "ironclad" basis for the defense. *Foss v. Bear Stearns & Co., Inc.*, 394 F.3d

9

540, 542 (7th Cir. 2005). Plaintiff has properly alleged the unlawful seizure of his firearm, and has certainly not pled himself out of court. Even if the court finds it appropriate to evaluate an affirmative defense at this stage, dismissal would still not appropriate and the Motion should be denied.

In an exception to the Fourth Amendment's protection from unreasonable seizures, officers may conduct certain seizures under the doctrine of "community caretaking." *Cady v. Dombrowski*, 413 U.S. 433 (1973). The doctrine is not applicable to the case at hand, however, because police actions were taken for a criminal law enforcement purpose, rather than to protect members of the public. *See Sutterfield v. City of Milwaukee*, 751 F.3d 542, 553-554 (7th Cir. 2014).

In *Cady*, an intoxicated police officer had an accident and was arrested, leaving his disabled vehicle obstructing traffic. *Id.* at 436. Police searched the vehicle for the officer's service revolver, towed the vehicle seven miles from the police station where it was left unattended, and, in the Court's view, vulnerable to intrusion by vandals. *Id.* at 436, 448. The Court also expressed concern that prior to the tow, the vehicle was a traffic nuisance. *Id.* at 443. The Officers then searched again. *Id.*

Here, unlike *Cady*, there were no circumstances indicating that Plaintiff's vehicle, parked lawfully in the vicinity of the station, was disabled, a traffic nuisance, or accessible to vandals. In fact, Plaintiff's coworker Julian Devon was attending the parked, locked vehicle during the time of George's arrest and the wrongful seizure (before he was held at gunpoint by Defendant Officers).

The argument is premature, does not apply, and the Motion should be denied on this issue.

### III. A CLASS-OF-ONE CLAIM IS WELL-PLED BECAUSE GEORGE HAS SHOWN ANIMUS AND ELIMINATED A RATIONAL BASIS FOR HIS TREATMENT

Although a classic class-of-one equal protection claim includes reference to intentional treatment different from other similarly situated without rational basis, *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000), a clear showing of animus alone may sustain a class-of-one equal

protection claim. *Swanson v. City of Chetek*, 719 F.3d 780, 783 (7th Cir. 2013). Because Plaintiff has shown animus on the part of Defendants, the Motion should be denied as to Count II.

  A. <u>A showing of similarly situated persons is not required to state a class-of-one claim.</u>

Readily obvious animus does not require Plaintiff to redundantly show disparate treatment via a near-exact, one-to-one comparison of individuals similarly situated. *Id.* at 784. In *Swanson*, a plaintiff bought a home next to the city's mayor and began remodeling the residence. *Id.* at 781-82. The mayor disapproved of a fence that was being constructed, and used his political influence to harass plaintiff, eventually leading to an illegitimate and malicious prosecution of plaintiff in municipal court for the construction of the fence. *Id.* at 782. The Seventh Circuit ultimately ruled in favor of plaintiff's class-of-one claim, holding that the mayor acted with malignant animosity and overt hostility by targeting plaintiff with actions that were illegitimate on their face, deviated from the norm of fence regulation, and showed that personal hatred caused the unwarranted difference in treatment. *Id.* at 785.

Similarly, in *Geinosky v. City of Chicago*, a Plaintiff who received 24 bogus parking tickets within a 14-month period from officers of the same Chicago Police Department unit was maintained a class-of-one equal protection claim despite not offering evidence of a similarly situated person. 675 F.3d 743, 745 (7th Cir. 2012). It was argued that due to the lack of a conceivable legitimate purpose for the officers' actions, requiring plaintiff to name a similarly situated person served no purpose. *Id.* at 746. The Court there reversed earlier dismissal of the class-of-one claim, holding that the tickets were not a product of random mistakes and plaintiff's general assertion that others were not similarly discriminated against was sufficient. *Id.* at 749.

Here, as was the case for plaintiffs in *Swanson* and *Geinosky*, George does not need to "identify with any specificity ... similarly situated individuals [] who were treated more favorably."

Dkt. 40 at 9; 719 F.3d 780; 675 F.3d 743. Gardiner, Sikanich, and Defendant Officers' blatant animus towards George as outlined in the Complaint, including their false, politically tinged arrest and use of a pejorative slur, compels the conclusion that requiring him to find another Chicagoan who experienced similar harassment and discrimination would be without purpose. Officers of local government spitefully pressured Defendant Officers to bring a baseless, illegitimate criminal charge against George, animus that Defendant Officers duly adopted and applied. Gardiner and Sikanich's hostility and harassment toward George prior to his arrest, and police's acquiescence to, participation in, and furtherance of this scheme deviated from any legitimate purpose and the Court at this stage can and should infer direct, malignant animosity towards George by Defendants.

Defendant Officers actions deviated from norms of typical police procedure. Knowing that George had already returned Sikanich's lost phone, Defendant Officers aided Sikanich in drafting a criminal complaint against George—providing rote statutory language without investigation—wrongfully arrested him, berated and threatened him at the station, and held him in custody for over 24 hours on a minor misdemeanor. Although George showed clear intent not to permanently deprive Sikanich of his property (as well as an absence of other elements of the alleged offense, see Response Section I, *infra*), Defendant Officers defied norms and common police practices by commencing criminal prosecutions without probable cause because an alderman and supervisors directed that action, and by drafting and filing false complaints which lack probable cause.

B. <u>Sufficient facts were pled to eliminate a rational basis for disparate treatment</u>.

To eliminate a rational basis for the disparate treatment of a plaintiff, a complaint must allege sufficient facts to plausibly show that the treatment was wholly arbitrary and irrational. *D.B. v. Kopp*, 725 F.3d 681, 682 (7th Cir. 2013). The Complaint pleads sufficient facts showing that George was discriminated against by Defendant Officers when they unreasonably arrested George without

probable caused based on Sikanich's unreliable and uncredible complaint, and later threatened and berated him. A Defendant Officer *told* George that his prosecution was the result of political pressure, not probable cause. Thus, given that there was no probable cause for Plaintiff's arrest, Plaintiff has de facto made a showing that there was no rational basis for his disparate treatment. While it is true that police are necessarily afforded wide discretion in performing their duties, that discretion does not extend to discrimination and harassment in the form of making a baseless arrest due to political pressure. *Geinosky*, at 747; see also *Hanes v. Zurick*, 578 F.3d 491, 496 (7th Cir. 2009) (An "officer motivated by malice alone is not exercising discretion"). Defendants' point that animus may coexist with a rational basis for disparate treatment, as the court held was possible but non-actionable in *D.B. v. Kopp*, is not applicable here because there was no probable cause for Defendants' arrest of George in the first place. 725 F.3d at 686. There is no conceivable set of facts providing a rational basis for the false arrest, abuse, and threats and the Motion should be denied.

IV. **THE MALICIOUS PROSECUTION CLAIM SHOULD STAND BECAUSE OFFICERS PREPARED THE COMPLAINT WITHOUT PROBABLE CAUSE**

Defendants urge this Court to dismiss Plaintiff's Count IV malicious prosecution claim for two reasons: 1) that Defendants did not "commence or continue the prosecution" and 2) that there was probable cause for the arrest and prosecution. It is well-pled that Officers essentially prepared the complaint for Sikanich to sign while advising him, proximately causing the commencement of the prosecution, satisfying the requirement of the tort. *Beaman v. Freesmeyer*, 2019 IL 122654, ¶ 33; *Gilbert v. Emmons*, 42 Ill. 143, 146-147 (1866) (affirmative action by defendant to advise and encourage the arrest could lead to liability); *Cervantes v. Jones*, 23 F.Supp.2d 885 (N.D. Ill. 1998) ("advice and cooperation" by officer constitutes initiation of criminal proceeding) (internal citations omitted). Separately, Section I of this Response, *infra*, indicates that probable cause did not exist,

13

and so the court should reject that argument as well. Neither of Defendants' arguments for dismissing Count IV are meritorious and the Motion should be denied as to this Count.

## V. PLAINTIFF HAS ADEQUATELY ALLEGED A CONSPIRACY BECAUSE HE IDENTIFIED ITS ELEMENTS, AND HAS PLED AN UNDERLYING TORT

Plaintiff's First Amended Complaint, for reasons stated elsewhere in this Response, pleads an underlying tort, and, further, sets forth facts to support a conspiracy claim. Defendants' Motion should be denied as to Count V.

Regarding conspiracy in the context of a Motion to Dismiss, the Seventh Circuit has consistently held "…it is enough in pleading a conspiracy merely to indicate the parties, general purpose, and approximate date, so that the defendant has notice of what he is charged with." *Walker v. Thompson*, 288 F.3d 1005, 1007 (7th Cir. 2002); see also *Brokaw v. Mercer*, 235 F.3d 1000, 1016 (7th Cir. 2000) (stating that no more is required at this stage). Plaintiff's complaint indicates the parties, purpose, and date of the conspiracy, and Count V should not be dismissed.

Under Illinois state law, a plaintiff must allege: (1) an agreement between at least two people for the purpose of accomplishing an unlawful purpose or lawful purpose by unlawful means; and (2) a tortious act by one of the co-conspirators in furtherance of the agreement. *Adcock v. Brakegate, Ltd.*, 164 Ill.2d 54, 62 (4th Dist. 1994) (citations omitted). The facts provided in Plaintiff's complaint establish that Defendants Sikanich and Gardiner, and Defendant Officers, conspired to maliciously prosecute Plaintiff, an unlawful purpose predicated on tortious acts.

In support of their contention that Plaintiff's conspiracy claim is insufficiently pled, Defendants point to *Ryan v. Mary Immaculate Queen Ctr.*, 188 F.3d 857, 860 (N.D. Ill. 1999). In *Ryan*, the court found that plaintiff made no mention of when defendants formed an agreement, nor what actions were taken in furtherance of that agreement. *Ryan*, 188 F.3d 857, 860 (N.D. Ill. 1999).

The court further found that plaintiff's complaint merely contained a bare allegation of conspiracy and thus, was subject to dismissal. *Id. Ryan* is highly distinguishable from the case at hand. Here, Plaintiff's First Amended Complaint indicates when defendants formed an agreement—on August 19, 2019—and contains more than bare allegations of conspiracy. For example, Plaintiff alleges "each of the Defendant co-conspirators committed overt acts, such as *approving probable cause, dictating the complaint, swearing the complaint,* and *taking other actions....*" Dkt. 37 ¶ 145 (emphasis added). Plaintiff clearly delineates specific acts Defendants' took in furtherance of the conspiracy, and the date on which those acts occurred.

Defendants further argue that Plaintiff's claim should be dismissed where the Complaint makes "no mention of anyone agreeing to do anything" Dkt. 40 at 14. This argument seems to boil down to asking this Court to dismiss portions of the First Amended Complaint because it does not include the word "agree." A sturdy legal argument this is not. Plaintiff's pleading alleges general conspiratorial agreement was malicious prosecution, and states specific tortious steps specific actors took in concert on a given date. *See Adcock*, 164 Ill. 2d at 66. ("conspiracies are often established "from circumstantial evidence and inferences ... coupled with common-sense").

Plaintiff's complaint alleges the general unlawful conspiratorial objective and outlines specific tortious steps specific actors took on a specific date to achieve this result. Accordingly, Plaintiff has pled sufficient facts to support a conspiracy claim and the Motion should be denied.

## VI. THE INDEMNIFICATION CLAIM SHOULD STAND

Because Plaintiff has stated viable claims, the indemnification claim should stand.

Respectfully Submitted,

/s/Brittany Shaw
/s/Daniel E. Massoglia
*Attorneys for Plaintiff*

15

Bobby Vanecko*
Brittany Shaw (#6333347)
Daniel Massoglia (#6317393)
First Defense Legal Aid
601 S. California Ave.
Chicago, IL 60612
P: 708-797-3066
E: bobby@first-defense.org
E: brittany@first-defense.org
E: daniel@first-defense.org

Elizabeth Homsy (#6307858)
The Law Offices of Elizabeth A. Homsy
2506 N. Clark St.
Suite 286
Chicago, IL 60614
P: 708-669-6148
E: eahomsy@gmail.com

* Law Student Licensed Under Illinois Supreme Court Rule 711

## CERTIFICATE OF SERVICE

I, Daniel Massoglia, an attorney, hereby certify that a copy of this *Response to Defendant Officers' Motion to Dismiss* was filed before 11:59pm on 4/30/21 using the Court's CM/ECF filing system, which generates electronic notice to all parties of record in the case.

Respectfully submitted,

Daniel Massoglia
*One of Plaintiff's Attorneys*

Daniel Massoglia (#6317393)
First Defense Legal Aid
601 S. California Ave.
Chicago, IL 60612
P: 708-797-3066
E: daniel@first-defense.org