IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Benjamin George,<br><br>Plaintiff,<br><br>V.<br><br>City of Chicago, James Gardiner, Charles Sikanich, Chicago Police Officers Soloman Ing (#4117), Peter Palka (#9413), Daniel Smith (#20066), Bilos (#21010), Joseph Ferrara (#233, Sergio Corona (#3331), Ortiz (Star # unknown), and Unknown Chicago Police Officers,<br><br>Defendants. | Case No: 20-cv-6911<br><br>Hon. Judge Blakey<br><br>Hon. Magistrate Judge Jantz<br><br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF'S RESPONSE TO DEFENDANT CITY OF CHICAGO'S
MOTION TO DISMISS COUNT VI OF PLAINTIFF'S FIRST AMENDED COMPLAINT**

Plaintiff Benjamin George, by and through his undersigned counsel, responds in opposition to Defendant City of Chicago's Motion to Dismiss Count VI of Plaintiff's First Amended Complaint as it pertains to indemnification of Defendants Sikanich and Gardiner. Plaintiff requests that this Honorable Court deny Defendant City of Chicago's Motion in its entirety. In support of this Response, Plaintiff states the following:

**BRIEF FACTUAL BACKGROUND**

Plaintiff Benjamin George picked up a lost cell phone, intending to return the phone to Chicago police because he did not know its owner. First Amended Complaint, ¶ 15 (Dkt. 37). George went to work, as he had to each day to support his small business, and at no point did the lost cell phone ring or otherwise provide a way to identify its owner. Dkt. 37 ¶ 18. George traveled to the 16th District police station after work, and on the way, George received a phone call from his

roommate and landlord, who informed him that police were at their home inquiring about a cell phone, pointedly mentioning that it "belonged to someone important". Dkt. 37 ¶¶ 25-26. George spoke with a Defendant who identified himself as Officer Ortiz and was told to continue his trip to the station to drop off the lost cell phone, as he had always intended to do. Dkt. 37 ¶¶ 15, 19, 27, 33.

Earlier that day at the Chicago's 45th Aldermanic Ward Office, Defendant Charles Sikanich, Chicago's 45th Ward Superintendent, had informed Defendant James Gardiner, Chicago's 45th Ward Alderman, that he had lost his cell phone. Dkt. 37 ¶ 22. Gardiner instructed Sikanich to falsely report to police that the phone, presumably used for personal and city business, had been stolen, not lost. Dkt. 37 ¶¶ 8-9, 22-23. Sikanich never called or texted the phone all day. Gardiner and Sikanich coordinated with police throughout the day, and eventually visited George's home. Dkt. 37 ¶¶ 18, 23-24, 26-29, 35-39, 51-60, 72. After arriving at George's home and demanding to know whether George's roommate and landlord was a fellow firefighter, as Gardiner was or is, Gardiner then berated him. Dkt. 37 ¶¶ 29, 34. While at George's home, Gardiner yelled to Sikanich "Have him [George] locked up!", a direct instruction from a Chicago elected official to a city of Chicago employee to follow through on an earlier false police report by inducing police to carry out a false arrest. Dkt. 37 ¶ 34-35, 51-60. Sikanich, having just been told to help effectuate George's arrest, was on duty as Ward Superintendent at the time and was driving his City of Chicago vehicle. Dkt. 37 ¶¶ 22, 35-36. Gardiner has an active, close relationship with police officers in his ward, who have distributed literature for Gardiner and Gardiner's campaign on occasion, and Gardiner as well has accompanied police on investigations in the past as he and Sikanich did that day. Dkt. 37 ¶¶ 23-24, 26-29, 35-39, 51-60, 72, 92.

George arrived at the police station, returned the lost cell phone, and, after returning it, was arrested. Dkt. 37 ¶¶ 41, 49, 60. Later, Sikanich entered the station walking closely with several Defendant Officers and swore out a complaint with their assistance. Dkt. 37. ¶¶ 51-60. While George was being processed, the Defendant who identified himself as Ortiz said: "I believe you, I wasn't going to arrest you, but this person has power and I have bosses," referring to some combination of Sikanich, Gardiner, and high-ranking police officials. Dkt. 37 ¶ 72. All Defendants were participants in the plan to falsely arrest and charge George for this crime without probable cause. Dkt. 37 ¶¶ 35, 52-58. George's criminal case was stricken off the call with leave to reinstate at his first court date on September 5, 2019, and the Speedy Trial period passed without reinstatement. Dkt. 37 ¶ 74.

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure Rule 12(b)(6), a complaint must provide a "short and plain statement of the claim" showing a pleader's right to relief and so that the defendant has "fair notice" of the claim. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must contain sufficient factual matter to state a facially plausible claim such that the court may reasonably infer that defendants are liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a motion to dismiss under Rule 12(b)(6), the court accepts all well-pled allegations in the complaint as true, and construes the complaint in the light most favorable to the plaintiff with all possible inferences' being drawn in the plaintiff's favor. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). If the complaint provides enough factual information to "state a claim to relief that is plausible on its face," and raises a "right to relief above the speculative level," then the complaint meets the pleading requirements,

3

and a Rule 12(b)(6) motion to dismiss must be denied. *Camasta v Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)).

ARGUMENT

I. THE MOTION TO DISMISS COUNT VI OF PLAINTIFF'S FIRST AMENDED COMPLAINT FOR INDEMNIFICATION OF DEFENDANTS SIKANICH AND GARDINER IS PREMATURE AT THIS STAGE

Scope of employment is a highly fact intensive issue and Defendant City of Chicago's Motion to Dismiss Count IV for indemnification is not ripe for consideration at this time, and should be denied.

The Seventh Circuit has established that the scope of employment determination should not be made at the pleading stage before any meaningful discovery can be conducted. *See Doe v. City of Chi.*, 360 F.3d 667, 672 (7th Cir. 2004) (noting that the court has warned repeatedly against trying to resolve indemnity before liability); *see also Lear Corp. v. Johnson Electric Holdings Ltd.*, 353 F.3d 580, 583 (7th Cir. 2003); *Nationwide Ins. v. Zavalis*, 52 F.3d 689, 693 (7th Cir. 1995); *Grinnell Mutual Reinsurance Co. v. Reinke*, 43 F.3d 1152, 1154 (7th Cir. 1995); *Travelers Ins. Cos. v. Penda Corp.*, 974 f.2d 823, 833-34 (7th Cir. 1992); *Doe v. Clavijo*, 72 F. Supp. 3d 910, 915 (N.D. Ill. 2014) (declining to resolve the issues of respondeat superior liability and indemnification at the motion to dismiss stage). Indeed, this Court has previously ruled that whether indemnification under 745 ILCS 10/9-102 applies depends on the outcome of liability, and has denied motions to dismiss specific counts based on indemnification when liability related counts survive the motion to dismiss. *See, e.g., Mitchell v. City of Elgin*, 2016 U.S. Dist. LEXIS 17747, *30 (N.D. Ill. February 9, 2016); *Miles v. Vill. of Dolton*, 2016 U.S. Dist. LEXIS 37983, *23 (N.D. Ill. March 23, 2016). If Plaintiff's claims against Gardiner and Sikanich are allowed to proceed, resolution of liability should precede

resolution of scope of employment, and as such this Court should deny Defendants' Motion to Dismiss Count IV.

## II. PLAINTIFF ALLEGED SUFFICIENT FACTS TO ESTABLISH THAT DEFENDANTS SIKANICH AND GARDINER ACTED WITHIN THE SCOPE OF THEIR EMPLOYMENT

In the event that the Court prefers to address the factual question of scope of employment at this stage, Plaintiff has pled sufficient facts to establish that defendants Sikanich and Gardiner acted within the scope of their employment and the Motion should similarly be denied. The complaint provides enough factual information to "state a claim to relief that is plausible on its face," and raises a "right to relief above the speculative level," then the complaint meets the pleading requirements, and a Rule 12(b)(6) motion to dismiss must be denied. *Camasta v Jos. A. Bank Clothiers, Inc.*, 761 F.3d at 736.

Defendant City of Chicago has challenged—albeit prematurely—Defendant Gardiner and Defendant Sikanich's conduct as outside the scope of their employment. The criteria set forth in Section 288 of the *Restatement (Second) of Agency* apply when evaluating whether employees' actions fall within the scope of employment and are as follows:

> First, the relevant conduct must be of the kind that the employee was employed to perform. Second, the conduct must have occurred substantially within the time and space limits authorized by the employment. And third, the conduct must have been motivated, at least in part, by a purpose to serve the employer.

*Elston v. Cty. of Kane*, 948 F.3d 884, 887 (7th Cir. 2020) (citing RESTATEMENT (SECOND) OF AGENCY § 228 (AM. LAW INST. 1958))

Plaintiff has pled sufficient facts to support all three criteria. Defendant City of Chicago erroneously claims that Plaintiff fails to connect Sikanich and Gardiner's actions to their employment with the City. First, although for nefarious purposes on this occasion, Alderman Gardiner and Ward

5

Superintendent Sikanich performed activities that are of the type they are employed to perform and in furtherance of their duties to the City—for example, they interacted with constituents by calling George and going to his roommate Robert Cantrell's house and they performed ward tasks such as surveying the overall conditions of the ward by repeatedly driving down streets in a City Streets and Sanitation Truck.

Further as to element one, Defendant Alderman Gardiner has made clear that information-gathering on alleged crimes in the 45th Ward and consulting with and accompanying police officers on their work—as he and his Ward Superintendent Sikanich did on August 19, 2019--is part of his duty to represent his Ward residents' interests.

As to the second principle from the Restatement, Defendants Gardiner and Sikanich carried out their conduct within the time and space limits authorized by their employment—in and around the 45th Ward and 16th Police District during business hours.

As to the third element regarding scope of employment, while Defendant City of Chicago correctly notes that aldermen serve a legislative function, the Motion fails to acknowledge that as a member of the City Council, Alderman Gardiner has the broadly defined authority "*to exercise any power and perform any function pertaining to its government and affairs* including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; to license; to tax; and to incur debt." City of Chicago Office of the Mayor, *Your Ward and Alderman* (2021), https://www.chicago.gov/city/en/depts/mayor/provdrs/your_ward_and_alderman.html (emphasis added). It may be inferred at this point that Gardiner, and Sikanich as his political employee, considered the purpose of their actions to fall within these broad auspices.

Defendant City of Chicago suggests that because parts of the alleged conduct by Defendants Gardiner and Sikanich were illegal and involved dishonesty, such actions were outside their scope

6

of employment, but it is well established that whether an act is forbidden by a municipality is not dispositive on this question, *see Gaffney v. City of Chi.*, 302 Ill. App. 3d 41, 55 (1998); 1 IL Governmental Tort & Civil Rights Liability § 1.30 (2020). Instances involving conduct unauthorized by the public entity (*Wilson v. City of Chicago*, 120 F.3d 681 (7th Cir. 1997)), conduct motivated by personal reasons (*Coleman v. Smith*, 814 F.2d 1142 (7th Cir. 1987)), and criminal conduct (*Hibma v. Odegaard*, 769 F.2d 1147 (7th Cir. 1985)) have variously been found by the Seventh Circuit to be within the scope of a defendant's employment.

Defendant City of Chicago also argues that Plaintiff has not pled sufficient facts to establish that the City "employs people to commit criminal acts," Dkt. 41 at 8. No such requirement exists. And in general, the Seventh Circuit has interpreted scope of employment "quite broadly for purposes of indemnification under § 10/9-102," 1 IL Governmental Tort & Civil Rights Liability § 1.30 (2020). The conduct of Defendants Gardiner and Sikanich falls squarely within the Seventh Circuit's scope of employment jurisprudence, and should the Court reach this stage of analysis at this point in the proceedings, it should deny the Motion.

Respectfully Submitted,

/s/Daniel E. Massoglia
*One of Plaintiff's Attorneys*

Bobby Vanecko*
Brittany Shaw (#6333347)
Daniel Massoglia (#6317393)
First Defense Legal Aid
601 S. California Ave.
Chicago, IL 60612
P: 708-797-3066
E: bobby@first-defense.org
E: brittany@first-defense.org
E: daniel@first-defense.org

Elizabeth Homsy (#6307858)
The Law Offices of Elizabeth A. Homsy
2506 N. Clark St.
Suite 286
Chicago, IL 60614
P: 708-669-6148
E: eahomsy@gmail.com

* Law Student Licensed Under Illinois Supreme Court Rule 711

CERTIFICATE OF SERVICE

  I, Daniel Massoglia, an attorney, hereby certify that a copy of this *<u>Response to Defendant City of Chicago's Motion to Dismiss Count VI</u>* was filed before 11:59pm on 4/30/21 using the Court's CM/ECF filing system, which generates electronic notice to all parties of record in the case.


Respectfully submitted,

Daniel Massoglia
*One of Plaintiff's Attorneys*



Daniel Massoglia (#6317393)
First Defense Legal Aid
601 S. California Ave.
Chicago, IL 60612
P: 708-797-3066
E: daniel@first-defense.org