IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Benjamin George,<br><br>   Plaintiff,<br><br>  v.<br><br>City of Chicago, James Gardiner, Charles Sikanich, Chicago Police Officers Solomon Ing (#4117), Peter Palka (#9413), Daniel Smith (#20066), Bilos (#21010), Joseph Ferrara (#233), Sergio Corona (#3331), Ortiz (Star # unknown), and Unknown Chicago Police Officers,<br><br>   Defendants. | Case No: 20-cv-6911<br><br>Hon. Judge Blakey<br><br>Hon. Magistrate Judge Jantz<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF'S RESPONSE TO DEFENDANTS
GARDINER AND SIKANICH'S MOTION TO DISMISS**

Plaintiff Benjamin George, by and through his undersigned counsel, provides his Response in opposition to Defendants Gardiner and Sikanich's Motion to Dismiss his First Amended Complaint [Dkt. 42], and in support thereof states as follows:

BRIEF FACTUAL BACKGROUND

Plaintiff Benjamin George picked up a lost cell phone, intending to return the phone to Chicago police because he did not know its owner. First Amended Complaint, ¶¶ 16-20, 50 (Dkt. 37). George went to work as he had to in order to support his small business, and the lost phone did not ring or provide a way to identify its owner. Dkt. 37 ¶¶ 17-20. George traveled toward the 16th District police station after work; on the way, George received a phone call from his roommate and landlord informing him that police were at their home. Dkt. 37 ¶ 26. George spoke with a Defendant who identified himself as Officer Ortiz and was told to continue to the station. Dkt. 37 ¶¶ 27, 34.

Earlier that day at Chicago's 45th Aldermanic Ward Office, Defendant Charles Sikanich, Chicago's 45th Ward Superintendent, had informed Defendant James Gardiner, Chicago's 45th

Ward Alderman, that he had lost his cell phone. Dkt. 37 ¶ 21. Gardiner instructed Sikanich to falsely

report to police that the phone had been stolen, not lost. Dkt. 37 ¶¶ 8-9, 22-23. Sikanich never called

or texted the phone all day. Dkt. 37 ¶ 18. Gardiner and Sikanich coordinated with police throughout

the day, and eventually visited George's home soon after police did. Dkt. 37 ¶¶ 23-24, 26-29, 35-39,

51-60, 72. After an inflammatory conversation with George's roommate and landlord, Gardiner

yelled to Sikanich, "Have him [George] locked up!", a direct instruction from a Chicago elected

official to a Chicago employee to follow through on an earlier false police report by inducing police

to carry out a false arrest. Dkt. 37 ¶¶ 34-35, 51-60. Police also travelled to George's home. Dkt. 37

¶ 26-27. Gardiner has an active, close relationship with police in his Ward, who have distributed

literature for Gardiner on occasion, and Gardiner as well has accompanied police on investigations

in the past as he and Sikanich did that day. Dkt. 37 ¶ 92.

George arrived at the police station, returned the lost telephone, and, after returning it, was

arrested. Dkt. 37 ¶¶ 41, 49-52, 60. Later, Sikanich entered the station walking closely with several

Defendant Officers and swore out a complaint with their assistance. Dkt. 37 ¶¶ 51-56. While George

was being processed, the Defendant who identified himself as Ortiz said: "I believe you, I wasn't

going to arrest you, but this person has power and I have bosses," referring to some combination of

Sikanich, Gardiner, and high-ranking police officials. Dkt. 37 ¶ 72. All Defendants were participants

in the plan to falsely arrest and charge George for this crime without probable cause. Dkt. 37 ¶¶ 35,

52-58. George's criminal case was stricken off the call with leave to reinstate at his first court date on

September 5, 2019, and the Speedy Trial period passed without reinstatement. Dkt. 37 ¶ 74.

## PRELIMINARY STATEMENT

There is a factual issue in Defendants' Motion that bears highlighting before this Response

progresses into its argument. Defendants contend that Plaintiff pled "Gardiner told Sikanich to

report the missing phone to the police." Dkt. 42 at 3. This is true only to a point—Plaintiff's full

allegation is that Gardiner told Sikanich to report the phone to police as *stolen* despite knowing it was lost. Dkt. 37 ¶¶ 22-23. Defendants' Motion contains other examples of ostensible fealty to the facts as alleged in the complaint (which the Court must accept as true here) but in many cases there are nonetheless key distinctions between what is represented by Defendants and what was actually pled. Dkt. 42 at 7 ("The only well-pleaded facts... are that [Sikanich] lost his phone, reported it stolen...."); Dkt. 42 at 7 (errantly suggesting that plaintiff did not allege that Gardiner disparaged Plaintiff to his roommate); Dkt. 42 at 8 (improperly characterizing Plaintiff's factual allegations regarding why Gardiner and Sikanich reported the phone to the police as "mere speculations"); Dkt. 42 at 13 (suggesting with no factual basis that George knew Sikanich's identity as owner of the phone).

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure Rule 12(b)(6), a complaint must provide a "short and plain statement of the claim" showing a pleader's right to relief and so that the defendant has "fair notice" of the claim. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must contain sufficient factual matter to state a facially plausible claim such that the court may reasonably infer that defendants are liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a motion to dismiss under Rule 12(b)(6), the court accepts all well-pled allegations in the complaint as true, and construes the complaint in the light most favorable to the plaintiff with all possible inferences' being drawn in the plaintiff's favor. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

## ARGUMENT

Plaintiff stated a claim against Defendants Gardiner and Sikanich for False Arrest and Unlawful Seizure (Count I), Equal Protection Class of One (Count II), Due Process "Shocks the Conscience" (Count III), Malicious Prosecution (Count IV), and Conspiracy to Commit Malicious Prosecution (Count V) because the First Amended Complaint: 1) appropriately places Defendants

on notice of the claim against them 2) by allegations that are neither vague nor improbable and 3) without conclusory and threadbare recitations of a claim's elements. See *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (summarizing pleading requirements after *Twombly* and *Iqbal*).

## I. THE COURT SHOULD DENY THE MOTION BECAUSE THE PLAINTIFF HAS MORE THAN MET THE REQUIREMENTS LAID FORTH IN *ASHCROFT V. IQBAL*, 556 U.S. 662 (2009).

In their Motion to Dismiss, Defendants Gardiner and Sikanich state, without justification, that "[c]ounts I-V of the Complaint should be dismissed for failure to meet the threshold requirement of "plausibility" under *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)." Dkt. 42 at 5. But Defendants have conceded "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). The Complaint amply meets these requirements.

When ruling on a Rule 12(b)(6) motion to dismiss, the "analysis rests on the complaint," and the court "must construe it in the light most favorable to the plaintiffs, accepting as true all well-pleaded facts alleged and drawing all permissible inferences in their favor." *Active Disposal, Inc. v. City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011).

"[T]he Federal Rules of Civil Procedure generally require only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of his legal argument." *Skinner v. Switzer*, 131 S. Ct. 1289, 1296 (2011). Moreover, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Skinner*, 131 S. Ct. at 1296 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). Plaintiff has more than met this requirement in each of his individual counts.

4

In support of their position, Defendants have merely stated that "[t]he only *well-pleaded facts of the Complaint* pertaining to Sikanich are that he lost his phone, reported it stolen, drove around near Plaintiff's home, swore out a criminal complaint, went to Plaintiff's home after his arrest and asked why Plaintiff's roommate allowed him to live there and disparaged Plaintiff to his roommate." Dkt. 42 at 7 (*emphasis added*). As noted in this Response's Preliminary Statement, *infra*, there are tangible questions as to the accuracy of Defendants' characterization of the facts. Further, the Motion does not specifically challenge any facts as implausible, or offer a reason why this would be the case, merely stating that "[v]irtually all of the allegations of wrongful conduct by Sikanich and Gardiner are speculative, or rely on conclusions unsupported by well-pleaded baseline facts." (Motion to Dismiss, Page 6). This is flatly contradicted by the record. *See, e.g.,* Dkt. 37 ¶¶ 21-37, 51-56, 72. If anything is conclusory, it is Defendants' Motion.

Instead of attacking any of the actual elements of Plaintiff's Counts in their Amended Complaint on their face, Defendants' Motion baselessly attacks the complaint's adequacy while ignoring *Atlantic Corp. v. Twombly*'s direction: "we do not require heightened fact pleading of specifics, but *only enough facts to state a claim to relief that is plausible on its face.*" 550 U.S. 544 at 570; (*emphasis added*). *See also Ashcroft v. Iqbal,* 556 U.S. at 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

So long as Plaintiff's Amended Complaint fairly apprises Defendants of the facts that make up the elements of the claims brought against them—as it plainly does, and with *greater* specificity than is needed at this stage—Plaintiff has satisfied his pleading obligations. Fed. R. Civ. P. 8(a) (requiring only that a Complaint provide "fair notice" to the Defendants "of what the ... claim is and

the grounds upon which it rests"); *Twombly*, 550 U.S. at 555; *Riverdale v. 138th St. Joint Venture*, 527 F. Supp. 2d 760, 766-67 (N.D. Ill. 2007).

As such, Defendants Motion to Dismiss Counts I-V of Plaintiff's Amended Complaint under the *Iqbal* Plausibility Test should be denied.

This Response, nonetheless, briefly explains the elements of the claims, and their proper pleading, should the Court wish to evaluate the claims in in further depth (despite Defendants' waiver of many relevant arguments). Response, section IV, *supra* (outlining waiver of those arguments).

A. <u>The Court should deny the Motion as to Count I because it is well-pled that there was no probable cause for arrest.</u>

To state a claim for false arrest, a plaintiff must show that there was no probable cause to arrest them. *Neita v. City of Chicago*, 830 F.3d 494, 497 (7th Cir. 2016). Probable cause is present when "at the time of the arrest, the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person, or one of reasonable caution, in believing... that the suspect has committed, is committing, or is about to commit an offense." *Id.*

The Offense of Theft of Lost or Mislaid Property is present when someone obtains control of property and:

> 1) knows or learns the identity of the owner or knows, or is aware of, or learns of a reasonable method of identifying the owner;
> 2) fails to take reasonable measures to restore the property to the owner; and
> 3) intends to deprive the owner permanently of the use or benefit of the property.

720 ILCS 5/16-2.

Defendants do not (and cannot, at this stage) assert that the facts pled in the complaint are false or erroneous. As such, the Court must accept that Sikanich's Complaint was fabricated in concert and with assistance from Defendant Officers and at Gardiner's direction. Dkt. 37 ¶¶ 35, 52-58. Gardiner and Sikanich do not specify what element is not well-pled as to False Arrest. Plaintiff's

First Amended Complaint makes clear that based on the facts and circumstances available to Defendants Gardiner and Sikanich at the time of George's arrest, there was probable cause for none of the three elements, much less all of them. *Neita v. City of Chicago*, 830 F.3d at 497. George did not know the owner's identity, took reasonable measures to return the phone, and did not intend to retain possession of the phone. Dkt. 37 ¶¶ 17-19, 48-49. Defendants do not even mention these well-pled facts in the factual statement of their Motion. The Motion should be denied as to Count I.

> B. The Court should deny the Motion as to Count II, Equal Protection class-of-one, because its elements are properly pled in the First Amended Complaint

Although a classic class-of-one equal protection claim includes reference to intentional treatment different from other similarly situated individuals without rational basis, *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000), a clear showing of animus alone may sustain a class-of-one equal protection claim. *Swanson v. City of Chetek*, 719 F.3d 780, 783 (7th Cir. 2013). Readily obvious animus does not require a plaintiff to redundantly show disparate treatment via a near-exact, one-to-one comparison of individuals similarly situated. *Id.* at 784. Similarly, in *Geinosky v. City of Chicago*, a plaintiff maintained his class-of-one equal protection claim despite not offering evidence of a similarly situated person. 675 F.3d at 745 (concluding that naming a similarly situated person served no purpose while reversing earlier dismissal of a class-of-one claim)

Defendants do not specifically offer any element of Count II of Plaintiff's Amended Complaint that they find to be missing or insufficiently pled, nor make any argument on its merits. Moreover, Defendant's assertion that the First Amended Complaint is deficient because "[p]laintiff offers no hint of an explanation about why Gardiner or Sikanich bore him personal animus, or wished to see him prosecuted even after he had returned Sikanich's phone" (Motion to Dismiss, Page 6) is both flatly contradicted by the well-pled allegations and irrelevant to any analysis of the

7

Motions functionally circular argument that the First Amended Complaint is insufficient under the requirements laid forth in *Iqbal*. *556* U.S. 662.

Defendants have fair notice of a well-stated claim here, and the Motion should be denied.

C. <u>The Court should deny the motion as to Count III, Due Process "shocks the conscience," because the First Amended Complaint outlines conduct that shocks the conscience.</u>

No state actor shall deprive any person of life, liberty, or property, without due process of law. U.S. Const. Amend. 14; 42 U.S.C. § 1983. While a formalistic consideration of fixed elements is not an aspect of evaluating Due Process "shocks the conscience" claims, *Armstrong v. Squadrito*, 152 F.3d 564, 570 (7th Cir. 1998), conduct considered under a totality of circumstances approach may give rise to actionable claims, particularly when it impugns the fairness, integrity, and public reputation of the judicial process. *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1911 (2018). The underlying tort is a violation of due process that shocks the conscience. Such is the case here.

Plaintiff has plausibly alleged that he was singled out by powerful political actors for unreasonable arrest, a perversion and denigration of the judicial process resulting in a deprivation of liberty that "shocks the conscience." A Defendant Officer told George that his prosecution was the result of political pressure, not factual basis. Dkt. 37 ¶ 72. The false criminal complaint in this was sworn out by Sikanich at Gardiner's direction, FAC ¶¶ 35, 51-57. These facts are sufficient to state a claim at this stage. The First Amended Complaint also shows that Defendants induced local police officers to go to the Plaintiff's home, harassed his roommate, and later caused Plaintiff to be arrested. Dkt 37. ¶¶ 23-24, 26, 28-37, 51-58. Defendants merely state that these well-pled facts are "implausible". At this stage, these allegations state a claim. *See Skinner*, 131 S. Ct. at 1296 (quoting *Scheuer v. Rhodes*, 416 U.S. 232,236 (1974) ("[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.")

8

D. **The Court should deny the motion as to Count IV, Malicious Prosecution, because Defendants caused the commencement of a prosecution without probable cause.**

Again, Defendants have cited no element of Malicious Prosecution that Plaintiffs failed to meet. As properly stated in the First Amended Complaint, Sikanich swore a false complaint, without probable cause and at Gardiner's direction, in concert with Defendant Officers, proximately causing the commencement of the malicious prosecution. *Beaman v. Freesmeyer*, 2019 IL 122654, ¶ 33.[1]

Plaintiff has pled facts to support this claim, and the Motion should be denied on this Count.

E. **The Court should deny the Motion as to Count V, conspiracy to commit malicious prosecution, because a conspiracy has been alleged and the underlying tort stands.**

Under Illinois state conspiracy law, a plaintiff must allege: (1) an agreement between at least two people for the purpose of accomplishing an unlawful purpose or lawful purpose by unlawful means; and (2) a tortious act by one of the co-conspirators in furtherance of the agreement. *Adcock v. Brakegate, Ltd.*, 164 Ill.2d 54, 62 (4th Dist. 1994) (citations omitted).

Defendants agreed to maliciously prosecute George ("Have him locked up!"), and made tortious actions in furtherance of this unlawful objective. FAC ¶¶ 52-56. The Motion to Dismiss should be denied as to Count V.

## II. THE ACTIONS OF MOVANTS WERE TAKEN UNDER COLOR OF STATE LAW

The Motion should be denied as to Counts I-III because the actions of Defendants Gardiner and Sikanich were indeed made under color of law. It should be denied as to Counts IV-V for a different reason—color of law is not an element of the Illinois state law tort of malicious prosecution.

Even if the Court were to find that Gardiner and Sikanich were acting as private individuals—a difficult conclusion, given that Movants were readily identifiable to police in the District and

---

[1] The other elements of malicious prosecution are also adequately pled: the termination of the proceeding was in favor of Plaintiff, malice was present, and Plaintiff was damaged by the prosecution. *Swick v. Liautaud*, 169 Ill. 2d 504, 512 (1996) (outlining elements of a malicious prosecution claim).

residents in the Ward as agents of municipal government, previously worked with police in the

district on a variety of issues, carried badges of city authority on or near their persons, undertook

their actions while in a truck with the City's logo on it, and made these actions during business hours—

they worked in concert with uniformed police officers to deprive Plaintiff of his rights under the law,

making them parties for which liability is appropriate under section 1983.[2] See Dkt. 37 ¶¶ 21-30, 35-

39, 51-60, 72.

A. Gardiner and Sikanich acted under color of law by virtue of their reliance on the authority of their offices and their use of instrumentalities of city government.

"[A]n action is taken under color of state law when it 'involves a misuse of power, possessed

by virtue of state law and made possible only because the wrongdoer is clothed with the authority of

state law." *Honaker v. Smith*, 256 F.3d 477, 484-85 (7th Cir. 2001) (citation omitted).

The deprivation of Plaintiff's rights occurred while Defendants Gardiner and Sikanich were

clothed with the authority of state law. Everyday citizens, unadorned with the powers attendant to

city employment (and, indeed, elected office), could not have assembled a team of police officers to

falsely arrest and lock up a private citizen who found a lost cell phone and returned it to police. It is

well-pled, additionally, that Defendant Gardiner treats police duties as within his purview, authority,

and job description. Dkt. 37 ¶ 92.

*Wilson v. Price*, cited by Defendants, is in fact instructive, but not for the reasons suggested

by the Motion. 624 F.3d 389 (7th Cir. 2010). While the Court there did not find that the alderman

in that case was acting under color of law when he directed an automobile shop employee to move

illegally parked cars and then assaulted the employee, the court emphasized the fact that "[t]he

complaint is devoid of any allegation that Price bore any indicia of his position as an alderman or

---

[2] *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 152 (1970) (private party who is a "willful participant in joint activity with the State or its agents" satisfies color of law requirements of 42 U.S.C. § 1983) (citation omitted).

10

that he invoked his aldermanic office in any way, even to identify himself as an alderman at any point during the confrontation." *Id.* at 394.

Here, the Complaint indicates Defendants Gardiner and Sikanich were identified as an alderman and city employee on August 19, 2019; as such, their violations of George's constitutional rights were possible only because of their status and power as state actors acting under color of law. Defendants identified themselves as an alderman and city political employee—with the implication that they possessed official authority over individual police officers—when they directed the police to make the false arrest, as evidenced in part by the chilling statement to Plaintiff: "I wasn't going to arrest you, but this person has power and I have bosses." Dkt. 37 ¶ 72. Sikanich travelled to Plaintiff's home in a marked City of Chicago vehicle. Dkt. 37 ¶¶ 28, 35-36. Further, it is plausibly alleged that both Defendants possess six-pointed star badges that resemble police badges, and the court may reasonably infer that Defendants used these badges at times in the present case. Dkt. 37 ¶ 95. *See Tamayo v. Blagojevich,* 526 F.3d 1074, 1081 (7th Cir. 2008) (complaint construed in light most favorable to plaintiff with all possible inferences drawn in plaintiff's favor at motion to dismiss).

B. <u>Gardiner and Sikanich acted in concert with the defendant officers such that the authority of the two groups was indistinguishable on the day of George's wrongful arrest.</u>

The Supreme Court of the United States has held that "[p]rivate persons, jointly engaged with state officials in the prohibited action, are acting 'under color' of law for purposes of [Section 1983]. To act 'under color' of law ... [i]t is enough that [a private person] is a willful participant in joint activity with the State or its agents." *Adickes v. S. H. Kress & Co.,* 398 U.S. at 152 (1970) (internal quotation and citation omitted). Even if the court were to conclude that Defendant Gardiner's and Sikanich's actions alone and in a vacuum were not taken under color of law, their

11

willful participation in joint activity with uniformed police officers throughout the day leads to the conclusion that their actions were nonetheless taken under color of state law.[3]

The Seventh Circuit has clarified what is needed to successfully plead a claim of joint action under color of state law: "the who, what, when, why, and how" of the action. *Brokaw v. Mercer Cty.*, 235 F.3d 1000, 1016 (7th Cir. 2000) (also noting that establishing Section 1983 liability on a theory of conspiracy requires that "(1) a state official and private individual(s) reached an understanding to deprive the plaintiff of his constitutional rights, and (2) those individual(s) were willful participants in joint activity with the State or its agents.")

Plaintiff has met this standard here. All Defendants were participants in the conspiracy. The conspiracy was to have George falsely arrested and otherwise maliciously harassed and targeted. The when was throughout the day and into the evening of August 19, 2019, up to and until the complaint was filed. The why was animus, spite, and ego. And the how was via the making of a false police report, the swearing of a false police complaint, the joint trips to Plaintiff's home to "chat" with his roommate, the treatment of Plaintiff and his coworker at the 16th District, and the pressure exerted on and with Officers to violate George's rights.[4] State officials, Defendant Officers, and private individuals (should the Court find them so), Gardiner and Sikanich, reached an understanding to deprive George of his rights, and did so willingly and jointly. *Id.*

---

[3] If the court were to conclude that a section 1983 or section 1985 conspiracy count should have been explicitly delineated and enumerated in this regard, it is possible and appropriate for the Court to nonetheless consider such a claim. Plaintiff's complaint is appropriate for exposition via the Seventh Circuit's admonition in *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073 (7th Cir. 1992) that, "while it is common to draft complaints with multiple counts, each of which specifies a single statute or legal rule, nothing in the Rules of Civil Procedure requires this. To the contrary, the rules discourage it." *Id.* at 1078. "The complaint need not identify a legal theory, and specifying an incorrect theory is not fatal." *Id.* It could also be re-pleaded, including a count and if necessary more allegations regarding joint activity.

[4] In this regard, *Spiegel v. McClintic* is distinguishable; here, Officers' actually carried through the on the direction of Gardiner and Sikanich and agreed to falsely arrest George, unlike there. 916 F.3d 611 at 616-617. Further, unlike there, George alleges that all Defendants knew the reports were false and carried forward nonetheless. *Id.* at 617.

12

Defendant Officers travelled to the police station with Defendant Sikanich, during which time and at this stage it may be inferred that they discussed the impending arrest of George via the directive of Gardiner to "have him locked up!". Once in the back of the station, Defendant Sikanich swore out a criminal complaint which exactly mirrored the statutory language for the charge, which suggests that the police were involved to provide Sikanich the statutory language in an effort to jointly effect George's arrest. Dkt. 37 ¶ 51-60. Finally, Gardiner and Sikanich possess close ties to the police, initiated an investigation, and then were referred to as "bosses" upon whose whim George was wrongly arrested. Dkt. 37 ¶¶ 72, 92. At this stage, Plaintiff is only required to allege "a plausible account of a conspiracy." *Geinosky v. City of Chicago*, 675 F.3d at 749.

Plaintiff's First Amended Complaint demonstrates that Defendants Gardiner and Sikanich acted under color of law under in more than one way, and, therefore, Counts I-III should not be dismissed upon this ground. Further, the torts in Counts IV and V do not have a "color of law" requirement. *Swick v. Liautaud*, 169 Ill. 2d at 512; *Adcock v. Brakegate, Ltd.*, 164 Ill.2d at 62. The Motion should be denied.

### III.   COUNTS I, II, IV AND V STATE COHERENT CLAIMS AND SHOULD NOT BE DISMISSED

Separate from their notice pleading argument, Movants' state perfunctorily that Counts I, II, IV, and V "fail to state coherent claims," and attempt to incorporate Defendant Officers' motion by reference in support, but this endeavor is prohibited from consideration by relevant law and further would fail in substance.

As a preliminary matter, it is inappropriate for Defendants Gardiner and Sikanich to, on page 14 of their Motion, attempt to incorporate 11 pages of Defendant Officers' argument as their own via a two-sentence statement that Movants "agree" with that argument and "will not belabor the points...." Dkt. 42 at 14. Such argument is perfunctory, constituting a waiver of those arguments.

13

*Black & Decker Inc. v. Robert Bosch Tool Corp.*, 371 F. Supp. 2d 965, 970 n. 3 (N.D. Ill. 2005), citing *Kramer v. Banc of Am. Sec.*, LLC, 355 F.3d 961, 964 n. 1 (7th Cir. 2004) (failure to develop argument constitutes waiver).

Further, intended or not, this effort is primarily a means of circumventing Local Rules on page limits, and should not be considered for that reason independently—if Local Rule 7.1's 15-page limitation for briefs is to carry weight, efforts like Defendants' to supplement their own briefing outside the proscribed limits must be rejected. *See Miller UK Ltd. v. Caterpillar, Inc.*, 292 F.R.D. 590, 592 (N.D. Ill. 2013) (collecting cases); *Watts v. Thompson*, 116 F.3d 220, 224 (7th Cir. 1997) (In the Seventh Circuit, "[e]nforcing page limits and other restrictions on litigants is rather ordinary practice... which is rather strictly, and cheerfully, enforced.")

The only substantive argument other than "color of law" that Defendants have not waived as to Counts I, II, IV, and V is the presence or absence of a conspiracy. Defendants face a high bar to dismiss a conspiracy claim at the pleading stage when faced with a complaint that thoroughly identifies the conspiracy's participants, purpose, duration, nature, time, and execution. Dkt. 37 ¶¶ 28-37, 52-56. Defendants' argument does not meet its threshold.

The First Amended Complaint contains ample well pled-facts to support the existence of a conspiracy (and all that is needed at this stage in the proceedings is facts that allow for the inference of such agreement). The requisite proof is not demanding. *See Hoffman-LaRoche, Inc. v. Greenberg*, 447 F.2d at 875 (both direct and circumstantial evidence adequate to prove conspiracy and the law "does not demand proof that each conspirator knew the exact limits of the illegal plan or the identity of all participants therein.")

Plaintiff alleged that Gardiner and Sikanich agreed to have George falsely arrested, and that Gardiner and Sikanich then pulled police officers into this agreement. Dkt. 37 ¶¶ 35, 51-60, 72.

Sikanich accompanied a remarkable number of officers into the police station, where he swore a complaint with their assistance and advice. Dkt. 37 ¶¶ 51-60. A Defendant Officer told plaintiff there was no probable cause for his arrest, but nonetheless arrested him because of the wishes of his "bosses." Dkt. 37 ¶ 72.

Even though Defendants did not show up to court, this is not indicative of anything legally dispositive, despite the Motion's triumphal proclamation that this fact makes Plaintiff's position "practically fall apart." Dkt. 42 at 14. To start, the continuance of a prosecution is not a requirement to state a claim for malicious prosecution; these claims require only the "commencement *or* continuance" of a prosecution. *Swick v. Liautaud*, 169 Ill. 2d at 512 (emphasis added). The instant prosecution was commenced in part by Sikanich's action of swearing a false police report at Gardiner's direction in consort with and with aid from Defendant Officers. And there are many reasons why that conspiracy—which began on August 19, 2019 and led to the arrest and charge of George for a crime he did not commit, his loss of housing, business, health, reputation, property, and other consequences—was not developed further via an extended prosecution. Perhaps Gardiner and Sikanich were satisfied that they had taught George a lesson (though the lesson is certainly unclear). Perhaps they feared being caught. Perhaps the officers, given time to contemplate, no longer agreed to assist Gardiner and Sikanich in their tortious conduct, particularly in front of a court. In any case, the argument need not be made in depth at this point, as all are reasonable inferences that could be drawn in the Plaintiff's favor, and continuance is not a requirement of the underlying tort in the first place. The Motion should be denied.

Respectfully submitted,

/s/Elizabeth A. Homsy
/s/Daniel E. Massoglia
*Attorneys for Plaintiff*

15

Bobby Vanecko*
Brittany Shaw (#6333347)
Daniel Massoglia (#6317393)
First Defense Legal Aid
601 S. California Ave.
Chicago, IL 60612
P: 708-797-3066
E: bobby@first-defense.org
E: brittany@first-defense.org
E: daniel@first-defense.org

Elizabeth Homsy (#6307858)
The Law Offices of Elizabeth A. Homsy
2506 N. Clark St.
Suite 286
Chicago, IL 60614
P: 708-669-6148
E: eahomsy@gmail.com

* Law Student Licensed Under Illinois
Supreme Court Rule 711

## CERTIFICATE OF SERVICE

I, Daniel Massoglia, an attorney, hereby certify that a copy of this *Response to Defendants Sikanich and Gardiner's Motion to Dismiss* [Dkt. 42] was filed before 11:59pm on 4/30/21 using the Court's CM/ECF filing system, which generates electronic notice to all parties of record in the case.

Respectfully submitted,

Daniel Massoglia
*One of Plaintiff's Attorneys*

Daniel Massoglia (#6317393)
First Defense Legal Aid
601 S. California Ave.
Chicago, IL 60612
P: 708-797-3066
E: daniel@first-defense.org

17