THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BENJAMIN GEORGE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 20 CV 6911 |
| v. | ) | |
| | ) | |
| CITY OF CHICAGO, JAMES GARDINER | ) | Judge: Honorable Robert Blakey |
| CHARLES SIKANICH, CHICAGO | ) | |
| POLICE OFFICERS SOLOMON ING, | ) | Magistrate Judge: Honorable Beth Jantz |
| PETER PALKA, DANIEL SMITH, BILOS, | ) | |
| JOSEPH FERRARA, SERGIO CORONA, | ) | |
| ORTIZ, AND UNKNOWN CHICAGO | ) | |
| POLICE OFFICERS | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' JOINT REPLY IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

Defendants submit their reply in support of their motion to dismiss Plaintiff's amended complaint in its entirety and state as follows:

**PROCEDURAL HISTORY**

Plaintiff filed his amended complaint (hereinafter "Complaint") on March 12, 2021. ECF Dkt. #37. Defendants filed a motion to dismiss the Complaint (hereafter, "Motion") on April 1, 2021. ECF Dkt. #40. In the Motion, Defendants argued the following: (1) the false arrest claim fails because Defendant Officers had probable cause to arrest Plaintiff; (2) the unlawful seizure claim fails because Plaintiff failed to plead Defendant Officers were personally involved in the alleged misconduct, and, even if he did, the seizure was reasonable under the community caretaking doctrine; (3) the equal protection claim fails because Plaintiff failed to plead that he is similarly situated to a group of individuals that were treated differently, and, even if he did, he failed to eliminate any rational basis for his treatment; (4) the malicious prosecution claim fails because Defendant Officers did not commence the criminal prosecution which was supported by probable cause; (5) the conspiracy claim

fails because it is insufficiently pled and Plaintiff failed to plead an underlying state law tort claim; and the indemnification claim fails because Plaintiff failed to state an underlying claim. *See id.* Plaintiff filed his Response to Defendants' Motion (hereinafter "Response") on April 30, 2021. ECF Dkt. #45.

## ARGUMENT

The Court should grant the Motion because none of the arguments in the Response save Plaintiff's claims. The Response to each claim is addressed below.

### I. Plaintiff's False Arrest Claim Fails

In his Response, Plaintiff alleges that Defendant Officers did not have probable cause to arrest Plaintiff and had a duty to conduct a further investigation. *Id.* at 5-6.

To support his allegation that Defendant Officers did not have probable cause to arrest him, Plaintiff asserts that his Complaint makes clear that he did not know the owner of the phone's identity, that he took reasonable means to return the phone, and that he did not intend to retain possession of the phone. *Id.* at 5. To start, these are conclusory assertions which are not entitled to a presumption of truth and must be excised from the court's plausibility analysis. See *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009) (after excising the allegations not entitled to the presumption of truth, courts must determine whether the remaining factual allegations "plausibly suggest an entitlement to relief.").

Even if the Court deems that these assertions are entitled to a presumption of truth, the Complaint fails to set forth any well-pled facts that Defendant Officers *knew* this information. Rather, the Complaint sets forth facts establishing that Defendant Officers *knew* the phone belonged to Sikanich, *knew* Sikanich left the phone at a convenience store, *knew* Plaintiff took the phone rather than turning it over to the store where it had been left, *knew* Plaintiff kept the phone throughout the workday rather than turn it into the police station, *knew* Plaintiff returned the phone to the police station only after he was instructed to do so by the police, and *knew* Sikanich had sworn out a criminal complaint against Plaintiff for stealing his phone. ECF Dkt. #37 at ¶¶ 16-18, 22-24, 50, 52.

2

Based on these facts, Defendant Officers had reason to believe that Plaintiff had stolen Sikanich's phone. Presumably, an individual could identify the owner of a mislaid piece of property by asking the individuals in the vicinity if the property belongs to them, by asking if anyone has reported the property missing, or by leaving the property with the establishment where the property was mislaid. These would also seem to be reasonable measures that an individual could take to restore the mislaid property to the owner. But the Plaintiff did not do any of these things. ECF Dkt. #37 at ¶¶ 16-20. He did not ask anyone in the store if the property belonged to them. *Id.* at ¶¶ 16-17. He did not ask the clerk at the convenience store if anyone had reported the phone as missing. *Id.* And he did not leave the phone with the clerk at the convenience store. *Id.* at ¶¶ 17-18.

Plaintiff's failure to take any of these commonsense actions, coupled with his decision to return the phone to the police station *only after* he was instructed to do so by the police, can be interpreted by reasonable individuals as suggesting that he intended to keep the property for himself. Only after Plaintiff learned he was going to be arrested did Plaintiff try to explain that he intended to return the phone and in fact had returned the phone. *Id.* at ¶ 62. However, police officers are not required "to use the rules for summary judgment and draw inferences in favor of the suspects." *Bridewell v. Eberle*, 730 F.3d 672, 676 (7th Cir. 2013); *See Sroga v. Weiglen*, 649 F.3d 604, 608 (7th Cir. 2011) ("a person's ability to explain away seemingly damning facts does not negate the existence of probable cause, even though it might provide a good defense should the case go to trial.").

Plaintiff tries to save his claim by arguing that "[p]olice had reason to doubt and discredit Sikanich's complaint – and thus investigate further – for three reasons." ECF Dkt. # 45 at 6**.** The first reason that Plaintiff offers is that "a defendant officer[1] explicitly communicated doubt and disbelief as to Sikanich's speculative complaint to [Plaintiff]" by stating " 'I believe you, I wasn't going to arrest

---

[1] The defendant officer that Plaintiff references is identified in the Complaint as "Officer Ortiz." ECF Dkt. 37 at ¶72**.** Officer Ortiz has not been served as of the date of this filing.

you, but this person has power and I have bosses.'" *Id.* Plaintiff argues that "[this officer's] statements reflect that a reasonable officer would have found that Plaintiff was credible and known that the only basis for criminal charges was the capricious and abusive whim of the complaining witness." *Id.*

Plaintiff's self-serving assertion that an Officer Ortiz believed he was credible does not mean that Defendant Officers believed he was credible or that a reasonable officer would have believed he was credible. Moreover, Plaintiff does not claim that this Officer Ortiz conveyed his belief to Defendant Officers. See *id.* And even if he did, probable cause does not depend on "what the arresting officer actually thought or what his motivation was." *Williamson v Curran*, 714 F.3d 432, 447 (7th Cir. 2013). Indeed, an officer could believe Plaintiff's explanation that he intended to return the phone is credible, yet still conclude that there is enough evidence to arrest Plaintiff. See *Mucha v. Village of Oak Brook*, 650 F.3d 1053, 1057 (7th Cir. 2011) (probable cause "does not require the existence of criminal activity to be more likely true than not true"); *Gottlieb v. Sgt. Richards*, 2002 WL 31109380, at *3 (N.D. Ill. Sept. 23, 2002) (stating that "[p]robable cause does not require [an officer] to have certainty of [a plaintiff's mental state]; indeed, police are entitled to "let courts resolve conflicts about mental states.") It follows that a random officer's personally held belief that Plaintiff's explanation was credible does not mean that Defendant Officers should have conducted a further investigation.

The second reason the police should have doubted and discredited Sikanich's complaint and investigated further, according to Plaintiff, is that Defendant Officers knew that Defendants Gardiner and Sikanich had taken inappropriate actions towards Plaintiff and his roommate by traveling to their home and berating and threatening him. ECF Dkt. #45 at 6. To start, this is a conclusory assertion and should be disregarded. See *Iqbal*, 556 U.S. at 680. Plaintiff's Complaint does not set forth any well-pled facts to suggest that Defendant Officers knew Defendants Gardiner and Sikanich had travelled to Plaintiff's home or that Defendants Gardiner and Sikanich had berated and threatened Plaintiff. In fact, the Complaint is completely silent on the issue. See ECF Dkt. #37 at ¶28-38, 51-72, 96-110. And

even if the Plaintiff had set forth facts showing that Defendant Officers knew Defendants Gardiner and Sikanich had travelled to Plaintiff's home and that Defendants Gardiner and Sikanich had berated and threatened Plaintiff, Plaintiff fails to explain how that information vitiates the probable cause that Defendant Officers had to arrest Plaintiff. If anything, this information would suggest that the parties had a contentious prior relationship providing Plaintiff with a motive for stealing the phone. As such, Plaintiff's second reason is not persuasive.

Third and finally, Plaintiff claims Defendant Officers should have questioned the complainant's reliability and investigated further because "Sikanich ascribed a specific intent to deprive possession to [Plaintiff] when officers knew, by virtue of [their] coordination with Sikanich throughout the day – indeed, Sikanich entered the police station walking closely with a handful of Defendant Officers – that Sikanich could not have known [Plaintiff's] intent or mental state." ECF Dkt. #45 at 6. Again, Plaintiff's claim is based on conclusory assertions which are not entitled to a presumption of truth. *See Iqbal*, 556 U.S. at 680. Plaintiff does not set forth any well-pled facts to support his assertion that Defendant Officers knew Sikanich could not have known Plaintiff's intent or mental state. Instead, he claims Defendant Officers knew this based on their coordination with Sikanich throughout the day. ECF Dkt. #45 at 6. The only fact that Plaintiff sets forth in support of his claim that Defendant Officers coordinated with Sikanich throughout the day is that Defendant Officers entered the police station with Sikanich. *Id.*

Even if we assume that entering the police station with someone amounts to coordination throughout the day, Plaintiff fails to explain how this shows that Defendant Officers knew Sikanich could not have known Plaintiff's intent or mental state. Plaintiff was not present during Defendant Officers conversation with Sikanich in the "back room" at the police station. ECF Dkt. #37 at ¶51. Nor has he presented any facts to suggest that he knows what Sikanich told the officers. In short, Plaintiff has not set forth any facts to support his assertion that Defendant Officers knew Sikanich

5

could not have known Plaintiff's intent or mental state. Instead, he has set forth facts establishing that Defendant Officers *knew* the phone belonged to Sikanich, *knew* Sikanich left the phone at a convenience store, *knew* Plaintiff took the phone rather than turning it over to the store where it had been left, *knew* Plaintiff kept the phone throughout the workday rather than turn it into the police station, and *knew* Plaintiff returned the phone to the police station only after he was instructed to do so by the police. ECF Dkt. #37 at ¶¶ 16-18, 22-24, 50, 52. As explained above, a reasonable individual could interpret Plaintiff's actions as an intent to keep the phone for himself.

The cases that Plaintiff cites are not helpful. In *BeVier v. Hucal,* the BeViers' arrest is significantly different than Plaintiffs, in that they were arrested for child neglect after state police observed the children in the hot, direct sunlight looking "filthy and sunburned" with a babysitter. *BeVier v. Hucal,* 806 F.2d 123, 125 (7th Cir. 1986). The officer knew that the parents had previously taken the child to the hospital and had retained a new babysitter – evidence which contradicted the statute's requirement that the parents knowingly caused, aided, or encouraged a person to be or to become a dependent and neglected child. *Id.* at 126. The Court held that the officer's failure to conduct a further investigation under these circumstances was unreasonable given that a few follow up questions to the babysitter, parents, or Red Cross personnel would have revealed that the parents had instructed each of the babysitters to keep the children in the shade and their diapers dry, the diaper rash had been seen by a doctor and it was being treated with proper medication. *Id.* at 127.

In the present case, Plaintiff fails to point to any evidence to suggest that probable cause was susceptible to doubt. Moreover, Plaintiff fails to explain how a further investigation would have confirmed that he did not steal the phone. Plaintiff proposes that Defendant Officers *could have* received information from speaking with his co-worker but fails to indicate what differing or supporting information the co-worker would have provided. ECF Dkt. # 45 at 7-8. In fact, the Complaint does not even suggest that Plaintiff told Defendant Officers that his co-worker was a

witness or had any relevant information. Plaintiff claims that Defendant Officers should have "ask[ed] the accuser for details beyond conclusory allegations," yet he does not set forth any well-pled facts to support his conclusory assertion that Defendant Officers failed to do so. *Id.*; see *Iqbal*, 556 U.S. at 680. In short, the present case is nothing like *BeVier*.

Plaintiff's reliance on *Llaguno v. Mingey* fares no better. Plaintiff cites that case to suggest that Defendant Officers had a duty to investigate further because the crime was a misdemeanor and posed no likelihood of repetition. ECF Dkt. # 45 at 8. Plaintiff's characterization of that case is misleading, however, because the Court actually stated that while the danger of repetition and the gravity of the crime affect the amount of probable cause an officer may have, probable cause lies in a zone between bare suspicion and virtual certainty, where the more grave the crime, the more latitude the police should be allowed. 763 F.2d 1560, 1565-1566. In other words, the probable cause requirement is relaxed under certain circumstances. Plaintiff suggests the opposite. That an officer must investigate further even after probable cause has been established if the crime is minor and not likely to be repeated. There is no support for this suggestion as it goes against established precedent.[2]

In sum, the Court should dismiss Plaintiff's false arrest claim with prejudice because the Complaint sets forth facts demonstrating that Defendant Officers had probable cause to arrest Plaintiff.

## II. Plaintiff's Unlawful Seizure Claim Fails

In his Response, Plaintiff claims that the Complaint sets forth facts sufficient to state an unlawful seizure claim, Defendants' argument is premature, and the community caretaking doctrine does not apply. ECF Dkt. #45 at 8-10.

---

[2] *See Williamson v. Curran,* 714 F.3d 432, 441 (7th Cir. 2013) (internal citation omitted); *see also Beauchamp v. City of Noblesville, IN., at al,* 320 F.3d 733, 743 (*citing to Hunter v. Bryant,* 502 U.S. 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991); *Neiman v. Keane,* 232 F.3d 577, 580 (7th Cir. 2000)).

To support his claim that the Complaint sets forth facts sufficient to state an unlawful seizure claim, Plaintiff argues that he need not plead with specificity which officers were involved in the seizure of his firearm. *Id.* at 9. To support this argument, Plaintiff relies upon *Gray v. City of Chicago*, 2019 WL 3554239, at *6 (N.D. Ill. Aug. 1, 2019). *Gray* is inapposite to the circumstances at bar. In *Gray,* the plaintiff divided the defendant officers into subgroups and alleged misconduct against said groups. The court reasoned that plaintiff's group pleading, while not ideal, was sufficient because the alleged misconduct was attributable to the group of specifically named officers. *Id.* at *6. This fact scenario is not present in the case at bar. Plaintiff does not allege any personal involvement on behalf of any Defendant Officers in relation to the seizure of his firearm. Instead, Plaintiff attributes this alleged unlawful seizure to "unknown Chicago police officers." ECF Dkt. #37 at ¶ 69. The complaint is completely devoid of any allegations against the Defendant Officers being involved in the seizure of the firearm, which suggests that individuals other than Defendant Officers engaged in the seizure. However, personal involvement in the alleged constitutional violation is a requirement for liability under § 1983. *Alejo v. Heller*, 328 F.3d 930, 936 (7th Cir. 2003). Because Plaintiff fails to allege that Defendant Officers were personally involved in the alleged unlawful seizure, the Court should dismiss this claim.

The Court should dismiss this claim for a second, independent reason – namely, the seizure was reasonable under the community caretaking exception to the warrant requirement. Plaintiff argues that he need not negate an affirmative defense in his complaint. ECF Dkt. 45 at 9. While this is true, a plaintiff may plead himself out of court by pleading facts establishing that he cannot prevail. *Pearman v. Norfolk & Western Ry.*, 939 F.2d 521, 523 (7th Cir.1991); *Stewart v. RCA Corp.*, 790 F.2d 624, 632 (7th Cir.1986); *American Nurses' Ass'n v. Illinois*, 783 F.2d 716, 724 (7th Cir.1986). Plaintiff does exactly that. He pleads that he removed his firearm from his person, placed it in his vehicle, and locked the vehicle. ECF Dkt. #37 at ¶44. As was the situation in *Cady v. Dombrowski*, 413 U.S. 433 (1973),

Plaintiff's firearm was unsecured in a car on the public way that was susceptible to vandals. Plaintiff attempts to distinguish *Cady* by arguing that Plaintiff's vehicle was not disabled or a traffic nuisance. ECF Dkt. 45 at 10. Plaintiff fails to acknowledge that neither of those factors played a part in the Cady Court's analysis with regards to the second search of the trunk. As the Court explained, "the trunk of an automobile, which the officer reasonably believed to contain a gun, was vulnerable to intrusion by vandals." *Cady*, 413 U.S. at 448. It is undisputed that Plaintiff's firearm was unsecured in a vehicle located on the public way and could have been vandalized.

Plaintiff argues that the community caretaking doctrine does not apply because the seizure of the weapon was made for criminal law enforcement purposes. ECF Dkt. 45 at 10. Plaintiff's complaint contains no facts to sustain this conclusory allegation. See *Iqbal*, 556 U.S. at 680. Rather, it contains facts that show the seizure of the firearm was to protect members of the public. Plaintiff left a gun in his car. ECF Dkt. 37 at ¶ 68. The car was in the parking lot. *Id.* at ¶¶ 44, 68. The officers approached the car only after Plaintiff told them that he had a valid FOID card and CCL license and had left his gun in the car. *Id.* at ¶ 68. The officers did not search the car other than to retrieve the firearm. *See id.* at ¶¶69-70. The officers did not remove anything from the car other than the gun. *Id.* at ¶¶ 69, 96-110. Plaintiff was not charged with any crime in connection with his possession of the gun. See *id.* at ¶¶ 96-110. And the officers did not question him about the gun after they retrieved it. See *id.* at ¶¶69-75, 96-110. Even when the facts of the Complaint are taken in a light most favorable to Plaintiff, those facts show that the seizure of the firearm served no purpose other than to secure a firearm that could have been stolen from Plaintiff's vehicle after he was arrested. As such, the Court should dismiss this claim with prejudice.

### III.   Plaintiff's Equal Protection Claim Fails

Plaintiff asks the Court to deny Defendants' motion to dismiss his equal protection claim, arguing that he has set forth facts to eliminate any rational basis for his treatment and that he does not

need to plead a similarly situated person was treated differently because he has set forth facts to show Defendant Officers acted with obvious animus. ECF Dkt. #45 at 10-13.

### A. Plaintiff did not plead obvious animus.

Plaintiff argues that he need not show a comparator because he has plead facts to show obvious animus. *Id.* at 10. The animus alleged in the Complaint is an allegation that officers used the term "gypsy" against Plaintiff. ECF Dkt. #37 at ¶59. Plaintiff does not make this allegation against Defendant Officers. Instead, he attributes the statement to "unknown Chicago police officers." *Id.* As such, Plaintiff has failed to allege that Defendant Officers acted with any animus, let alone obvious animus.

Even if Plaintiff alleged that Defendant Officers called him a "gypsy" (he did not), he has failed to plead facts plausibly showing that Defendant Officers acted with obvious animus. Plaintiff can bypass pleading that a similarly situated individual was treated differently only if he pleads facts showing that he was treated with animus that is readily obvious. *Frederickson v. Landeros*, 943 F.3d 1054, 1062 (7th Cir. 2019). To prove that animus is readily obvious, Plaintiff "needs to show 'a series' of misconduct 'illegitimate on its face.'" *Knaus v. Town of Ledgeview*, 561 F. App'x 510, 515 (7th Cir. 2014). These claims typically manifest themselves in allegations of longstanding patterns of discrimination against the plaintiff by a defendant with either a personal financial stake or some history with the plaintiff. *See Olech v. Village of Willowbrook*, 160 F.3d 386, 387–88 (7th Cir. 1998); *Forseth v. Village of Sussex*, 199 F.3d 363, 371 (7th Cir. 2000); *see also Brunson v. Murray*, 843 F.3d 698, 701–03 (7th Cir. 2016) (campaign of harassment over a liquor store); *Hanes*, 578 F.3d at 492 (long-running dispute between neighbors where, "no matter who initiated the complaint," only Hanes was arrested).

In *Geinosky v. City of Chicago*, 675 F.3d 743 (7th Cir. 2012) the plaintiff endured the issuance of 24 bogus tickets to his vehicle over the course of 14 months by the same Chicago police unit. *Id.* at 745-748. Most of the tickets were inconsistent with each other, going so far as alleging the car was in

10

two different locations at the same time. *Id.* The court reasoned, the "extraordinary pattern of baseless tickets" amounted to a plausible class-of-one claim, particularly since "[r]eason and common sense provide no answer to why he was targeted that could be considered a legitimate exercise of police discretion." *Id.* at 748. In *Swanson v. City of Chetek*, 719 F.3d 780 (7th Cir. 2013)., the defendant, the current elected mayor, used his political position to engage in prolonged harassment against the plaintiff in an attempt to preclude plaintiff from performing home improvements. *Id.* at 783-785.

In the present case, Plaintiff does not allege facts sufficient to show that Defendant Officers acted with obvious animus. This is not a scenario of longstanding extensive harassment against the Plaintiff. All the Complaint really alleges is purported misconduct by unknown officers during a single, isolated arrest. This is not enough. Indeed, judges in this district have routinely declined allowing a class-of-one claim to proceed without an extensive history of harassing conduct. *See Turner v. City of Chicago, Ill.,* 2013 WL 4052607, at *4 (N.D. Ill. Aug. 12, 2013)(Plaintiffs failed to plead class-of-one claim without alleging extensive conduct on behalf of the City); *Jarmuth v. City of Chicago*, 43 F. Supp. 3d 889, 894 (N.D. Ill. 2014)(Denial of single liquor license application not sufficient to show pattern of wrongful conduct).

If Plaintiff's allegations here are held to be sufficient to state an equal protection claim, then a vast number of intentional torts by state actors would also be the basis of such claims. The Seventh Circuit has previously warned against letting such isolated instances proceed under a class-of-one theory. As the court explained:

> Every time an actor commits a tort, he may be treating the victim differently than he frequently treats others, simply because tortious conduct is by nature a departure from some norm. Nonetheless, the purpose of entertaining a "class of one" equal protection claim is not to constitutionalize all tort law nor to transform every claim for improper provision of municipal services or for improper conduct of an investigation in connection with them into a federal case.

*McDonald v. Vill. of Winnetka*, 371 F.3d 992, 1009 (7th Cir. 2004).

11

The reasoning of *McDonald* is persuasive. If Plaintiff's allegations are held to be sufficient, an officer who arrests someone without probable cause or uses excessive force or does anything considered objectionable could be sued for an equal protection violation. Allowing equal protection claims to go forward under circumstances like these would distort the equal protection clause beyond recognition. The Court should decline Plaintiff's invitation to do so.

**B. Plaintiff did not eliminate any rational basis for his treatment.**

Plaintiff claims there was no rational basis for his treatment because there was no probable cause for his arrest. ECF Dkt. 45 at 12-13. To support his claim that there was no probable cause for his arrest, Plaintiff points to his self-serving assertion that "[a] Defendant Officer *told* [Plaintiff] that his prosecution was the result of political pressure, not probable cause." *Id.* at 13.

To start, this is a misrepresentation of what is actually alleged in Plaintiff's Complaint. Plaintiff alleges in his Complaint that an Officer Ortiz, who remains unserved in this matter, told Plaintiff that he believed Plaintiff's story. ECF Dkt. #37 at ¶ 72. As explained in Section I, Plaintiff's self-serving assertion that Officer Ortiz believed he was credible does not mean that Defendant Officers believed he was credible or that a reasonable officer would have believed he was credible, and, even if they did, an officer could believe Plaintiff's explanation yet still conclude that there is probable cause to arrest Plaintiff.

Moreover, the Complaint does not set forth any well-pled facts showing that his arrest was because of political pressure. Even if the Complaint did set forth facts showing that the arrest was because of political pressure, the Complaint also sets forth facts showing that Defendant Officers had probable cause to arrest Plaintiff. As the Seventh Circuit has recognized, "the test for rationality does not ask whether the benign justification was the actual justification. All it takes to defeat the [Plaintiff's claim is a conceivable rational basis for the difference in treatment." *D.B. ex rel. Kurtis B. v. Kopp*, 725 F.3d 681, 686–87 (7th Cir. 2013); see *Srail v. Village of Lisle, Ill.*, 588 F.3d 940, 946-47 (7th Cir.2009)

12

(explaining that "any rational basis will suffice, even one that was not articulated at the time the disparate treatment occurred"); *see also Miller v. City of Monona*, 784 F.3d 1113 (7th Cir. 2015) (denying Plaintiff's equal protection claim even though plaintiff was subject to animus from city officials because the plaintiff's claim failed to exclude a possible rational basis for the defendants' actions); *Williamson v. Curran*, 714 F.3d 432, 449 (7th Cir. 2013) (stating that the presence of probable cause necessarily means that there was a legitimate reason to arrest Plaintiff, thus defeating her Equal Protection claim). Because Plaintiff has failed to eliminate any rational basis for Defendant Officers' actions, the Court should dismiss his equal protection claim with prejudice.

### IV. Plaintiff's Malicious Prosecution Claim Fails

In his Response, Plaintiff argues that Defendant Officers commenced the criminal proceeding without probable cause. ECF Dkt. # 45 at 13.

As an initial matter, Plaintiff does not argue that the evidence supporting probable cause was different at the time charges were filed than at the time Plaintiff was arrested and therefore waives any argument on this point. *Bonte v. U.S. Bank, N.A.,* 624 F.3d 461, 466 (7th Cir. 2010) (citing *United States v. Farris,* 532 F.3d 615, 619 (7th Cir. 2008) ("Farris failed to respond to the Government's argument in a Reply Brief, and accordingly, we find that Farris waived his sufficiency of the evidence challenge[.]")). As explained in Section I, Defendant Officers had probable cause to arrest Plaintiff and thus, the Court should dismiss Count IV with prejudice.

Even if the Court determines that Defendant Officers did not have probable cause to arrest Plaintiff, the Court should still dismiss this claim because Defendant Officers did not commence the criminal proceeding. Plaintiff argues Plaintiff argues that Defendant Officers commenced the criminal proceeding because they "essentially prepared the complaint for Sikanich to sign, while advising him, proximately causing the commencement of the prosecution." ECF Dkt. # 45 at 13. Neither of the cases that Plaintiff cites stand for the proposition that preparing a complaint amounts to the type of

13

active participation needed to play a substantial role in a prosecution for purposes of stating a claim for malicious prosecution. And with good reason. Preparing a criminal complaint is not enough to amount to commencement of a criminal proceeding. *See Payne v. Maher*, No. 11-CV-6623, 2014 WL 7684881 (N.D. Ill. Nov. 14, 2014). If it were, seemingly every police officer would be subject to a claim of malicious prosecution. Simply put, Plaintiff has failed to plead that Defendant Officers commenced or continued Plaintiff's prosecution. *See Logan v. Caterpillar, Inc.,* 246 F.3d 912, 922 (7th Cir. 2001) (criminal proceedings commenced by filing a complaint, indictment, or information); *Beaman v. Freesmeyer*, 2019 IL 122654, 131 N.E.3d 488, 499 (Ill. S.Ct. 2019) (significant role in causing the prosecution or the proximate cause of charging criminally). As such, the Court should dismiss Count IV for this reason as well.

### V. Plaintiff's Conspiracy Claim Fails

Plaintiff argues in his Response that the following allegations from his Complaint are sufficient to state a conspiracy claim: "each of the Defendant co-conspirators committed overt acts, such as approving probable cause, dictating the complaint, swearing the complaint, and taking other actions…." ECF Dkt. #45 at 15. He is wrong.

Identifying and establishing the *actual agreement* between the parties is *necessary*. *Borsellino v. Goldman Sachs Grp., Inc.,* 477 F.3d 502, 509 (7th Cir. 2007) (*citing to McClure v. Owens Corning Fiberglass Corp.,* 188 Ill.2d 102, 241 Ill. Dec. 787, 720 N.E.2d 242, 258 (1999)) (emphasis added). While a conspiracy claim may be inferred where the agreement is pled generally, the facts regarding the overt actions in furthering the conspiracy must be plead specifically. *Quinones v. Szorc,* 771 F.2d 289, 291 (7th Cir. 1985). Conspiracy allegations are held to a higher standard; as such, allegations should not be bare allegations of conspiracy, nor mere suspicions that individuals who are adverse to plaintiff jointly conspired against him. *See Cooney v. Rossiter,* 583 F.3d 967, 971 (7th Cir. 2009). As such, Plaintiff's

conspiracy claim fails because it is insufficiently pled and because he failed to state an underlying claim for malicious prosecution.

## VI. Plaintiff's Indemnification Claim Cannot Stand

As explained above, Plaintiff has failed to state a viable claim. Thus, Plaintiff's indemnification claim cannot stand.

## CONCLUSION

**WHEREFORE**, for the foregoing reasons, Defendants respectfully request that this Honorable Court grant their Motion in its entirety and dismiss Plaintiff's claims with prejudice, and for any other relief the Court deems appropriate.

                                                  Respectfully submitted,

                                                  */s/ Nicholas Perrone*
                                                  Nicholas Perrone
                                                  Assistant Corporation Counsel
                                                  On behalf of Defendants Corona and Ing


                                                */s/Emily R. Bammel*
                                                  Emily R. Bammel
                                                  Assistant Corporation Counsel
                                                  On behalf of Defendants Palka, Smith, Bilos, and Ferrara


                                                CELIA MEZA
                                                Acting Corporation Counsel for the City of Chicago

BY:    */s/Joi Kamper*
           Assistant Corporation Counsel Supervisor
           On behalf of Defendant City of Chicago

Jennifer K. Bagby, Chief Assistant Corporation Counsel
Jordan Yurchich, Assistant Corporation Counsel
Nicholas Perrone, Assistant Corporation Counsel
City of Chicago, Department of Law
2 N. LaSalle Street, Suite 420
Chicago, Illinois 60602
(312) 744-1975

Nicholas.Perrone@cityofchicago.org
**Attorneys for Defendants Corona and Ing**

Gregory Beck, Assistant Corporation Counsel Supervisor
Emily Bammel, Assistant Corporation Counsel
2 N. LaSalle Street, Suite 420
Chicago, Illinois 60602
(312) 744-3982
Emily.Bammel3@CityofChicago.org
**Attorneys for Defendants Palka, Smith, Bilos, Ferrara**

Caroline Fronczak, Deputy Corporation Counsel
Joi Kamper, Assistant Corporation Counsel Supervisor
Nicholas Peluso, Assistant Corporation Counsel
City of Chicago, Department of Law
2 N. LaSalle Street, Suite 420
Chicago, Illinois 60602
T: (312) 744-0226
Joi.Kamper@cityofchicago.org
**Attorneys for Defendant City of Chicago**

## CERTIFICATE OF SERVICE

I hereby certify that on May 21, 2021, I served a copy of **DEFENDANTS' JOINT REPLY IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT** upon all parties via their attorneys of record by causing it to be filed by the CM/ECF system.

                                                  */s/Emily R. Bammel*
                                                  Emily R. Bammel