# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

BENJAMIN GEORGE,          )
                           )
          Plaintiff,     )
                           )     Case No. 1:20-cv-06911
      v.                 )
                           )     Judge John Robert Blakey
CITY OF CHICAGO, *et al.*,     )
                           )
          Defendants.   )

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Benjamin George sues the City of Chicago; Department of Streets and Sanitation Ward Superintendent Charles Sikanich; Alderman James Gardiner; Chicago Police Officers Solomon Ing, Peter Palka, Joseph Ferrara, Sergio Corona, and Ortiz; Detectives Daniel Smith and "Bilos"; and unknown Chicago Police Officers in connection with his arrest and prosecution in August of 2019. *See* [37]. Plaintiff alleges three claims under 42 U.S.C. § 1983 for violation of his rights under the Fourth Amendment (Count I), the Equal Protection Clause (Count II), and the Due Process Clause (Count III); he also alleges state law claims for malicious prosecution (Count IV) and conspiracy (Count V), and he sues the City of Chicago for indemnification (Count VI). *Id.* The City and Defendants Ing, Palka, Ferrara, Corona, Smith, and Bilos[1] jointly move to dismiss all counts asserted against them

---

[1]Defendant Ortiz has not answered or appeared. But the record fails to show that Plaintiff has properly served this defendant in accordance with Rule 4. Although the docket shows a return of service for Ortiz, *see* [13], the summons was served via the "summons desk" and includes no first name, star number, or any other identifying information for this defendant, who has an unquestionably common surname. It appears Plaintiff has made no additional efforts to identify and serve Ortiz or any of the unknown police officers, and the time for service passed months ago. *See* Fed. R. Civ. P. 4(m). As a result, the Court dismisses the case without prejudice as to Ortiz and any unknown defendants.

(Counts I, II, IV, and V), [40], and the City separately moves to dismiss the indemnification Count, [41]. Defendants Gardiner and Sikanich also move to dismiss all Counts asserted against them (Counts I through V), [42]. For the reasons stated below, this Court denies all three motions.

## I.   FACTUAL BACKGROUND

### A.   The Complaint's Allegations

This case arises out of events and interactions that took place on August 19 and 20, 2019. [37] at ¶ 15. At that time, Plaintiff lived in Chicago and owned and operated a construction and repair company. *Id.* ¶ 14. Defendants Ing, Palka, Smith, Bilos, Ferrara, and Corona served as Chicago police officers employed by Defendant City of Chicago. *Id.* ¶ 10. Defendant Sikanich worked as the Department of Streets and Sanitation Superintendent for the 45th Ward. *Id.* ¶ 8. Defendant Gardiner served as the Alderman of the 45th Ward in the City of Chicago. *Id.* ¶ 9.

On the morning of August 19th, Plaintiff entered a busy 7-11 store with his employee. *Id.* ¶ 15. At the check-out counter, Plaintiff discovered and picked up a misplaced cell phone. *Id.* ¶ 16. Plaintiff did not know then, but later learned, that the phone belonged to Sikanich; Plaintiff could not immediately identify the owner, as the phone was locked, with no incoming texts or calls appearing on the screen. *Id.* ¶ 17. Plaintiff intended to bring the phone to the 16th District police station at the end of his workday. *Id.* ¶ 19. As he drove to the police station with his employee after work, Plaintiff received a phone call for emergency service at a customer's home, and he diverted from the station to attend to that call. *Id.* ¶¶ 25–26.

Elsewhere, and at an unknown point that same day, Sikanich realized he did not have his phone and informed Gardiner. *Id.* ¶ 21. At Gardiner's insistence, he reported the phone as stolen instead of lost. *Id.* ¶ 23.

After handling the emergency service request, Plaintiff was again en route to the police station when he received a phone call from his roommate, who explained that Officers Ing, Corona, and perhaps another who identified himself as Officer Ortiz, had come by to ask about a missing phone that "belonged to someone important." *Id.* ¶ 26. Plaintiff spoke with Ortiz, explained that he was on his way to the police station, and asked if he should instead bring the phone to the officers; Ortiz told Plaintiff to bring the phone to the police station. *Id.* ¶ 27.

Once the police officers left, Plaintiff's roommate noticed Sikanich driving a City of Chicago truck up and down the street in front of the house. *Id.* ¶ 28. Then Gardiner arrived at the house, immediately asked the roommate if he was a firefighter, and then asked to use the roommate's phone to call Plaintiff. *Id.* ¶¶ 29, 31. On the phone, Gardiner accused Plaintiff of stealing Sikanich's phone, using profane, accusatory, and inflammatory language. *Id.* ¶ 32. After hanging up, Gardiner asked the roommate, "Why do you let a piece of shit like that live in your home?" *Id.* ¶ 34. He then called out to Sikanich to "have him [GEORGE] locked up!" *Id.* ¶ 35. Sikanich continued circling the block in his City of Chicago truck for 20 minutes before he left. *Id.* ¶ 36.

When Plaintiff arrived at the police station with his employee ten minutes after his phone call with Gardiner, he removed his licensed firearm from his holster

and left it in his vehicle. *Id.* ¶¶ 41–42, 44. Plaintiff possessed a valid Firearm Owners Identification ("FOID") card and Concealed Carry License ("CCL") at the time of his arrest and had been carrying the gun with him at the job site that day. *Id.* ¶ 43. Plaintiff went inside to look for a desk-sergeant with whom he had an existing relationship. *Id.* ¶ 45. After failing to find the desk-sergeant and noticing that the individual at the front desk appeared busy, Plaintiff walked outside to call his roommate, hoping to speak with the police officers again. *Id.* ¶ 46. At this time, an unknown police officer asked Plaintiff if he needed help; Plaintiff explained the situation, returned the lost cell phone to the unknown police officer, and voluntarily went inside the police station to wait. *Id.* ¶¶ 47–49.

As he waited, unknown Chicago police officers seized and detained Plaintiff. *Id.* ¶ 50. Sikanich, Palka, Ortiz, and other unnamed officers soon arrived at the police station and proceeded to a back room with Detectives Smith and Bilos. *Id.* ¶ 51. Sikanich, knowing Plaintiff had already returned the phone, drafted and/or made sworn accusations for a criminal complaint against Plaintiff and Defendant officers proceeded to arrest him for theft of lost or mislaid property under 720 ILCS 5/16-2. *Id.* ¶¶ 52, 56. Defendant Officers oversaw the execution of the criminal complaint. *Id.* ¶ 57. The language used in the criminal complaint matched the statutory language of the offense almost verbatim. *Id.* ¶ 53. Ferrara, the supervising officer, approved the probable cause for the arrest. *Id.* ¶ 58.

While George was in custody, unknown police officers (and possibly Sikanich) began taunting Plaintiff, calling him a "gypsy" and threatening to charge him with a

felony. *Id.* ¶ 59. The police officers formally arrested Plaintiff around 6:00 p.m. on the 19th. In so doing, they searched him and, after discovering the empty holster on his belt searched his car while holding his employee at gunpoint. *Id.* ¶¶ 60, 67, 69–71. During his arrest, Plaintiff explained the circumstances surrounding Sikanich's phone and also asked for legal representation. *Id.* ¶¶ 62–63. The police officers told him to "shut up." *Id.* The police officers did not inform him of the actual charge against him, and Plaintiff does not recall being read his *Miranda* Rights. *Id.* ¶¶ 64–65. Plaintiff was released from custody at approximately 9:00 p.m. the following night, August 20th. *Id.* ¶ 71. At least as of March 12, 2021, Plaintiff's gun had yet to be returned to him. *Id.* ¶ 69.

With Plaintiff in custody, Sikanich returned to Plaintiff's home. *Id.* ¶ 37. There, Sikanich informed the roommate about the arrest and the gun. *Id.* ¶ 37 ("The cops arrested your friend and he had a big gun on him."). Sikanich then asked Plaintiff's roommate, "did you know you had a gypsy living in your basement?" *Id.*

Plaintiff was charged with theft of lost or mislaid property, in violation of 720ILCS 5/16-2. *Id.* ¶ 73. His case was "stricken off the criminal call" on September 5, 2019, because the police witnesses failed to appear for court; his case was terminated 160 days later when prosecutors could no longer reinstate the charge. *Id.* ¶¶ 74, 76. Nevertheless, Plaintiff alleges, as result of Defendants' conduct, Plaintiff lost his housing arrangements (his roommate kicked him out) and business income; his mental state deteriorated, and he was hospitalized for several days; he suffered damage to his reputation and relationships. *Id.* ¶¶ 39, 77–79, 81, 83. Faced with a

rapidly worsening state of affairs, Plaintiff decided to move away from Chicago. *Id.* ¶ 88.

Plaintiff alleges that he was not the first victim of Gardiner and Sikanich's abuse of power. Gardiner had previously coordinated and participated in police actions in his ward and police officers had distributed literature on Gardiner's behalf. *Id.* ¶ 92. In 2014, Sikanich impersonated a police officer. *Id.* ¶ 90. In 2019, Sikanich coordinated with an employee from another ward to target a critic of Alderman Gardiner's office by issuing him a ticket for overgrown weeds. *Id.* ¶ 93. Also in 2019, Sikanich and Gardiner obtained the criminal history of another critic and published the information via text messages. *Id.* ¶ 94. Lastly, in 2020, Sikanich made sworn accusations in a false petition for an emergency order of protection against a former coworker, which was later dismissed. *Id.* ¶ 91.

### B.    Procedural History

Plaintiff initiated this lawsuit on November 20, 2020. [1]. Following Defendants' initial motions to dismiss, Plaintiff elected to amend his complaint, and he filed the operative complaint [37] on March 12, 2021. Plaintiff alleges: (1) false arrest and unlawful seizure against all individual Defendants (Count I); (2) an Equal Protection Class of One claim against all individual Defendants (Count II); (3) a due process claim against Defendants Sikanich and Gardiner (Count III); and (4) malicious prosecution and conspiracy to commit malicious prosecution against all individual Defendants (Counts IV and V); Plaintiff also includes an indemnification

claim against the City (Count VI). *Id.* Defendants move to dismiss all claims under Federal Rule of Civil Procedure 12(b)(6). [40];[41];[42].

## II.   LEGAL STANDARD

Although a complaint need not contain "detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), to survive a motion to dismiss under Rule 12(b)(6), it must assert "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. To provide a defendant with "fair notice of what the . . . claim is and the grounds upon which it rests," *id.* at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In evaluating the complaint under Rule 12(b)(6), courts accept all well-pled facts as true and construe all reasonable inferences in the non-moving party's favor. *Kubiak v. City of Chi.*, 810 F.3d 476, 480–81 (7th Cir. 2016). Courts need not accept "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 839 (7th Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). Lastly, the plaintiff's complaint need not attempt to address or defuse potential defenses. *Doe v. Smith*, 429 F. 3d 706, 709 (7th Cir. 2005).

## III.   DISCUSSION & ANALYSIS

Defendants filed three separate motions to dismiss. The City, Bilos, Corona, Ferrara, Ing, Palka, and Smith (the Police Officer Defendants) move to dismiss Counts I through V under Rule 12(b)(6), *see* [40]; Defendants Gardiner and Sikanich

separately move to dismiss Counts I through V, *see* [42]; and the City separately moves to dismiss the indemnification claim, Count VI, *see* [41]. The Court considers the Defendants' arguments as to each claim below.

### A.    Plaintiff's § 1983 Claims (Counts I, II, and III)

Plaintiff brings three claims under 42 U.S.C. § 1983: he asserts false arrest and unlawful seizure in violation of the Fourth Amendment, as well as equal protection and due process violations. A claim under § 1983 must satisfy two "essential elements": first, the challenged conduct must have been "committed by a person acting under color of state law;" and, second, the state actor's conduct must have deprived the plaintiff of "rights, privileges, or immunities secured by the Constitution" or federal law. *DiDonato v. Panatera*, 24 F.4th 1156, 1157 (7th Cir. 2022) (citations omitted).

### 1.    Preliminary Matters

As a preliminary matter, the Court considers whether Plaintiff's § 1983 claims against Defendants Gardiner and Sikanich fail because he fails to allege that these Defendants acted under color of law. [42] at 1.

To plead that a defendant "acted under color of state law, a § 1983 plaintiff must allege that a defendant's invocation of state authority in one way or another facilitated or enabled the alleged misconduct." *DiDonato*, 24 F.4th at 1158. The "traditional understanding of what it means for an official to act 'under color of state law' encompasses misconduct by officials exercising power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority

of state law.'" *Id.* at \*2 (quoting *West v. Atkins*, 487 U.S. 42, 49 (1988)). Indeed, it is "'firmly established' that a § 1983 defendant acts 'under color of state law when he abuses the position given to him by the State.'" *Id.* (quoting *West*, 487 U.S. at 49–50).

This is precisely what Plaintiff alleges. Although the alleged misconduct falls squarely outside the scope of Defendant Sikanich and Gardiner's official duties, they can nonetheless incur liability under § 1983 because they cloaked themselves in their authority to commit the alleged misconduct.

In *Lopez v. Vanderwater*, the Seventh Circuit held that a state court judge acted under color of law when he attempted to prosecute a criminal case on his own against a tenant living on his property. 620 F.2d 1229, 1231 (7th Cir. 1980). Although the defendant's actions fell outside the scope of his judicial role, in taking such actions, the defendant had "cloaked" himself in his office and "with official power"; he purported himself to be "acting under color of official right," and, as a result, his actions constituted "state action" even if they exceeded the authority state law actually delegated to him. *Lopez*, 620 F.2d at 1236 (citing *Screws v. United States*, 325 U.S. 91, 111 (1945)).

So too, here. Plaintiff alleges that Gardiner, the Alderman, and Sikanich, the Ward Superintendent, used "the imprimatur of city authority and office to act as de facto vigilante police officers," [37] at ¶ 114; that Sikanich drove back and forth in front of Plaintiff's residence in a marked City of Chicago vehicle to intimidate Plaintiff's landlord, *id.* ¶¶ 28, 36–37; that Gardiner instructed Sikanich to have Plaintiff locked up, *id.* ¶¶ 35, 116; that Sikanich accessed the police station as if he

were in charge, *id.* ¶ 51; and that the Police Officer Defendants arrested Plaintiff and processed him for theft, not because they had probable cause to do so, but because Sikanich and Gardiner, who had "power," told them to do so, *id.* ¶¶ 60, 72. Plaintiff's allegations demonstrate at this preliminary stage that Gardiner and Sikanich cloaked themselves with city authority by pressuring police officers to falsely arrest Plaintiff in a way that everyday citizens could not do.

Moreover, even if Sikanich and Gardiner did not act in their official capacities as an alderman and superintendent, private persons may nevertheless act under color of law when they voluntarily and jointly engage with state officials in the denial of civil rights. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 152 (1970). If, as Plaintiff alleges, Sikanich and Gardiner conspired with the police officers to falsely arrest and maliciously prosecute Plaintiff, they may be found to have acted under color of law. For these reasons, the Court declines to dismiss Plaintiff's claims on this basis.

The Court also considers whether Defendants Sikanich and Gardiner may properly adopt the arguments asserted by the City and the Police Officer Defendants in their motion to dismiss. *See* [42] at 14. Plaintiff argues that Defendants' adoption of other arguments constitutes an end run around this Court's rules limiting briefs to 15 pages, and he urges the Court to find that Defendants waived any arguments not specifically raised in their motion. In urging this Court to find waiver, Plaintiff relies upon *Miller UK Ltd. v. Caterpillar*, where the judge barred a defendant from incorporating a Rule 37 report on relevance into its brief because that would have increased the volume of material the court had to review by 8 pages. 292 F.R.D. 590,

592 (N.D. Ill. 2013). Here, in contrast, Gardiner and Sikanich's briefing eliminates redundancy and does not increase the total number of pages for this Court to consider. Accordingly, the Court declines to find waiver and finds that the Court's analysis below applies with equal force (where appropriate) to all of the individual Defendants.

### 2. Plaintiff's Count I False Arrest Claim

In Count I, Plaintiff attempts to hold all individual Defendants liable for false arrest under 42 U.S.C. § 1983. To prevail on a false arrest claim, a plaintiff must show that the police lacked probable cause to arrest. *Neita v. City of Chi.*, 830 F. 3d 494, 497 (7th Cir. 2016). This Court examines probable cause based on the facts and circumstances known to police officers at the time of the arrest. *Id.* The information must be "sufficient to warrant a prudent person, or one of reasonable caution, in believing" that the suspect "has committed, is committing, or is about to commit an offense." *Id.* A police officer may rely on a credible eyewitness' statement to supply probable cause, but where the facts and circumstances would render a reasonable officer suspicious, police officers have a duty to investigate beyond the initial statement. *Askew v. City of Chi.*, 440 F.3d 894, 985 (7th Cir. 2006). Nevertheless, the eyewitness' complaint need not be true for probable cause to exist. *Williamson v. Curran*, 714 F.3d 432, 441 (7th Cir. 2013).

Determination of probable cause depends upon the elements of the underlying criminal offense. *Stokes v. Bd. of Educ.*, 599 F.3d 617, 622 (7th Cir. 2010). Here, based on a criminal complaint submitted by Defendant Sikanich, the Defendant Police Officers arrested Plaintiff for theft of lost or mislaid property in violation of

720 ILCS 5/16-2. The statute provides that a person commits the offense of theft of lost or mislaid property when he: (1) knows or learns the identity of the owner or knows, or is aware of, or learns of a reasonable method of identifying the owner; (2) fails to take reasonable measures to restore the property to the owner; and (3) intends to deprive the owner permanently of the use or benefit of the property.

In moving to dismiss, the Police Officer Defendants and the City argue that Plaintiff's allegations demonstrate the officers had probable cause to arrest Plaintiff for theft of lost or mislaid property. Not so. On the contrary, Plaintiff alleges that, at the time of his arrest, he had already returned Sikanich's phone, [37] at ¶¶ 49–50, 52, 55–56, 58, 62; he also alleges that at least one of the officers learned and believed Plaintiff's version of events, but then still arrested Plaintiff, not because he possessed probable cause, but because he was afraid of professional repercussions from Sikanich, who insisted the officers arrest Plaintiff anyway, *id.* ¶¶ 72, 99, 103.

Defendants argue that the first time Plaintiff informed the police that he had the cellphone and would return it was after he learned that police officers were at his home asking about the cellphone. [40] at 5. But Plaintiff also alleges that he told Gardiner, while Gardiner was at Plaintiff's house, that he was already on his way to the police station to return the phone he found, and that Gardiner told him to proceed to the station. [37] at ¶¶ 31–33. It is true that Sikanich drafted and/or made a sworn accusation for the criminal complaint against Plaintiff, but Plaintiff has alleged sufficient facts demonstrating that the officers should have been suspicious of that conclusory complaint, and even a cursory investigation (accepting Plaintiff's

12

allegations as true) would quickly have revealed that Plaintiff had in fact taken reasonable measures to restore the property to its owner, and in fact had no intent to deprive the owner permanently of the use or benefit of the property.[2]

### 3. Plaintiff's Count I Unlawful Seizure Claim

In addition to alleging false arrest in Count I, Plaintiff also alleges that the individual Defendants unlawfully seized his firearm from his vehicle. The Police Officer Defendants and the City seek dismissal based upon (1) Plaintiff's failure to name a particular defendant with respect to this conduct; and (2) the community caretaking doctrine. With respect to the City's and Police Officer Defendants' second argument, the community caretaking doctrine, Defendants contend that because Plaintiff left his vehicle parked in an unsecured parking lot, the firearm inside was

---

[2] Plaintiffs' allegations often lump the Police Officer Defendants together. Take, for example, his allegations regarding the criminal complaint and arrest. Plaintiff alleges that the "Defendant Officers" oversaw the preparation and execution of the criminal complaint and that the "Defendant Officers" arrested Plaintiff, [37] at ¶¶ 53, 57, 60. These amalgamate allegations are problematic given that ultimately Plaintiff will have to prove that each individual Defendant was personally involved in the deprivation of his rights. *See, e.g.*, *Grieveson v. Anderson*, 538 F.3d 763, 776 (7th Cir. 2008) ("A plaintiff bringing a civil rights action must prove that the defendant personally participated in or caused the unconstitutional actions."); *Alejo v. Heller*, 328 F.3d 930, 936 (7th Cir. 2003) (to win on his claim, Plaintiff must prove that each named Defendant personally participated in or caused the unconstitutional actions). But Plaintiff also alleges that Officer Ferrara approved probable cause even though the record undermined it (including the Plaintiff's actions to voluntarily return the phone he found on his own accord), [37] at ¶ 58; Officers Ing and Corona were identified on the report as the arresting officers, *id.* ¶ 61; and Officers Palka, Smith, and Bilos were in the back room with Sikanich while the police detained Plaintiff and emerged with a sworn complaint using statutory language suggesting coaching, *id.* ¶¶51–53. At this early stage, such minimal individualized allegations barely pass muster, but still suffice given the record as a whole. *E.g.*, *Robles v. City of Chicago*, 354 F. Supp. 3d 873, 875 (N.D. Ill. 2019) ("group pleading does not violate Fed. R. Civ. P. 8 so long as the complaint provides sufficient detail to put the defendants on notice of the claims"); *Vandenburgh v. Bannockburn Police Officer Robert Ogden*, No. 15 C 6191, 2016 WL 403663, at *5 (N.D. Ill. Feb. 3, 2016) (Rule 8(a) "is not so rigid that it requires a plaintiff, without the benefit of discovery, to connect every single alleged instance of misconduct in the complaint to every single specific officer.").

vulnerable to theft and a threat to the safety of the community, thereby justifying any seizure. The Court rejects both arguments.

Initially, it is true that Plaintiff must eventually identify and name a specific defendant, as "an individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation." *Jenkins v. Keating*, 147 F.3d 577, 583 (7th Cir. 1998) (citing *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (1983)). But because the police officers work as a member of a "collective body," proper identification often requires pretrial discovery, making dismissal at this early stage improper. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Nor does the community caretaking doctrine preclude Plaintiff's claim at this stage. The doctrine provides an exception to the Fourth Amendment's warrant or probable cause requirement; it exempts police officers who engage in searches and seizures for the protection of the community, rather than for criminal law enforcement purposes. *Sutterfield v. City of Milwaukee*, 751 F.3d 542, 553–54 (7th Cir. 2014). But the doctrine provides an affirmative defense, not an absolute bar to recovery; because Plaintiff need not plead around an affirmative defense, dismissal at this time is improper. *Leavell v. Kieffer*, 189 F.3d 492, 494 (7th Cir. 1999).

### 4. Plaintiff's Equal Protection Claim

In Count II, Plaintiff alleges that the individual Defendants violated the Fourteenth Amendment's Equal Protection Clause when they acted arbitrarily, irrationally, and with personal animus during the course of his arrest and prosecution. Plaintiff alleges that Defendants "intentionally treated [him] differently

14

than similarly situated individuals," departed from common practice, and "acted with animus," and "with discriminatory motive with no rational basis for doing so." [37] at ¶ 118.

To state a class-of-one equal protection claim, an individual must "allege that he was 'intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Swanson v. City of Chetek*, 719 F.3d 780, 783 (7th Cir. 2013) (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). The "classic" class-of-one claim involves allegations that "a public official, 'with no conceivable basis for his action other than spite or some other improper motive" comes down hard on "a hapless private citizen.'" *Id.* at 784 (citing *Lauth v. McCollum*, 424 F.3d 631, 633 (7th Cir. 2005)). This is precisely what Plaintiff alleges here: he alleges that Gardiner and Sikanich targeted him for abuse and arrest for no reason other than possibly spite or discrimination.

Ordinarily, the defendants' alleged "improper motive" remains "covert, so courts first look to eliminate all proper motives. If there was no rational basis for the treatment of the plaintiff, then the motives must be irrational and improper." *Id.* (citing *Vill. of Willowbrook*, 528 U.S. at 564–65). If "animus is readily obvious, it seems redundant to require that the plaintiff show disparate treatment in a near exact, one-to-one comparison to another individual." *Id.* (citations omitted). Thus, in *Swanson*, where the city's mayor harassed his residential neighbor for constructing a fence on his property and eventually arranged an illegitimate and malicious prosecution, the Seventh Circuit reversed an award of summary judgment in

defendant's favor based upon plaintiff's failure to offer evidence of similarly situated individuals. 719 F. 3d at 785. Similarly, in *Gienosky v. City of Chicago*, where the defendant police officers issued plaintiff 24 bogus parking tickets over the course of 14 months, the Seventh Circuit reversed the dismissal of plaintiff's equal protection claim. 675 F.3d 743, 748–49 (7th Cir. 2012). In doing so, the court held that "the pattern and nature of defendants' alleged conduct do the work of demonstrating the officers' improper discriminatory purpose" and that a general allegation that defendants "intentionally treated plaintiff differently than others similarly situated" suffices "where the alleged facts so clearly suggest harassment by public officials that has no conceivable legitimate purpose." *Id.* at 748.

The same reasoning applies here. Like Gienosky, Plaintiff here does not know why Defendants targeted him for harassment, and for present purposes, this Court need not puzzle over the issue. Plaintiff alleges that he found a cell phone, returned it to the police station, and was nonetheless held, harassed, berated, arrested, charged, and deprived of his property. The facts as alleged, as in *Swanson* and *Gienosky*, demonstrate that Defendants' conduct could have had no conceivable legitimate purpose or rational basis. The Court denies Defendants' motion to dismiss Count II.

## 5. Plaintiff's Due Process Claim (Count III)

In Count III, Plaintiff alleges that Sikanich and Gardiner violated the Fourteenth Amendment because they operated in their roles as state actors to deprive him of his right to freedom from unreasonable seizure, false arrest and baseless

prosecution, freedom from arbitrary government action, freedom from interference with business relationships, right to bear arms, and other liberty interests. Plaintiff alleges that Gardiner and Sikanich instigated a false police investigation that caused police officers to seize Plaintiff, search his person and vehicle, and arrest him without probable cause. Plaintiff also alleges that Sikanich prepared a false criminal complaint that he knew prosecutors would use to pursue criminal charges. Defendants Sikanich and Gardiner argue that Count III should be dismissed because Plaintiff does not allege a "conscience-shocking" intentional or reckless tort.

For a state action to shock the conscience, it must be part of egregious official conduct. *Jackson v. Indian Prairie Sch. Dist. 204*, 653 F.3d 647, 654 (7th Cir. 2011). Mere negligence does not shock the conscience, *King v. E. St. Louis Sch. Dist. 189*, 496 F.3d 812, 819 (7th Cir. 2007); the relevant conduct must fall "towards the more culpable end of the tort law spectrum." *Jackson*, 653 F. 3d at 655. There exists no precise measurement or fixed elements for identifying when a state action has shocked the conscience. *Id.*; *Armstrong v. Squadrito*, 152 F.3d 564, 570 (7th Cir. 1998). The Supreme Court has explained that to satisfy the "shock the conscience standard," state conduct must have "intended to injure in some way unjustifiable by any government interest." *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1906 (2018) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 849–50 (1998)). For example, in *Lewis*, the Court found that the defendant police officer was not liable for the injuries the plaintiff sustained as a result of a police chase because that officer had no intent to harm the plaintiff. *Lewis*, 523 U.S. at 854.

17

Because Plaintiff alleges that Defendants harassed his roommate, drove around his neighborhood in an attempt to intimidate, made a sworn accusation for a false criminal complaint, and politically pressured officers to prosecute him without probable cause, his claim survives. In sum, there remains enough detail in the allegations for a reasonable juror to find that Sikanich's misconduct, if true, shocked the conscience. Although Gardiner argues that Plaintiff has not alleged sufficient facts to show he personally injured any of Plaintiff's liberty interests, he may still remain liable if, as alleged, he used his political power to pressure police officers to do so. This Court denies Sikanich's and Gardiner's motion to dismiss Count III.

### B.     Plaintiff's Malicious Prosecution Claim

In Count IV, Plaintiff alleges that the individual Defendants maliciously commenced and continued prosecution on false charges with no probable cause. Plaintiff alleges that the Defendant Police Officers dictated the criminal complaint for Sikanich to sign, even though they knew Plaintiff had not committed the charged offense. All of the individual Defendants move to dismiss this claim.

The Police Officer Defendants argue that Count IV must be dismissed, because they did not commence or continue the criminal prosecution; rather, Sikanich initiated the criminal proceeding against Plaintiff by swearing out the complaint. Defendants also argue that they had probable cause to arrest Plaintiff, which undermines any malicious prosecution claim.

To hold Defendants liable for malicious prosecution under Illinois law, Plaintiff must allege: (1) commencement of criminal proceedings by Defendants;

(2) termination of that matter in Plaintiff's favor; (3) the absence of probable cause for the proceedings; (4) the presence of malice; and (5) resulting damages. *Williams v. City of Chi.*, 733 F.3d 749, 759 (7th Cir. 2013). In Illinois, a person commences criminal proceedings "by filing a complaint, indictment, or an information." *Logan v. Caterpillar, Inc.*, 246 F.3d 912, 922 (7th Cir. 2001) (citing 725 ILCS 5/111-1). To have commenced or continued to commence a criminal proceeding, a defendant "must have initiated the criminal proceeding" or "'his participation in it must have been of so active and positive a character as to amount to advice and cooperation." *Id.* (quoting *Denton v. Allstate Ins. Co.*, 152 Ill. App. 3d 578, 583 (1986)).

Although Plaintiff does allege that Sikanich made a sworn accusation and/or drafted a criminal complaint that led to Plaintiff's arrest, [37] at ¶ 52, he also alleges that the Police Officer Defendants "dictated a criminal complaint for Sikanich to sign," *id.* ¶¶ 138, 53, and "oversaw the preparation and execution of the criminal complaint, *id.* ¶ 57. He alleges, in short, that the Defendant Officers actively participated in the commencement of the criminal proceedings.

The Police Officer Defendants contend that, if anyone could be liable for malicious prosecution, it would be Sikanich because he provided the officers with false information, which made it impossible for them to exercise their independent discretion. The Officer Defendants argue that, but for Sikanich's false information, they would never have arrested Plaintiff. To be sure, if the police officers had probable cause to arrest Plaintiff, his malicious prosecution claim against them would

fail. *Martin v. Marinez*, 934 F.3d 594, 599 (7th Cir. 2019). But, as discussed above, the allegations indicate that they lacked probable cause. And as long as that question remains, dismissal of the malicious prosecution claim on this basis is improper at this early stage of the case.

As for Gardiner and Sikanich, liability exists for a private citizen "if the plaintiff can demonstrate that the defendant: (1) instituted the proceedings against the plaintiff; (2) knowingly made false statements to the police; or (3) requested, directed, or pressured the officer into swearing out the complaint for the plaintiff's arrest." *Logan,* 246 F.3d at 922. Plaintiff alleges that Sikanich initiated the complaint, but he also alleges that Gardiner gave the initial order to have Plaintiff arrested. [37] at ¶ 35. From such facts, a reasonable jury could find that Gardiner's participation in this incident was "so active" that it amounted to "advice and cooperation." *Logan*, 246 F.3d at 922. Accordingly, this Court declines to dismiss Count IV.

### C. Plaintiff's Conspiracy Claim

In Count V, Plaintiff alleges that the Police Officer Defendants, Gardiner, and Sikanich conspired to commit malicious prosecution because each Defendant committed overt acts in furtherance of the conspiracy.

Defendants first argue that the claim should be dismissed because Plaintiff has failed to plead an underlying state law tort claim. As discussed above, the Court disagrees: at this stage, Plaintiff has stated a viable claim for malicious prosecution.

Defendants also argue that Plaintiff's allegations fail to state a claim for conspiracy. To succeed on a state law claim of civil conspiracy, Plaintiff must establish: "(1) an agreement between two or more persons for the purpose of accomplishing either an unlawful purpose or a lawful purpose by unlawful means; and (2) at least one tortious act by one of the coconspirators in furtherance of the agreement that caused an injury to the plaintiff." *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 509 (7th Cir. 2007). As discussed above, Plaintiff has pled a claim for malicious prosecution, satisfying the second element.

Concerning the first element, to state a valid conspiracy claim, Plaintiff must plead more than a bare allegation; he must indicate that an agreement took place. *Ryan v. Mary Immaculate Queen Ctr.,* 188 F.3d 857, 860 (7th Cir. 1999). For example, in *Ryan v Mary*, the plaintiff alleged only that: (1) a defendant conspired with others; and (2) the defendant conducted a search of that plaintiff two days after the agreement. The court in that case held that the plaintiff had not alleged sufficient facts to support a conspiracy claim. *Id.* at 859.

Plaintiff cites *Walker v. Thompson* for the proposition that "it is enough in pleading a conspiracy merely to indicate the parties, general purpose, and approximate date, so that the defendant has notice of what he is charged with." 288 F.3d 1005, 1007 (7th Cir. 2002). This rule acknowledges that "conspiracies are often carried out clandestinely and direct evidence is rarely available." *Beaman v. Freesmeyer*, 776 F.3d 500, 511 (7th Cir. 2015). Circumstantial evidence may be used to show a conspiracy as long as it is not speculative. *Id.* A Plaintiff must

specify the nature of an alleged conspiratorial agreement. *Walker*, 288 F.3d at 1007–08. At this point, Plaintiff need only show a plausible claim of conspiracy.

Defendants Gardiner and Sikanich maintain that Plaintiff's argument for conspiracy, "practically falls apart when confronted with the fact that none of the Defendants showed up to complain of him in court, resulting in the case's dismissal." [42] at 14. Plaintiff responds that the statute for malicious prosecution allows for *either* commencement *or* continuance of prosecution. [47] at 15. This Court agrees that a valid conspiracy to commit malicious prosecution claim does not require a continuance of prosecution.

Defendant Police Officers, Gardiner, and Sikanich argue that Plaintiff has not alleged sufficient facts to suggest a meeting of the minds. The Court disagrees. In contrast to the plaintiff in *Ryan v. Mary*, who only offered one piece of circumstantial evidence to corroborate an alleged agreement, Plaintiff has alleged multiple facts to suggest Gardiner and Sikanich first conspired together before bringing police officers into the matter. Gardiner yelled to Sikanich to "have him locked up," in reference to the Plaintiff. Although Gardiner never went to the police station or spoke with police officers personally, this instruction to Sikanich supports a meeting of the minds to maliciously prosecute Plaintiff. After, Sikanich and Defendant Police Officers arrived together at the police station where one could infer they discussed the altercation and the arrest during that time. At the police station, Sikanich then made sworn accusations and/or drafted a criminal complaint that mirrored the statutory language for the charge. Lastly, Gardiner and Sikanich had a pre-existing relationship with

22

the police and were the "powerful" people that Officer Ortiz mentioned in his conversation with Plaintiff. That conversation with Officer Ortiz further supports a meeting of the minds.

Gardiner and Sikanich contend that Plaintiff has offered no underlying understanding of why these Defendants would want Plaintiff arrested. But Plaintiff claims they did so out of animus, spite, and ego; at this stage, Plaintiff need not prove motive. His current allegations suffice.

### D. The City's Motion to Dismiss Plaintiff's Indemnification Claim

Finally, the City moves to dismiss Count VI, arguing that Gardiner and Sikanich did not act within the scope of their City employment and that their actions did not injure Plaintiff, thus precluding any indemnification.

The relevant statutory section, 745 ILCS 10/9-102 establishes that the City must indemnify Gardiner and Sikanich for their actions if they acted within the scope of their employment. Indemnification under the statute depends upon a finding of liability as to these two Defendants, which remains an open question. Having declined to dismiss the substantive claims against Defendants Gardiner and Sikanich, the Court declines to dismiss the indemnification Count and denies the City's motion to dismiss Count VI.

## IV. CONCLUSION

For the reasons explained above, the Court denies Defendants' motions to dismiss [40], [41], [42]. Defendants shall answer the amended complaint [37] by April 21, 2022. Additionally, the parties shall file a joint status report by April 29, 2022, proposing a reasonable fact discovery deadline, indicating whether they will require

expert discovery, and indicating whether they are interested in a settlement conference with the assigned Magistrate Judge. This Court will set additional case management deadlines in a future order.

Dated: March 21, 2022

Entered:

John Robert Blakey
United States District Judge