**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Benjamin George, | ) | |
| | ) | Case No. 20 C 6911 |
| Plaintiff, | ) | |
| v. | ) | Hon. Judge Blakey |
| | ) | |
| City of Chicago, James Gardiner, | ) | Hon. Magistrate Judge Jantz |
| Charles Sikanich, Chicago Police | ) | |
| Officers Solomon Ing (#4117), | ) | |
| Peter Palka (#9413), Daniel Smith | ) | |
| (#20066), Bilos (#21010), Joseph | ) | |
| Ferrara (#233), Sergio Corona | ) | |
| (#3331), Ortiz (Star # unknown), | ) | |
| and Unknown Chicago Police  Officers, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT

Defendants Peter Palka, Daniel Smith, Bilos Thomas, and Joseph Ferraro, submit the following answer to Plaintiff's first amended complaint, affirmative defenses, and jury demand:

### INTRODUCTION

**1.**      This action is brought pursuant to 42 U.S.C. § 1983 to address deprivations of Plaintiff's rights under the Constitution of the United States.

**ANSWER:**     Defendants deny depriving Plaintiff of his constitutional rights and admit the remainder of this paragraph.

**2.**      After Plaintiff and small business owner BENJAMIN GEORGE, through no malice or ill intent of his own, drew the ire of a powerful elected member of Chicago's governing body and his Ward Official, his life was upended by the collective actions of Chicago police and other representatives of city government.

**ANSWER:**     Defendants deny this paragraph.

**3.**      These individuals, jointly and individually, abused their authority to single him out for a baseless arrest, prosecution, and harassment. As a result of this treatment, GEORGE lost his home and was psychiatrically committed, among other injuries; indeed, the trauma leveraged against him caused him to move first from his neighborhood and subsequently from the state.

**ANSWER:**     Defendants deny jointly and individually abusing their authority to single Plaintiff out for a baseless arrest, prosecution, and harassment. Defendants lack knowledge or information sufficient to admit or deny the remainder of this paragraph.

## JURISDICTION AND VENUE

4.      The jurisdiction of the court is invoked pursuant to the Civil Rights Act, 42 U.S.C. § 1983; the Judicial Code, 28 U.S.C. §1331 and §1343(a); and the Constitution of the United States. Further, this Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over claims arising under Illinois state law.

**ANSWER:**     Defendants admit this paragraph.

5.      Venue is appropriate under 28 U.S.C. § 1391(b), as all defendants reside in this judicial district. In addition, substantial parts of the events giving rise to the claim occurred in this judicial district.

**ANSWER:**     Defendants admit this paragraph.

## PARTIES

6.      Plaintiff BENJAMIN GEORGE (hereinafter "PLAINTIFF" or "GEORGE") is a United States Citizen who at all times mentioned herein resided in the Northern District of Illinois.

**ANSWER:**     Defendants lack knowledge or information sufficient to admit or deny this paragraph.

7.      Defendant CITY OF CHICAGO is, and at all times mentioned herein was, a municipality organized and operating under the statutes of the State of Illinois. It is authorized under the statutes of the State of Illinois to maintain the Chicago Police Department, which acts as the City's agent in the areas of municipal law enforcement, and for which the City is ultimately responsible. Defendant City was, at all times material to this Complaint, the employer and principal of each and every Individual Defendant.

**ANSWER:**     Defendants lack knowledge or information sufficient to admit or deny that the City was at all times material to this Complaint the employer and principal or each and every Individual Defendant. Defendants admit the remainder of this paragraph.

8.      Defendant CHARLES SIKANICH is a resident of the City of Chicago and the Ward Superintendent for Chicago's 45th Ward under the Department of Streets and Sanitation.

**ANSWER:**     Defendants lack knowledge or information sufficient to admit or deny this paragraph.

9.      Defendant Alderman JAMES GARDINER is a resident of the City of Chicago and the Alderman of the 45th Ward in the City of Chicago.

**ANSWER:**     Defendants admit this paragraph.

     **10.**    Defendant OFFICERS SOLOMON ING, PETER PALKA, SERGIO CORONA, JOSEPH FERRERA, DANIEL SMITH, BILOS, ORTIZ, and UNKNOWN CHICAGO POLICE OFFICERS ("DEFENDANT OFFICERS"), were at all times relevant to this Complaint duly appointed and sworn law enforcement officers for the Defendant City of Chicago. Each is sued in his or her individual capacity for violating the constitutional rights of the individual named Plaintiffs. They are referred to collectively herein as the "DEFENDANT OFFICERS."

**ANSWER:**    Defendants admit this paragraph as it pertains to them and lack knowledge or information sufficient to admit or deny the remainder of this paragraph.

     **11.**    When DEFENDANTS engaged in the conduct described in this Complaint, they were acting under color of law, while on duty, and as agents of Defendant City of Chicago.

**ANSWER:**    Defendants admit this paragraph as it pertains to them and lack knowledge or information sufficient to admit or deny the remainder of this paragraph.

     **12.**    At all times material to this Complaint, DEFENDANTS were acting under the color of state law.

**ANSWER:**    Defendants admit this paragraph as it pertains to them and lack knowledge or information sufficient to admit or deny the remainder of this paragraph.

     **13.**    This action is brought against DEFENDANT OFFICERS in their individual capacities and DEFENDANTS GARDINER AND SIKANICH in their individual capacities.

**ANSWER:**    Defendants admit this paragraph.

## FACTS

     **14.**    BENJAMIN GEORGE was, at all times relevant to this Complaint, a Chicago resident who owned and operated a construction and repair company called Acer Construction, LLC. GEORGE moved out of state in early November 2020.

**ANSWER:**    Defendants lack knowledge or information sufficient to admit or deny this paragraph.

     **15.**    On or about the morning of August 19, 2019, GEORGE and an employee stopped at a busy 7/11 convenience store located at 6000 W. Higgins, Chicago, IL 60630.

**ANSWER:**    Upon information and belief, Defendants admit that on or about the morning of August 19, 2019, Plaintiff and an individual stopped at a 7/11 convenience store located at 6000 W. Higgins, Chicago, IL 60630. Defendants lack knowledge or information sufficient to admit or deny the remainder of this paragraph.

     **16.**    While checking out at the counter, GEORGE picked up a misplaced cell phone, later discovered to belong to 45th Ward Official Charles SIKANICH.

**ANSWER:** Upon information and belief, Defendants Palka, Smith, and Thomas, admit that Plaintiff picked up a misplaced cell phone later discovered to belong to 45th Ward Official Charles Sikanich and deny the remainder of this paragraph. Upon information and belief, Defendant Ferraro admits that Plaintiff picked up a misplaced cell phone later discovered to belong to 45th Ward Official Charles Sikanich and lacks knowledge or information sufficient to admit or deny the remainder of this paragraph. the remainder of this paragraph.

17. GEORGE did not know the identity of the owner of the phone at the time he obtained temporary possession of it, nor did he have the ability to identify the owner.

**ANSWER:** Upon information and belief, Defendants deny this paragraph.

18. At no point during the course of the day did the phone in question ring, nor did GEORGE see any text messages appear on the screen seeking out the phone.

**ANSWER:** Defendants lack knowledge or information sufficient to admit or deny this paragraph.

19. GEORGE did not intend to keep the mislaid cell phone, did not keep the mislaid cell phone, and always intended to return it to the 16th District police station after work.

**ANSWER:** Upon information and belief, Defendants deny this paragraph.

20. After work at the job site concluded, on the way to return the phone, GEORGE and his employee and coworker, Julian Devon, received an emergency service call regarding a fence down at a customer's house. GEORGE attended to that call immediately in a nearby suburb near the end of his workday.

**ANSWER:** Defendants lack knowledge or information sufficient to admit or deny this paragraph.

21. At some unknown point after the loss of the phone, 45th Ward Superintendent SIKANICH noticed its absence.

**ANSWER:** Defendants lack knowledge or information sufficient to admit or deny this paragraph.

22. SIKANICH believed this phone to be lost, not stolen, and informed 45th Ward Alderman James GARDINER and other 45th Ward personnel at the Ward office that he had lost his phone.

**ANSWER:** Defendants lack knowledge or information sufficient to admit or deny this paragraph.

23. GARDINER ordered SIKANICH to report the phone as stolen, despite SIKANICH's prior statement that it was lost, not stolen.

**ANSWER:** Defendants lack knowledge or information sufficient to admit or deny this paragraph.

24.     At the direction of GARDINER, SIKANICH reported the phone stolen to police that same day, August 19, 2019. At this time, GEORGE had the phone in his possession and was at a work site.

**ANSWER:**     Upon information and belief, Defendants admit that Sikanich reported the phone stolen to police that same day, August 19, 2019. Defendants lack knowledge or information sufficient to admit or deny the remainder of this paragraph.

25.     Upon the resolution of the work emergency service call, GEORGE drove towards the 16th District police station.

**ANSWER:**     Defendants lack knowledge or information sufficient to admit or deny this paragraph.

26.     At this time, GEORGE received a phone call from his then-roommate, Robert Cantrell, who informed him that some combination of DEFENDANT OFFICERS ING, CORONA, and/or an officer who identified himself as ORTIZ were at their home inquiring about the phone. They stated at this time that it "belonged to someone important."

**ANSWER:**     Defendants lack knowledge or information sufficient to admit or deny this paragraph.

27.     GEORGE asked his roommate if he could speak with an officer present at the residence and informed the person who identified himself as OFFICER ORTIZ that he was on his way to return the phone to the 16th District Police Station, and inquired whether he should come directly to the residence instead. The person who identified himself as OFFICER ORTIZ instructed him to return the phone to the police station.

**ANSWER:**     Defendants lack knowledge or information sufficient to admit or deny this paragraph.

28.     After police left GEORGE's home, GEORGE's roommate noticed a white City of Chicago-marked pickup truck driving up and down his block, operated by SIKANICH.

**ANSWER:**     Defendants lack knowledge or information sufficient to admit or deny this paragraph.

29.     Shortly thereafter, 45th Ward Alderman GARDINER visited GEORGE's roommate at the home, immediately inquiring if he was a firefighter--GARDINER himself is or was a firefighter.

**ANSWER:**     Defendants lack knowledge or information sufficient to admit or deny this paragraph.

30.     While Alderman GARDINER and GEORGE's roommate spoke, SIKANICH continued driving his City of Chicago vehicle up and down the block in front of the residence.

**ANSWER:**     Defendants lack knowledge or information sufficient to admit or deny this paragraph.

31.     Upon GARDINER's request, GEORGE's roommate called GEORGE and allowed GARDINER to speak with him.

**ANSWER:**     Defendants lack knowledge or information sufficient to admit or deny this paragraph.

**32.** GEORGE received this phone call while on his way to the 16th District police station, and Alderman GARDINER accused GEORGE of stealing his Ward Superintendent SIKANICH's lost phone using profane, accusatory, and inflammatory language despite knowing the phone had simply been lost.

**ANSWER:** Defendants lack knowledge or information sufficient to admit or deny this paragraph.

**33.** GEORGE was afraid and unnerved by the call, and informed GARDINER that he was taking the phone to the 16th District Police Station, as he had planned to do and as instructed by DEFENDANT OFFICERS. At this time, he was only 5-6 blocks away from the Station.

**ANSWER:** Defendants deny instructing Plaintiff to take the phone to the 16th District Police Station and lack knowledge or information sufficient to admit or deny the remainder of this paragraph.

**34.** Following the call, GARDINER became angry, and asked GEORGE's roommate, "Why do you let a piece of shit like that live in your home?"

**ANSWER:** Defendants lack knowledge or information sufficient to admit or deny this paragraph.

**35.** Following the conclusion of the call, GARDINER walked down from the residence's porch, turned his attention to SIKANICH in the City of Chicago Vehicle, and called out, "have him [GEORGE] locked up!"

**ANSWER:** Defendants lack knowledge or information sufficient to admit or deny this paragraph.

**36.** Following the conclusion of the call, SIKANICH circled the block for approximately 20 minutes in his City of Chicago truck before leaving.

**ANSWER** Defendants lack knowledge or information sufficient to admit or deny this paragraph.

**37.** SIKANICH returned approximately an hour later and stated to GEORGE's roommate: "The cops arrested your friend and he had a big gun on him," inquired, "who owns this house?", and stated "did you know you had a gypsy living in your basement?"

**ANSWER:** Defendants lack knowledge or information sufficient to admit or deny this paragraph.

**38.** GEORGE's roommate responded that he had a friend living in his basement.

**ANSWER:** Defendants lack knowledge or information sufficient to admit or deny this paragraph.

**39.** GEORGE's arrest--which occurred due to the misconduct of the DEFENDANTS--led PLAINTIFF's roommate to force PLAINTIFF to move out.

**ANSWER:** Defendants deny any alleged wrongdoing and therefore deny that Plaintiff's arrest was due to their misconduct. Defendants lack knowledge or information sufficient to admit or deny the remainder of this paragraph.

**40.** There was no prior strife between PLAINTIFF's roommate and PLAINTIFF, and PLAINTIFF's loss of housing directly resulted from the false arrest and malicious prosecution described in this Complaint.

**ANSWER:** Defendants deny falsely arresting or maliciously prosecuting Plaintiff and lack knowledge or information sufficient to admit or deny the remainder of this paragraph.

**41.** GEORGE arrived at the 16th District Police Station fewer than 10 minutes after the phone calls ceased. GEORGE was accompanied by his employee, Julian Devon, who was in GEORGE's work van following their work on a job site.

**ANSWER:** Defendants Smith and Thomas admit Plaintiff arrived at the 16th District Police Station with a man who was in his van and lack knowledge or information sufficient to admit or deny the remainder of this paragraph. Upon information and belief, Defendants Palka and Ferraro admit Plaintiff arrived at the 16th District Police Station and lack knowledge or information sufficient to admit or deny the remainder of this paragraph.

**42.** GEORGE carried a licensed firearm to his job sites. This was on his person on his way from the job site to the Police Station.

**ANSWER:** Defendants lack knowledge or information sufficient to admit or deny this paragraph.

**43.** At all times pertinent to this matter, PLAINTIFF possessed a valid Firearm Owners Identification ("FOID") Card and Concealed Carry License ("CCL"). He typically carried his licensed weapon in a holster on his person.

**ANSWER:** Upon information and belief, Defendants admit Plaintiff possessed a valid FOID and CCL on August 19, 2019, and lack knowledge or information sufficient to admit or deny the remainder of this paragraph.

**44.** Upon his arrival at the 16th District Police Station, GEORGE removed his firearm, which was unloaded, from its holster, prudently not wanting to carry a weapon into a police station and placed it in his vehicle. His companion exited the work van and GEORGE locked the vehicle before entering the Station.

**ANSWER:** Defendants lack knowledge or information sufficient to admit or deny this paragraph.

**45.** Upon arrival, GEORGE sought the attention of a desk sergeant with whom he had an existing relationship. Unfortunately, the desk sergeant on duty at the time was not the individual GEORGE sought and was on the phone at the time and unavailable to take possession of the mislaid cell phone.

**ANSWER:** Defendants lack knowledge or information sufficient to admit or deny this paragraph.

**46.** Failing to attract attention from the desk sergeant, GEORGE stepped outside in front of the police station to make a phone call back to his roommate in an attempt to speak with DEFENDANT OFFICERS who had visited the home.

**ANSWER:** Defendants deny visiting Plaintiff's home and lack knowledge or information sufficient to admit or deny the remainder of this paragraph.

47. At this time, an UNKNOWN CHICAGO POLICE OFFICER came outside and asked GEORGE "can I help you with something?"

**ANSWER:** Defendants lack knowledge or information sufficient to admit or deny this paragraph.

48. GEORGE explained that he had found a phone and was attempting to return it.

**ANSWER:** Defendants lack knowledge or information sufficient to admit or deny this paragraph.

49. GEORGE gave the cell phone to the UNKNOWN CHICAGO POLICE OFFICER and voluntarily returned inside to the station and sat down to wait.

**ANSWER:** Defendant Smith admits that Plaintiff gave the cell phone to him and denies the remaining allegations in this paragraph. Upon information and belief, Defendants Palka, Thomas, and Ferraro admit that Plaintiff gave the cell phone to a police officer and lack knowledge or information sufficient to admit or deny the remainder of this paragraph.

50. Soon after, UNKNOWN CHICAGO POLICE OFFICERS came out from behind the station's barrier dividing the secure area from the lobby and seized PLAINTIFF. PLAINTIFF did not know why he was being seized, given that he had already returned the cell phone as he had planned to do for the entirety of the day.

**ANSWER:** Defendant Smith denies that the allegations in this paragraph are an accurate representation of the events in question and therefore denies this paragraph. Defendants Palka, Thomas, and Ferraro lack knowledge or information sufficient to admit or deny this paragraph.

51. While the police were initially detaining PLAINTIFF, 45th Ward official Charles SIKANICH, and several other DEFENDANTS—UNNAMED CHICAGO POLICE OFFICERS, PALKA, and the officer who identified himself as ORTIZ—entered the station and walked to a back room with detectives, upon information and belief, Defendant Officers SMITH and BILOS.

**ANSWER:** Defendants Palka and Thomas deny this paragraph. Defendants Smith and Ferraro lack knowledge or information sufficient to admit or deny this paragraph.

52. SIKANICH, who had previously traveled to PLAINTIFF's apartment and stalked about his neighborhood before being instructed to "have him [GEORGE] locked up!" by GARDINER, swore out the criminal complaint that led to PLAINTIFF's arrest and criminal prosecution for Theft of Lost or Mislaid Property. It consisted of a rote recitation of the language of that offense's statutory definition, 720 ILCS 5/16-2. A copy of this criminal complaint is attached to and incorporated in this Complaint as Exhibit 1.

**ANSWER:** Upon information and belief, Defendants admit that Sikanich signed a criminal complaint for Theft of Lost or Mislaid property which contained language from 720 ILCS 5/16-2 and that a copy of the complaint was attached to and incorporated in Plaintiff's Complaint as Exhibit 1.

Defendants lack knowledge or information sufficient to admit or deny the remainder of this paragraph.

**53.** The language of SIKANICH's criminal complaint indicates that he was provided with the exact statutory language of the offense by DEFENDANT OFFICERS at the time of his swearing of the criminal complaint.

**ANSWER:** Defendants deny providing Sikanich with the exact statutory language of the offense at the time of his swearing of the criminal complaint and lack knowledge or information sufficient to admit or deny the remainder of this paragraph.

**54.** SIKANICH did not have personal knowledge as to the veracity of the allegations in the Complaint, having initially described the phone to Alderman GARDINER as "lost," not stolen.

**ANSWER:** Upon information and belief, Defendants deny Sikanich did not have personal knowledge as to the veracity of the allegations in the Complaint and lack knowledge or information sufficient to admit or deny the remainder of this paragraph.

**55.** SIKANICH further knew from his conversations with Alderman GARDINER and DEFENDANT OFFICERS that GEORGE did not intend to keep the phone.

**ANSWER:** Upon information and belief, Defendants deny this paragraph.

**56.** SIKANICH further knew, as a result of his conversations with DEFENDANT OFFICERS, that GEORGE had already returned the phone at the time the criminal complaint was sworn, making it impossible for him to credibly swear that GEORGE intended to permanently deprive him of possession of his property.

**ANSWER:** Upon information and belief, Defendants deny this paragraph.

**57.** Defendant OFFICERS oversaw the preparation and execution of the criminal complaint. Exhibit 1.

**ANSWER:** Defendants deny overseeing the preparation and execution of the criminal complaint, Exhibit 1, and lack knowledge or information sufficient to admit or deny the remainder of this paragraph.

**58.** Defendant Officer FERRARA was the supervising officer who approved probable cause, even though the phone had already been returned.

**ANSWER:** Defendant Ferraro admits that he was the supervising officer who approved probable cause. Upon information and belief, Defendant Ferraro admits that the phone had been returned when he approved probable cause. Upon information and belief, Defendants Smith, Thomas, and Palka admit this paragraph.

59.     While GEORGE was being held, UNKNOWN CHICAGO POLICE OFFICERS, including the desk sergeant, and possibly Charles SIKANICH, belittled him, calling him a gypsy—he is of Romanian descent—and threatened to charge him with a felony.

**ANSWER:**     Defendants lack knowledge or information sufficient to admit or deny this paragraph.

60.     Defendant OFFICERS, who had accompanied SIKANICH into the back room to jointly prepare the complaint that commenced his criminal prosecution, returned and formally arrested GEORGE, bringing him further into the station and beginning a search of his person.

**ANSWER:**     Defendant Smith denies that he jointly prepared the complaint that commenced Plaintiff's criminal prosecution, admit that Plaintiff was arrested and searched, and lacks knowledge or information sufficient to admit or deny the remainder of this paragraph. Defendants Palka, Thomas, and Ferraro deny this paragraph as it pertains to them. Upon information and belief, Defendants Palka, Thomas, and Ferraro admit Plaintiff was arrested and searched and lack knowledge or information sufficient to admit or deny the remainder of this paragraph.

61.     Despite the fact that there were several officers at the station involved in these events, and detectives operating out of Area North, only officers ING and CORONA were reported as the arresting officers.

**ANSWER:**     Defendants deny this paragraph.

62.     At the time of his arrest, GEORGE pleaded with Defendant OFFICERS and tried to explain that he intended to return the phone, and in fact returned the phone, but he was told to "shut up."

**ANSWER:**     Defendants deny this paragraph as it pertains to them and lack knowledge or information sufficient to admit or deny the remainder of this paragraph.

63.     When GEORGE asked for legal representation, he was again told to "shut up."

**ANSWER:**     Defendants deny this paragraph as it pertains to them and lack knowledge or information sufficient to admit or deny the remainder of this paragraph.

64.     GEORGE was berated by multiple DEFENDANT OFFICERS, including being threatened with charges of a felony, not being informed of the actual charge against him, and also not being informed as to why returning a missing mobile phone would result in his detention and arrest.

**ANSWER:**     Defendants deny this paragraph as it pertains to them and lack knowledge or information sufficient to admit or deny the remainder of this paragraph.

65.     At no point during the entirety of PLAINTIFF's interactions with the police in this matter does PLAINTIFF recall being informed of his Miranda Rights, or provided counsel, despite his repeated requests.

**ANSWER:**     Defendants lack knowledge or information sufficient to admit or deny what Plaintiff recalls and therefore deny this paragraph.

**66.** PLAINTIFF previously had a very positive relationship with Chicago police.

**ANSWER:** Defendants lack knowledge or information sufficient to admit or deny this paragraph.

**67.** While PLAINTIFF was being searched following his arrest, UNKNOWN CHICAGO POLICE OFFICERS discovered his empty gun holster.

**ANSWER:** Defendant Smith admits this paragraph. Upon information and belief, Defendants Palka, Ferraro, and Thomas admit this paragraph.

**68.** When UNKNOWN CHICAGO POLICE OFFICERS asked PLAINTIFF about the empty holster, GEORGE informed them that he had a weapon, as well as a valid FOID card and CCL, and that he had left his weapon in his vehicle rather than bringing a firearm into a police station.

**ANSWER:** Defendant Smith admits Plaintiff was asked about the empty holster and that Plaintiff informed police officers that he had a weapon and that he had left his weapon in his vehicle. Defendant Smith lacks knowledge or information sufficient to admit or deny the remainder of this paragraph. Upon information and belief, Defendants Palka, Thomas, and Ferraro admit that Plaintiff told the police that he had a gun in his car and lack knowledge or information sufficient to admit or deny the remainder of this paragraph.

**69.** At some point thereafter, UNKNOWN CHICAGO POLICE OFFICERS performed a search of GEORGE's vehicle, where they discovered the weapon and took possession of it. This wrongfully seized, legally owned weapon has not been returned to GEORGE at the time of this filing.

**ANSWER:** Defendants Smith and Thomas admit that they recovered a weapon from Plaintiff's vehicle and deny searching the vehicle or wrongfully seizing the weapon. Upon information and belief, Defendants Smith and Thomas admit that Plaintiff legally owned the weapon. Defendants Smith and Thomas lack knowledge or information sufficient to admit or deny the remainder of this paragraph. Upon information and belief, Defendants Palka and Ferraro admit that police officers recovered a weapon from Plaintiff's vehicle and that Plaintiff legally owned the weapon. Upon information and belief, Defendants Palka and Ferraro deny that the weapon was wrongfully seized. Defendants Palka and Ferraro lack knowledge or information sufficient to admit or deny the remainder of this paragraph.

**70.** At the time of this search, UNKNOWN OFFICERS held PLAINTIFF's employee, Julian Devon, at gunpoint, a course of action drastically incommensurate with the offense for which PLAINTIFF was suspected.

**ANSWER:** Defendants Smith and Thomas deny this paragraph. Defendants Palka and Ferraro lack knowledge or information sufficient to admit or deny this paragraph.

**71.** PLAINTIFF was arrested by DEFENDANT OFFICERS at or about 6 P.M. on August 19, 2019, and he was not released from state custody until the following evening, August 20, 2019 at or about 9 P.M.

**ANSWER:** Defendant Smith admits arresting Plaintiff at or about 6p.m. on August 19, 2019, and lacks knowledge or information sufficient to admit or deny the remainder of this paragraph. Defendants Palka, Thomas, and Ferraro deny arresting Plaintiff. Upon information and belief, Defendants Palka, Thomas, and Ferrar admit Plaintiff was arrested at or about 6p.m. on August 19, 2019. Defendants Palka, Thomas, and Ferraro lack knowledge or information sufficient to admit or deny the remainder of this paragraph.

72. While GEORGE was in the station's lockup, the Officer who identified himself as Officer ORTIZ informed the PLAINTIFF something substantially similar to "I believe you, I wasn't going to arrest you, but this person [GARDINER and SIKANICH] has power and I have bosses." The person who identified himself as Officer ORTIZ also stated to PLAINTIFF during his time at the station that officers would not show up to his court date, implying that the matter would be dismissed.

**ANSWER:** Defendants lack knowledge or information sufficient to admit or deny this paragraph.

73. As a result of his voluntarily returning a lost phone to a police station, PLAINTIFF was charged with Theft of Lost or Mislaid Property, 720 ILCS 5/16-2.

**ANSWER:** Upon information and belief, Defendants admit Plaintiff was charged with Theft of Lost or Mislaid Property under 720 ILCS 5/16-2 and deny the remainder of this paragraph.

74. On or about September 5, 2019, this case was stricken off the criminal call with leave to reinstate, upon information and belief due to the failure of police witnesses to appear for court.

**ANSWER:** Defendants lack knowledge or information sufficient to admit or deny this paragraph.

75. The Clerk of Court's records indicate that PLAINTIFF, through counsel, made a demand for trial at the court appearance on or about September 5, 2019.

**ANSWER:** Defendants lack knowledge or information sufficient to admit or deny this paragraph.

76. Pursuant to Illinois Speedy Trial Act, 725 ILCS 5/103-5(a), and the Illinois Supreme Court's holding in Ferguson v. City of Chicago, 213 Ill. 2d 94 (2004), PLAINTIFF's criminal case "terminated" 160 days later, in 2020, when prosecutors could no longer reinstate the charge onto the criminal call.

**ANSWER:** Defendants lack knowledge or information sufficient to admit or deny this paragraph.

77. After the arrest, PLAINTIFF was forced to live out of his car for a period of time due to the damage to his reputation and relationships as a result of the arrest.

**ANSWER:** Defendants lack knowledge or information sufficient to admit or deny this paragraph.

78. On or about October 17, 2019, due to the mounting stresses directly resulting from this incident, his loss of housing, and interference with his business, PLAINTIFF's mental state

deteriorated, leading his family to transport him to the emergency room at Northshore Evanston Hospital, where he was eventually admitted to psychiatric confinement.

**ANSWER:**    Defendants lack knowledge or information sufficient to admit or deny this paragraph.

**79.**    PLAINTIFF was released from the hospital after several days.

**ANSWER:**    Defendants lack knowledge or information sufficient to admit or deny this paragraph.

**80.**    PLAINTIFF has still not financially or emotionally recovered from these events.

**ANSWER:**    Defendants lack knowledge or information sufficient to admit or deny this paragraph.

**81.**    As a result of his arrest and prosecution, the harassment of himself, his roommate, and his employee, and the attendant damage to his reputation, PLAINTIFF lost business income.

**ANSWER:**    Defendants lack knowledge or information sufficient to admit or deny this paragraph.

**82.**    As a result of his arrest and prosecution, the harassment of himself, his roommate, and his employee, and the attendant damage to his reputation, PLAINTIFF lost employees.

**ANSWER:**    Defendants lack knowledge or information sufficient to admit or deny this paragraph.

**83.**    As a result of his arrest and prosecution, and the harassment of his roommate, PLAINTIFF lost his housing.

**ANSWER:**    Defendants lack knowledge or information sufficient to admit or deny this paragraph.

**84.**    As a result of his arrest and prosecution, the harassment of himself, his roommate, and his employee, and the attendant damage to his reputation, PLAINTIFF was psychiatrically admitted and spent almost a week in psychiatric confinement.

**ANSWER:**    Defendants lack knowledge or information sufficient to admit or deny this paragraph.

**85.**    As a result of his arrest and prosecution, the harassment of himself, his roommate, and his employee, and damage to his reputation, PLAINTIFF experienced mental anguish, emotional trauma, and other negative health ramifications.

**ANSWER:**    Defendants lack knowledge or information sufficient to admit or deny this paragraph.

**86.**    As a result of his arrest and prosecution, PLAINTIFF's property--a legally owned, licensed, and registered firearm--was seized and not returned.

**ANSWER**:    Defendants lack knowledge or information sufficient to admit or deny this paragraph.

**87.**    As a result of his arrest and prosecution, the harassment of himself, his roommate, and his employee, and the attendant damage to his reputation, PLAINTIFF lost trust in an institution

and City ostensibly designed to protect him, causing fear of retaliation for any actions he took in good faith in the future.

**ANSWER:**    Defendants lack knowledge or information sufficient to admit or deny this paragraph.

88.    As a result of his arrest and prosecution, and the harassment of himself, PLAINTIFF decided to move away from the city of Chicago, which he did in November of 2020.

**ANSWER:**    Defendants lack knowledge or information sufficient to admit or deny this paragraph.

89.    This incident is not the first time DEFENDANTS GARDINER and SIKANICH have abused or attempted to abuse city authority, abused or attempted to abuse legal process, or to coordinate with or act as de facto police.

**ANSWER:**    Defendants lack knowledge or information sufficient to admit or deny this paragraph.

90.    In 2014 Charles SIKANICH was arrested for impersonating a police officer.

**ANSWER:**    Defendants lack knowledge or information sufficient to admit or deny this paragraph.

91.    In 2020 Charles SIKANICH swore a demonstrably false petition for an emergency order of protection against a former coworker. The petition was eventually dismissed.

**ANSWER:**    Defendants lack knowledge or information sufficient to admit or deny this paragraph.

92.    Alderman GARDINER has been active in coordinating and sometimes participating in police actions in his Ward on other matters; police have distributed literature on GARDINER's behalf to Ward residents.

**ANSWER:**    Defendants lack knowledge or information sufficient to admit or deny this paragraph.

93.    In 2019 Charles SIKANICH, with the knowledge of Alderman GARDINER, carried out a scheme to have a critic of their office ticketed for keeping certain alleged "weeds" on the lawn of a home, and, upon information and belief, coordinated with an official from another ward to issue the tickets in order to misdirect blame from them.

**ANSWER:**    Defendants lack knowledge or information sufficient to admit or deny this paragraph.

94.    In 2019 Alderman GARDINER and Charles SIKANICH obtained the criminal history of a critic and discussed publicly disseminating the information via text message, and to some degree, disseminated this information.

**ANSWER:**    Defendants lack knowledge or information sufficient to admit or deny this paragraph.

95.    Both GARDINER and SIKANICH carry city-issued six pointed, metallic, aldermanic "badges" either in their truck or on their person while on duty.

**ANSWER:**      Defendants lack knowledge or information sufficient to admit or deny this paragraph.

### COUNT I: 42 U.S.C. Section 1983 - False Arrest and Unlawful Seizure
### Against All Individual Defendants
### (Federal Claim)

**96.**      PLAINTIFF realleges paragraphs 1 to 95 as though fully set forth herein.

**ANSWER:**      Defendants restate their answers to paragraphs 1 to 95 as though fully set forth herein.

**97.**      Defendant OFFICERS caused PLAINTIFF to be seized when they first detained and then arrested PLAINTIFF on or about 6 PM on August 19, 2019, and also seized his property--a legally owned, licensed, and registered firearm--at that time.

**ANSWER:**      Defendant Smith admits that he assisted in arresting Plaintiff at or about 6p.m. on August 19, 2019, and seized Plaintiff's property – a firearm – at that time. Upon information and belief, Defendant Smith admits Plaintiff legally owned the firearm and lacks knowledge or information sufficient to admit or deny the remainder of this paragraph. Defendant Thomas denies that he detained or arrested Plaintiff on or about 6p.m. on August 19, 2019. Defendant Thomas admits that he seized Plaintiff's property – a firearm – at that time. Upon information and belief, Defendant Thomas admits Plaintiff legally owned the firearm and lacks knowledge or information sufficient to admit or deny the remainder of this paragraph. Defendants Palka and Ferraro deny that they detained or arrested Plaintiff on or about 6p.m. on August 19, 2019, and deny that they seized his property – a firearm – at that time. Upon information and belief, Defendants Palka and Ferraro admit that Plaintiff was arrested at about 6p.m. on August 19, 2019, and that officers seized his legally owned firearm. Defendants Palka and Ferraro lack knowledge or information sufficient to admit or deny the remainder of this paragraph.

**98.**      PLAINTIFF was at the police station to return a mislaid phone that he had temporarily acquired possession of, did not know the owner of, and intended to return to the police station.

**ANSWER:**      Upon information and belief, Defendants deny this paragraph.

**99.**      Defendant OFFICERS did not have probable cause to believe PLAINTIFF had committed a crime when they seized PLAINTIFF due to the fact that he had already returned the phone, his inability to ascertain its owner upon picking it up with the intention of returning it, and obvious lack of intention to retain possession.

**ANSWER:**      Defendant Smith denies this paragraph. Defendants Palka, Thomas, and Ferraro deny seizing Plaintiff. Upon information and belief, Defendants Palka, Thomas, and Ferraro deny the remainder of this paragraph.

**100.**      PLAINTIFF at all times acted in a manner that would indicate compliance with the law. He brought the phone in question to the police station of his own free will, asked officers at each stage of the event what he should do to return the mislaid phone, removed his weapon prior to entry to the Police Station, and complied with all demands of officers involved.

**ANSWER:**     Upon information and belief, Defendants deny this paragraph.

**101.**     SIKANICH made this false police report under pressure from Defendant GARDINER, the alderman in that district, who, through his office, possessed close ties to the police.

**ANSWER:**     Upon information and belief, Defendants deny that Sikanich's police report was false and lack knowledge or information sufficient to admit or deny the remainder of this paragraph.

**102.**     The eventual criminal complaint was sworn and attested after PLAINTIFF had already voluntarily returned the phone in question, and while the phone was already in police possession.

**ANSWER:**     Defendants lack knowledge or information sufficient to admit or deny this paragraph.

**103.**     The officer who identified himself as Officer ORTIZ stated the following or something substantially similar to PLAINTIFF: "I believe you, I wasn't going to arrest you, but this person has power and I have bosses." Despite having reason to believe that the allegations against GEORGE were false at the time the complaint was sworn, DEFENDANT OFFICERS arrested PLAINTIFF.

**ANSWER:**     Defendants lack knowledge or information sufficient to admit or deny this paragraph.

**104.**     DEFENDANT OFFICERS did not have reasonable suspicion to believe PLAINTIFF was about to commit a crime, was committing a crime, or had committed a crime when they seized PLAINTIFF for reasons stated elsewhere herein.

**ANSWER:**     Defendant Smith denies this paragraph. Defendants Palka, Thomas, and Ferraro deny seizing Plaintiff. Upon information and belief, Defendants Palka, Thomas, and Ferraro deny the remainder of this paragraph.

**105.**     Defendant OFFICERS did not have probable cause to believe that PLAINTIFF had committed a crime, was committing a crime, or was about to commit a crime at the time he was arrested.

**ANSWER:**     Defendant Smith denies this paragraph. Defendants Palka, Thomas, and Ferraro deny arresting Plaintiff. Upon information and belief, Defendants Palka, Thomas, and Ferraro deny the remainder of this paragraph.

**106.**     Defendant SIKANICH falsely reported a lost phone as stolen and swore out a false criminal complaint and did so at GARDINER's direction.

**ANSWER:**     Upon information and belief, Defendants deny that Sikanich's police report and criminal complaint were false and lack knowledge or information sufficient to admit or deny the remainder of this paragraph.

**107.**     DEFENDANTS were acting under color of law at all times material to this Count.

**ANSWER:** Defendants admit this paragraph as it pertains to them and lack knowledge or information sufficient to admit or deny the remainder of this paragraph.

108. Such actions described here and elsewhere within this Complaint constitute DEFENDANTS' violation of PLAINTIFF's rights under the United States Constitution in violation of the Fourth Amendment.

**ANSWER:** Defendants deny any alleged wrongdoing and therefore deny this paragraph.

109. The actions of DEFENDANTS were objectively unreasonable and were undertaken intentionally with malice, willfulness, and reckless indifference to PLAINTIFF's rights.

**ANSWER:** Defendants deny this paragraph.

110. DEFENDANTS' actions in arresting and/or causing this arrest of GEORGE, despite the lack of probable cause for this arrest, caused injury to Plaintiff including the deprivation of his liberty, loss of property, loss of housing, emotional distress, lost business income, medical bills, interference with employment relationships, interference with his ability to become properly licensed to possess a firearm, damage to reputation, and mental anguish and distress.

**ANSWER:** Defendants deny any alleged wrongdoing and lack knowledge or information sufficient to admit or deny the remainder of this paragraph.

### COUNT II: 42 U.S.C. Section 1983 – Equal Protection – Class of One
### Against All Individual Defendants
### (Federal Claim)

111. PLAINTIFF realleges paragraphs 1 to 95 as though fully set forth herein.

**ANSWER:** Defendants restate their answers to paragraphs 1 to 95 as though fully set forth herein.

112. DEFENDANTS acted arbitrarily, irrationally, and with personal animus toward PLAINTIFF during the course of his arrest and prosecution.

**ANSWER:** Defendants deny this paragraph.

113. PLAINTIFF was explicitly told by the individual who identified himself as Officer ORTIZ that he was being singled for arrest and prosecution with words substantially similar to: "I believe you, I wasn't going to arrest you, but this person has power and I have bosses."

**ANSWER:** Defendants lack knowledge or information sufficient to admit or deny this paragraph.

114. Alderman GARDINER and Charles SIKANICH personally travelled to PLAINTIFF's home the day of the incident, using the imprimatur of city authority and office to act as de facto vigilante police officers, an outrageous, spiteful, arbitrary, irrational, and unconscionable use of state power that caused the arrest that led PLAINTIFF's roommate to require PLAINTIFF to move from the residence.

**ANSWER:**     Defendants lack knowledge or information sufficient to admit or deny this paragraph.

115.     Charles SIKANICH, after leaving PLAINTIFF's residence, remained in the neighborhood, circling in a city vehicle.

**ANSWER:**     Defendants lack knowledge or information sufficient to admit or deny this paragraph.

116.     After GARDINER directed SIKANICH to concoct a lie that his phone was stolen, not lost, SIKANICH, following through on GARDINER's explicit instructions to not only report a lost phone as stolen but also to "have him [PLAINTIFF] locked up," GARDINER and SIKANICH, upon information and belief, also brought the power of their own government positions to bear on a harmless individual by pressuring DEFENDANT OFFICERS to baselessly arrest and charge PLAINTIFF.

**ANSWER:**     Defendants deny that Gardiner and Sikanich pressured them to baselessly arrest and charge Plaintiff and lack knowledge or information sufficient to admit or deny the remainder of this paragraph.

117.     PLAINTIFF was mocked for his Romanian ethnicity by being called a "gypsy" by a DEFENDANT OFFICER at the police station, and again by SIKANICH at PLAINTIFF's residence.

**ANSWER:**     Defendants deny this paragraph as it pertains to them and lack knowledge or information sufficient to admit or deny the remainder of this paragraph.

118.     DEFENDANTS intentionally treated PLAINTIFF differently than similarly situated individuals, and departed from norm or common practice, acted with animus, and acted with discriminatory motive with no rational basis for doing so.

**ANSWER:**     Defendants deny this paragraph.

119.     DEFENDANTS were acting under color of law at all times material to this Count; in fact, GARDINER relied his role as alderman and firefighter, while SIKANICH travelled in a City of Chicago vehicle to PLAINTIFF's residence on multiple occasions

**ANSWER:**     Defendants admit this paragraph as it pertains to them and lack knowledge or information sufficient to admit or deny the remainder of this paragraph.

120.     The actions of the DEFENDANTS were willful and wanton, and were undertaken intentionally with malice, willfulness, and reckless indifference to PLAINTIFF's rights.

**ANSWER:**     Defendants deny this paragraph.

121.     DEFENDANTS actions caused injury to Plaintiff including the deprivation of his liberty, loss of property, loss of housing, emotional distress, lost business income, medical bills, interference with employment relationships, interference with his ability to become properly licensed to possess a firearm, damage to reputation, and mental anguish and distress.

**ANSWER:**    Defendants deny this paragraph.

### COUNT III: 42 U.S.C. Section 1983 — Due Process — Shocks the Conscience
### Against Defendants Sikanich and Gardiner
### (Federal Claim)

**122.**    PLAINTIFF realleges paragraphs 1 to 95 as though fully set forth herein.

**ANSWER:**    Defendants make no answer to this paragraph because Count III is not directed at them.  To the extent an allegation in this paragraph is directed at Defendants, Defendants admit that at all relevant times they acted within the scope of their employment as Chicago Police Officers but deny any wrongdoing alleged herein and further deny that Plaintiff is entitled to any recovery.

**123.**    The Fourteenth Amendment to the United States Constitution, enforceable against Defendants pursuant to 42 U.S.C. §1983, provides that no state actor shall deprive any person of life, liberty, or property, without due process of law.

**ANSWER:**    Defendants make no answer to this paragraph because Count III is not directed at them.  To the extent an allegation in this paragraph is directed at Defendants, Defendants admit that at all relevant times they acted within the scope of their employment as Chicago Police Officers but deny any wrongdoing alleged herein and further deny that Plaintiff is entitled to any recovery.

**124.**    As demonstrated by their actions, SIKANICH and GARDINER worked to deprive PLAINTIFF of constitutionally protected interests, including his right to freedom from unreasonable seizure, false arrest and baseless prosecution, freedom from arbitrary government action, freedom from interference with business relationships, right to bear arms, and other liberty interests.

**ANSWER:**    Defendants make no answer to this paragraph because Count III is not directed at them.  To the extent an allegation in this paragraph is directed at Defendants, Defendants admit that at all relevant times they acted within the scope of their employment as Chicago Police Officers but deny any wrongdoing alleged herein and further deny that Plaintiff is entitled to any recovery.

**125.**    SIKANICH and GARDINER traveled to PLAINTIFF's home after instigating a false police investigation which damaged PLAINTIFF's relationship with his roommate and deprived him of his right to be free from arbitrary and vindictive government action.

**ANSWER:**    Defendants make no answer to this paragraph because Count III is not directed at them.  To the extent an allegation in this paragraph is directed at Defendants, Defendants admit that at all relevant times they acted within the scope of their employment as Chicago Police Officers but deny any wrongdoing alleged herein and further deny that Plaintiff is entitled to any recovery.

**126.**    In response to SIKANICH's false police report (made at GARDINER's instruction), and GARDINER's instructions to SIKANICH to "have him [PLAINTIFF] locked up," DEFENDANT OFFICERS seized PLAINTIFF, searched his person and vehicle, and arrested PLAINTIFF and took him into custody without probable cause.

**ANSWER:** Defendants make no answer to this paragraph because Count III is not directed at them. To the extent an allegation in this paragraph is directed at Defendants, Defendants admit that at all relevant times they acted within the scope of their employment as Chicago Police Officers but deny any wrongdoing alleged herein and further deny that Plaintiff is entitled to any recovery.

127. Defendant OFFICERS and SIKANICH (on GARDINER's instruction) prepared and/or approved a false criminal complaint that they knew prosecutors would rely upon to pursue false criminal charges against PLAINTIFF.

**ANSWER:** Defendants make no answer to this paragraph because Count III is not directed at them. To the extent an allegation in this paragraph is directed at Defendants, Defendants admit that at all relevant times they acted within the scope of their employment as Chicago Police Officers but deny any wrongdoing alleged herein and further deny that Plaintiff is entitled to any recovery.

128. The deliberate actions of the Defendants were done willfully, wantonly, and intentionally in order to deprive PLAINTIFF of his right to due process of law.

**ANSWER:** Defendants make no answer to this paragraph because Count III is not directed at them. To the extent an allegation in this paragraph is directed at Defendants, Defendants admit that at all relevant times they acted within the scope of their employment as Chicago Police Officers but deny any wrongdoing alleged herein and further deny that Plaintiff is entitled to any recovery.

129. Alderman GARDINER and SIKANICH abused city office when they traveled to PLAINTIFF's home, taking a police investigation into their own hands.

**ANSWER:** Defendants make no answer to this paragraph because Count III is not directed at them. To the extent an allegation in this paragraph is directed at Defendants, Defendants admit that at all relevant times they acted within the scope of their employment as Chicago Police Officers but deny any wrongdoing alleged herein and further deny that Plaintiff is entitled to any recovery.

130. Taken in total, these actions, which negatively impacted both PLAINTIFF and the fairness, integrity, and public reputation of judicial proceedings and the responsibilities attendant in serving as a holder of a public office or position, shock the conscience.

**ANSWER:** Defendants make no answer to this paragraph because Count III is not directed at them. To the extent an allegation in this paragraph is directed at Defendants, Defendants admit that at all relevant times they acted within the scope of their employment as Chicago Police Officers but deny any wrongdoing alleged herein and further deny that Plaintiff is entitled to any recovery.

131. DEFENDANTS were acting under color of law at all times material to this Count.

**ANSWER:** Defendants make no answer to this paragraph because Count III is not directed at them. To the extent an allegation in this paragraph is directed at Defendants, Defendants admit that at all relevant times they acted within the scope of their employment as Chicago Police Officers but deny any wrongdoing alleged herein and further deny that Plaintiff is entitled to any recovery.

**132.** The actions of the DEFENDANTS willful and wanton, and were undertaken intentionally with malice, willfulness, and reckless indifference to PLAINTIFF's rights.

**ANSWER:** Defendants make no answer to this paragraph because Count III is not directed at them. To the extent an allegation in this paragraph is directed at Defendants, Defendants admit that at all relevant times they acted within the scope of their employment as Chicago Police Officers but deny any wrongdoing alleged herein and further deny that Plaintiff is entitled to any recovery.

**133.** DEFENDANTS' actions directly and proximately caused injury to Plaintiff including the deprivation of his liberty, loss of property, loss of housing, emotional distress, lost business income, medical bills, interference with employment relationships, interference with his ability to become properly licensed to possess a firearm, damage to reputation, and mental anguish and distress.

**ANSWER:** Defendants make no answer to this paragraph because Count III is not directed at them. To the extent an allegation in this paragraph is directed at Defendants, Defendants admit that at all relevant times they acted within the scope of their employment as Chicago Police Officers but deny any wrongdoing alleged herein and further deny that Plaintiff is entitled to any recovery.

**COUNT IV: Malicious Prosecution**
**Against All Individual Defendants**
**(State Law Claim)**

**134.** PLAINTIFF realleges paragraphs 1 to 95 as though fully set forth herein.

**ANSWER:** Defendants reassert their answers to paragraphs 1 to 95 as though fully set forth herein.

**135.** By committing the acts detailed above, Defendant OFFICERS and Charles SIKANICH, acting at the instruction of co-defendant Alderman GARDINER, knowingly sought to and did in fact maliciously commence and continue the prosecution of PLAINTIFF on false charges for which they knew there was no probable cause, charges which were terminated in PLAINTIFF's favor and which damaged PLAINTIFF.

**ANSWER:** Defendants deny this paragraph.

**136.** DEFENDANTS combined to maliciously cause the swearing to a criminal complaint and commencement of a criminal prosecution for which they knew there was no probable cause.

**ANSWER:** Defendants deny this paragraph.

**137.** The criminal charges against PLAINTIFF were disposed of favorably when the case was Stricken Off the criminal call with Leave to reinstate and not reinstated within the 160-day Speedy Trial Period, terminating the prosecution in 2020.

**ANSWER:** Defendants lack knowledge or information sufficient to admit or deny this paragraph.

138.     Defendant OFFICERS dictated a criminal complaint for SIKANICH to sign that was a rote recital of statutory language despite both SIKANICH and the OFFICERS' knowing that the elements of the offense were not and could not be met.

**ANSWER:**     Defendants deny this paragraph.

139.     In dictating this Complaint to Sikanich, DEFENDANTS acted with malice in commencing this criminal prosecution without probable cause and knowledge of the absence of probable cause.

**ANSWER:**     Defendants deny this paragraph.

140.     The actions of the DEFENDANTS willful and wanton, and were undertaken intentionally with malice, willfulness, and reckless indifference to PLAINTIFF's rights.

**ANSWER:**     Defendants deny this paragraph.

141.     As a direct and proximate result of the malicious prosecution, Plaintiff was damaged, including the value of his deprivation of his liberty, loss of property, loss of housing, emotional distress, lost business income, medical bills, interference with employment relationships, interference with his ability to become properly licensed to possess a firearm, damage to reputation, and mental anguish and distress.

**ANSWER:**     Defendants deny maliciously prosecuting Plaintiff and therefore deny this paragraph.

### COUNT V: Conspiracy to Commit Malicious Prosecution
### Against All Individual Defendants
### (State Law Claim)

142.     PLAINTIFF realleges paragraphs 1 to 95 as though fully set forth herein.

**ANSWER:**     Defendants reassert their answers to paragraph 1 to 95 as though fully set forth herein.

143.     DEFENDANTS acted in concert in a conspiracy to maliciously prosecute PLAINTIFF.

**ANSWER:**     Defendants deny this paragraph.

144.     DEFENDANTS, acting in concert, conspired to accomplish an unlawful purpose by unlawful means, the principal element of which was to inflict wrongs and injury by maliciously prosecuting PLAINTIFF as described herein.

**ANSWER:**     Defendants deny this paragraph.

145.     In furtherance of this conspiracy, each of the DEFENDANT co-conspirators committed overt acts, such as approving probable cause, dictating the complaint, swearing the complaint, and taking other actions, and each defendant was a willful participant in joint activity.

**ANSWER:**     Defendants deny this paragraph.

**146.**     The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of PLAINTIFF.

**ANSWER:**     Defendants deny this paragraph.

**147.**     DEFENDANTS' actions directly and proximately caused injury to Plaintiff including the deprivation of his liberty, loss of property, loss of housing, emotional distress, lost business income, medical bills, interference with employment relationships, interference with his ability to become properly licensed to possess a firearm, damage to reputation, and mental anguish and distress.

**ANSWER:**     Defendants deny any alleged wrongdoing and therefore deny this paragraph.

**COUNT VI: 745 ILCS 10/9-102 – Indemnification**
**Against Defendant City of Chicago**
**(State Law Claim)**

**148.**     PLAINTIFF realleges paragraphs 1 to 95 as though fully set forth herein.

**ANSWER:**     Defendants make no answer to this paragraph because Count VI is not directed at them.  To the extent an allegation in this paragraph is directed at Defendants, Defendants admit that at all relevant times they acted within the scope of their employment as Chicago Police Officers but deny any wrongdoing alleged herein and further deny that Plaintiff is entitled to any recovery.

**149.**     Defendant CITY OF CHICAGO is the employer of the individual DEFENDANTS.

**ANSWER:**     Defendants make no answer to this paragraph because Count VI is not directed at them.  To the extent an allegation in this paragraph is directed at Defendants, Defendants admit that at all relevant times they acted within the scope of their employment as Chicago Police Officers but deny any wrongdoing alleged herein and further deny that Plaintiff is entitled to any recovery.

**150.**     The individual DEFENDANTS committed the above-alleged acts under color of law and in the scope of their duties and employment as employees of the CITY OF CHICAGO.

**ANSWER:**     Defendants make no answer to this paragraph because Count VI is not directed at them.  To the extent an allegation in this paragraph is directed at Defendants, Defendants admit that at all relevant times they acted within the scope of their employment as Chicago Police Officers but deny any wrongdoing alleged herein and further deny that Plaintiff is entitled to any recovery.

**151.**     In Illinois, public entities are directed to pay for any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities. 745 ILCS 10/9-102.

**ANSWER:**     Defendants make no answer to this paragraph because Count VI is not directed at them.  To the extent an allegation in this paragraph is directed at Defendants, Defendants admit that

at all relevant times they acted within the scope of their employment as Chicago Police Officers but deny any wrongdoing alleged herein and further deny that Plaintiff is entitled to any recovery.

**152.** As a direct and proximate cause of DEFENDANTS' unlawful acts, which occurred within the scope of their employment activities, PLAINTIFF was damaged, including the deprivation of his liberty, loss of property, loss of housing, emotional distress, lost business income, medical bills, interference with employment relationships, interference with his ability to become properly licensed to possess a firearm, damage to reputation, and mental anguish and distress.

**ANSWER:** Defendants make no answer to this paragraph because Count VI is not directed at them. To the extent an allegation in this paragraph is directed at Defendants, Defendants admit that at all relevant times they acted within the scope of their employment as Chicago Police Officers but deny any wrongdoing alleged herein and further deny that Plaintiff is entitled to any recovery.

## AFFIRMATIVE DEFENSES

**1.** Defendants are government officials who perform discretionary functions. At all times material to the events alleged in Plaintiff's first amended complaint, a reasonable police officer objectively viewing the facts and circumstances that confronted Defendants could have believed their actions to be lawful, in light of clearly established law and the information that Defendants possessed. Defendants therefore are entitled to qualified immunity on Plaintiff's 42 U.S.C. § 1983 claims.

**2.** An injured plaintiff has a duty to mitigate his damages and cannot recover for those damages proximately caused by his failure to mitigate. To the extent Plaintiff failed to mitigate any of his claimed damages, he cannot recover for those damages and any verdict or judgment obtained by Plaintiff must be reduced accordingly.

**3.** Defendants were working as police officers at the time of this incident. Therefore, under the Illinois Tort Immunity Act, Defendants are not liable for any of the claims alleged, because a public employee is not liable for his acts or omissions in the execution or enforcement of any law, unless such acts or omissions constitute willful and wanton conduct. 752 ILCS 10/2-202.

**4.** Under the Illinois Tort Immunity Act, Defendants are not liable for any of the claims alleged because the decisions and actions were based upon the information and circumstances known to Defendants at the time, and were discretionary decisions from which they are immune from liability. 745 ILCS 10/2-201.

**5.** Defendants are not liable for Plaintiff's claims because a public employee, as such and acting within the scope of his employment, is not liable for any injury caused by the act or omission of another person. 745 ILCS 10/2-204.

**6.** Defendants are absolutely immune from civil liability for any claim that they committed, or conspired to commit, perjury in the course of their testimony during the judicial proceedings in plaintiff's underlying criminal case. *Briscoe v. LaHue*, 460 U.S. 325, 330-331 (1983); *Rehberg v. Paulk*, 132 S.Ct. 1497 (2012); see also *Khorrami v. Rolince*, 539 F.3d 782, 789 (7th Cir. 2008) (noting that the Seventh Circuit has recognized that absolute immunity extends to police officer's participation in pretrial proceedings); *Jurgensen v. Haslinger*, 295 Ill.App.3d 139, 141-42; 692 N.E.2d 347,

349-50 (3rd Dist. 1998). Absolute immunity also extends to alleged false statements in police reports and criminal complaints. *Simpson v. Meijer, Inc.*, No. 1:12-cv-06217, 2013 WL 3834641, at *10 (N.D. Ill. July 24, 2013).

**7.** To the extent any injuries or damages claimed by Plaintiff were proximately caused by the contributory fault chargeable to the Plaintiff, any verdict shall be diminished in the proportion to the amount of fault attributable to the Plaintiff, unless the jury finds that the contributory fault on the part of the Plaintiff is more than 50% of the proximate cause of the injury or damage for which recovery is sought, in which case the Plaintiff shall be barred from recovering damages. 735 ILCS 5/2-1116.

## JURY DEMAND

Defendants request a trial by jury.

Respectfully submitted,

/s/ Gregory Beck
Attorney for Palka, Smith, Thomas, and Ferraro

Gregory Beck, Assistant Corporation Counsel Supervisor
Emily Bammel, Assistant Corporation Counsel
City of Chicago, Department of Law
2 North LaSalle Street, Suite 420
Chicago, Illinois 60602
(312) 742-5146 | Gregory.beck@cityofchicago.org
(312) 744-6566 (FAX)

## CERTIFICATE OF SERVICE

I certify that on May 6, 2022, I served a copy of the foregoing upon counsel of record by filing it with the Clerk for the Northern District of Illinois using the CM/ECF system.

/s/ Gregory Beck