IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Benjamin George, <br>      Plaintiff, <br><br> v. <br><br> City of Chicago, *et al*, <br>      Defendants. | Case No: 20-cv-6911 <br><br> Hon. Judge Blakey <br><br> Hon. Mag. Judge Jantz <br><br> **JURY TRIAL DEMANDED** |

**AMENDED MOTION TO COMPEL DEFENDANTS GARDINER AND
SIKANICH TO RESPOND TO REQUESTS TO PRODUCE AND INTERROGATORIES**

  Plaintiff Benjamin George, by and through his undersigned counsel, respectfully moves this Court pursuant to Fed. R. Civ. P. 26 and 37 for an Order compelling Defendants Gardiner and Sikanich to respond to written discovery issued upon them, and in support thereof states as follows:

**INTRODUCTION AND FACTUAL BACKGROUND**

  On August 19, 2019, Defendants, including Defendants James Gardiner and Charles Sikanich, conspired to falsely arrest and maliciously prosecute Plaintiff Benjamin George after he found Charles Sikanich's lost phone and returned it to a police station. These Defendants committed other constitutional violations during the course of the conspiracy. That day, Defendants Gardiner and Sikanich falsely reported the phone to police as stolen, rather than lost, later traveling to Plaintiff's house and, *inter alia*, calling Plaintiff a "piece of shit," a "gypsy," inquiring as to Plaintiff's roommate and landlord's status as a Chicago Fire Department employee, and eventually deciding to have Plaintiff "locked up." On November 20, 2020, Plaintiff filed suit, and on March 21, 2022 this Court denied entirely all Defendants' Motions to Dismiss. Dkt. 61.

  Plaintiff served written discovery on Defendants Gardiner and Sikanich on June 27, 2022, the parties having stipulated pursuant to Fed. R. Civ. P. 29(b) to a ten-day enlargement of the Court's deadline to issue written discovery. After an initial agreed mutual 14-day extension of time

to serve responses on July 26, 2022, Defendants Gardiner and Sikanich sought additional extensions of time to respond on August 10, 2022, August 26, 2022, and September 9, 2022, and Plaintiff accepted these requests with the understanding that extensions applied equally to Plaintiff. (Plaintiff responded to the other Defendants' written discovery on June 27 and 28 of 2022.)

Defendants Gardiner and Sikanich provided their discovery responses on September 16, 2022, but the responses were insufficient. To start, the interrogatories were unverified. Upon being notified of this deficiency that same day, Defendant's counsel informed Plaintiff's counsel that the verifications "should" be coming on September 19, 2022. They did not come, and Plaintiff's counsel subsequently reached out to counsel for Defendants Gardiner and Sikanich on September 21, 2022, September 27, 2022, September 30, 2022, and October 10, 2022, seeking verified answers. Finally, Plaintiff requested a LR37.2 meet and confer on the subject on October 11, 2022. On October 13, 2022, the day of the scheduled meet and confer, Defendants provided verified answers, which contained material changes in substance from the initial unverified answers.

Plaintiff's counsel sent correspondence seeking a second LR37.2 as to these defendants' responses on November 18, 2022, this time as to their substantive inadequacies. **Exhibit 1,** Plaintiff's November 18, 2022 LR37.2 Letter. Plaintiff requested Defendants' counsel's availabilities for the week of November 28, 2022, but Defendant's counsel did not provide them upon receipt of the letter. Plaintiff followed up on November 28, 2022, and the parties scheduled a conferral for December 1, 2022; on December 1, however, counsel for Defendants informed Plaintiff's counsel that he would not be attending due to other obligations. The parties rescheduled for December 8, 2022, and conferred productively on that date, agreeing that Defendants would respond in writing on December 21, 2022 to Plaintiff's LR37.2 issues. **Exhibit 2**, Plaintiff's summary of December 8, 2022 LR37.2 conferral. (Present at the telephonic conferral were

Defendants' Attorney Tom Carroll and Plaintiff's Attorneys Dan Lastres, Joseph DiCola, Ashley Rodriguez, and Daniel Massoglia.) December 21 came and went without response.

On December 22, 2022, Plaintiff's counsel called counsel for Defendants Gardiner and Sikanich several times to inquire as to the status of Defendants' written response following the conferral. Each time, twice at 9:14am, and again at 9:26am, the phone number immediately returned a busy signal. On a hunch, Plaintiff's counsel then blocked his number using the telephone prefix *67, called the same number at 9:27am, and immediately was connected to the firm's office, whose staff indicated that counsel was unavailable. Soon after, that same day, Defendants' counsel contacted Plaintiff's counsel via email, seeking additional time to respond. Plaintiff acceded to this extension, but informed that it would be the last one. On December 28, 2022, no response came from Defendants. In sum, the parties have been unable to resolve the contested discovery issues described in this motion despite LR37.2 conferral and repeated attempts at out-of-court resolution.

Separately, Plaintiff's counsel—and counsel for certain officer Defendants—have, over recent months, requested deposition availabilities from Defendants Gardiner and Sikanich on multiple occasions, including at a November 4, 2022 conferral among all parties regarding the logistics of those depositions with regard to order of questioning. Defendants never provided availabilities. Plaintiff's counsel most recently requested deposition availabilities on December 8, 2022 during the LR37.2 meet and confer, and was told that Defendants would provide potential dates on December 21, 2022 along with their written responses on discovery. To date, however, no availabilities have been offered in response to any of these discussions or requests.

Plaintiff now seeks Court intervention ordering Defendants to respond fully to his written discovery requests, and to provide availabilities between February 9 and February 23, 2023 for their depositions. Plaintiff also, given Defendants' glaringly insufficient written discovery

3

responses, unjustified objections, and consistently dilatory course of conduct, seeks an award per Fed. R. Civ. P. 37(a)(5) of expenses incurred in bringing this Motion.

## ARGUMENT

"The initial inquiry in enforcement of any discovery request is one of relevance." *Autotech Techs. Ltd. Partnership v. Automationdirect.com, Inc.*, 235 F.R.D. 435, 440 (N.D. Ill. 2006). After relevance is established "the burden is on the party objecting to a discovery request to establish the request is improper." *Doe v. Loyola Univ. Chicago*, No. 18 CV 7335, 2020 WL 406771, at *2 (N.D. Ill. Jan. 24, 2020). Requests should be proportional to the needs of the litigation, which may be assessed through a balancing of factors outlined in Fed. R. Civ. P. 26(b)(1). As explained below, Plaintiff's requests are relevant, and further, both proportional to the needs of the litigation and not properly subject to any other grounds for withholding. Defendants' objections, for their part, are either facially inadequate, conflate discoverability with admissibility, or were addressed by Plaintiff during the LR37.2 conferral. In no cases do the objections meet Defendants' burden of establishing that Plaintiff's requests are improper. The Court has broad discretion whether to compel discovery, *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 235 F.R.D. 447, 450 (N.D.Ill.2006), and in this case, the Motion should be granted.

   I.   THE CONTESTED REQUESTS

   A. **Interrogatories to Defendants Gardiner and Sikanich**

   1. Plaintiff's Interrogatory 4 to Defendant Gardiner and Sikanich.

This interrogatory sought information regarding other lawsuits that Defendants had been involved in. **Exhibit 3**, Plaintiff's Interrogatories. Defendant Gardiner's response identified multiple suits in which he is currently a Defendant, but did not include multiple civil actions related to orders of protection that he was party to, including with a witness. **Exhibit 4**, Defendants'

4

Responses. Defendant Sikanich also did not include information about an order of protection proceeding with the same witness (or any other potential litigation).

2. <u>Plaintiff's interrogatory 7 to Defendants Gardiner and Sikanich</u>.

This interrogatory sought information regarding Defendants prior arrests. **Exhibit 3**. Defendants declined to respond, arguing that this information would not be admissible at trial. **Exhibit 4**. As Plaintiff noted in his LR37.2 correspondence, the standard in discovery is not admissibility, but *relevance*. Fed. R. Civ. P. 26(b). Arrest histories are relevant, and furthermore, potentially admissible under Fed. R. Evid. 404(b). Plaintiff notes that one of Defendant Sikanich's prior arrests is for impersonating a police officer, conduct that is similar to that at issue here.

3. <u>Plaintiff's Interrogatory 12 to Defendants Gardiner and Sikanich</u>.

This interrogatory sought information regarding non-privileged communications related to Plaintiff and the instant lawsuit. **Exhibit 3**. After objections of breadth and relevance, Defendants stated that they had no written communications, which was not what the interrogatory asked. **Exhibit 4**. Plaintiff is currently deciding whether to depose additional former employees of Defendant Gardiner; information from Defendants as to their communications with employees who were present in the Ward office on August 19, 2019 would have evidentiary value and also could streamline the case.

Plaintiff also noted during the LR37.2 that, although this portion of the answer is non-responsive, Defendant's comment about the non-existence of written communications is highly unlikely to be accurate—for example, a request for comment from a member of the media on the suit that would likely have been discussed internally within Defendant Gardiner's office. This request is proportional and relevant—what named Defendants are saying about an action has

potential impeachment or evidentiary value, and Plaintiff is entitled to this information prior to deposing these men.

4. Plaintiff's Interrogatory 23 to Defendants Gardiner and Sikanich.

This Interrogatory sought information regarding disciplinary oversight, and investigatory inquiries into the conduct of Defendants Gardiner and/or Sikanich. **Exhibit 3.** Defendants objected that "City of Chicago constituent entities," was vague, and Plaintiff clarified at the LR37.2 conferral that this means any department, division, component, or subpart of the City of Chicago the corporate entity. **Exhibits 4, 1**. Defendants said they would respond, but have not. **Exhibit 2**.

5. Plaintiff's Interrogatory 24 to Defendant Gardiner.

This interrogatory sought information regarding Defendant Gardiner's use of social media to monitor critics. **Exhibit 3**. Defendant Gardiner objected on the grounds of vagueness and relevance. **Exhibit 4**. The request is not vague: it asks whether Defendant Gardiner or his employees have kept or do keep tabs on people critical of him through social media, as one former employee has testified that they do in her deposition in this matter. The manner in which Defendant Gardiner uses social media as it pertains to residents of the Ward is relevant to, for example, the scope of Alderman Gardiner's employment and color of law, which are disputed. It is also relevant on Fed. R. Evid. 404(b) grounds given that multiple residents of Chicago's 45th Ward have reported being confronted or harassed at their homes by Defendant Gardiner or those acting on his instructions following critical comments online. Defendant Gardiner (and Defendant Sikanich) in this matter traveled to Plaintiff's home in response to a perceived threat—Plaintiff's possession of a lost phone. These similarities are distressing, potentially admissible, and certainly discoverable.

**B. Requests for Production to Defendants Gardiner and Sikanich**

1. Plaintiff's RFP 2 to Defendants Gardiner and Sikanich.

This RFP sought records of interactions among individuals present on August 19, 2019's complained of events. **Exhibit 5**, Plaintiff's RFP. Given that the case contains a live conspiracy claim, and that some documents produced show correspondence between Defendant Gardiner and Defendants Corona and Palka on August 19, 2019, it is also relevant and important to Plaintiff's case. Defendants objected that a request for records of interactions among witnesses is overbroad, **Exhibit 6**, Defendant's Responses, and Plaintiff clarified during the LR37.2 conferral that it was not intended to require production of the entirety of every communication ever occurring between Defendants Gardiner and Sikanich. He restated the RFP at that point as seeking communications between Defendant Gardiner and Sikanich regarding the arrest, prosecution, and lawsuit; and between Defendant Gardiner or Defendant Sikanich and the Officer Defendants on any topic. Counsel for Defendants Gardiner and Sikanich indicated that they would produce additional records or clarify their objections in written responses, but they did neither.

2. Plaintiff's RFP 3 to Defendants Gardiner and Sikanich.

This RFP sought correspondence created by or otherwise including Defendants Gardiner and/or Sikanich regarding Plaintiff or this lawsuit since August 19, 2019. **Exhibit 5**. Defendant Without objection, Defendant Gardiner provided 5 pages of documents, and Defendant Sikanich provided none. **Exhibit 6**. Plaintiff believes this response to be incomplete. It does not include, for example, responses to media inquiries regarding the lawsuit, or discussion of how to respond to media inquiries regarding the lawsuit. Those records would be responsive, but are not a limitation on Plaintiff's request, merely an illustration of one category of document that may be responsive but not produced, and a suggestion that other categories may exist as well. Furthermore, a witness—a former employee of Defendant Gardiner—testified at deposition Defendants Gardiner and Sikanich regularly communicated by text message. It is hard to accept that Defendants possess

7

*no* records of communications about this incident or lawsuit given their routine electronic communications and the fact that they were in regular contact prior to August 19, 2019, on that day, and also in following years due to their personal and employment relationship.

    3. Plaintiff's RFP 5 to Defendants Gardiner and Sikanich.

This RFP sought documents related to Defendants' criminal convictions or arrests. **Exhibit 5**. Defendants objected as to breadth and perhaps relevance, and produced no records; Defendant Gardiner indicated that he did not withhold any records based upon his objections. **Exhibit 6**. Defendant Sikanich also so stated. **Exhibit 6**. This stretches credulity. For example, Defendant Sikanich is currently being prosecuted for firearm and official misconduct charges, Case No. 22CR0461501 in the Circuit Court of Cook County, and Plaintiff finds it difficult to accept that a person would not have possession, custody, or control of any non-privileged records of an ongoing criminal prosecution against them. Defendant Sikanich is currently, for example, released on bond. Does he have documentation of the conditions of his release?

    4. Plaintiff's RFP 7 to Defendants Gardiner and Sikanich.

This RFP sought text messages related to this lawsuit. **Exhibit 5**. In addition to argument made as to RFP 3, above, Plaintiff believes Defendant Gardiner's response to this Request is incomplete. Although several screenshots of text messages between Defendant Gardiner and Chicago police officers and a Chicago firefighter from August 19, 2019 were produced by Defendant Gardiner as JG 1-5, one does not appear to display the complete conversations they covered. **Exhibit 7**, JG production. In addition to making a full production, Plaintiff requests that Defendant Gardiner describe the search he performed of his phone and clarify whether he has searched personal and City-issued phones if he possesses both types of device. Plaintiff similarly requests that Defendant Sikanich perform similar searches and offer similar descriptions, and if

8

Defendant Sikanich's City-issued phone is not in his custody or control, as seems likely given the termination of his City employment earlier this year, that Defendant City perform a search of his phone and describe the nature of the search.

5. Plaintiff's RFPs 8 and 10 to Defendants Gardiner and Sikanich.

These Requests sought records of the Chicago Board of Ethics and Cook County Democratic Party investigation(s) into Defendant(s). **Exhibit 5**. Both Defendants objected to these Requests on the basis that they were "overbroad and seek[] information which is not reasonably calculated to lead to the discovery of admissible evidence," stating further, "the subject matter of any such investigation[s] ha[ve] nothing to do with the subject matter of this lawsuit." **Exhibit 6.** Plaintiff contends that these investigations of both Defendants are plainly relevant where Defendants' abuse of their government office is at the heart of Plaintiff's claim, relevant where scope of employment and color of law are contested, and further that the bald assertion by defendants that the subject matter "has nothing to do" with the lawsuit is an assessment that Plaintiff, not Defendants, is entitled to make. A conclusory, thinly supported, and self-serving statement does not show that a request is improper. Plaintiff thus requests production.

6. Plaintiff's RFP 9 to Defendants Gardiner and Sikanich.

This Request sought records of the Federal Bureau of Investigation's investigation into Defendant(s). **Exhibit 5**. Both Defendants objected to this Request on the basis that it is "overbroad and seeks information which is not reasonably calculated to lead to the discovery of admissible evidence," stating further, "the subject matter of any such investigation has nothing to do with the subject matter of this lawsuit, and no such matters have been adjudicated, bringing such matters within the ambit of evidence rule 609." **Exhibit 6**. As noted with regard to RFPs 8 and 10, assertions that "any investigations have nothing to do with the subject matter of this lawsuit" are

not determinations Defendants are entitled to make, particularly given the spirit of withholding that characterizes their actions in discovery.

Further, consideration under Fed. R. Evid. 609 is premature at the discovery stage where records need not necessarily be admissible to be considered relevant. Fed. R. Civ. P. 26(b). Documents related to the FBI's investigation into Defendants are relevant where Defendants' misuse of their governmental authority is central to Plaintiff's claims. Furthermore, Fed. R. Evid. 609 is not the only mechanism for use of any material responsive to this RFP; for example, responsive records could later be admissible under Rule 404(b).

7. <u>Plaintiffs RFP 14-18 to Defendants Gardiner and Sikanich</u>.

These Requests seek records of electronic messages, sent or received via several media, pertaining to various subjects germane to this lawsuit. **Exhibit 5**. Defendant Sikanich responds, "None" to each request, indicating he has never discussed this lawsuit in writing in any electronic format. **Exhibit 6**. Plaintiff requests Defendant Sikanich confirm, and if the answer remains none, asks that the Court schedule a hearing to establish procedures to verify this statement's veracity.

Defendant Gardiner responded with the aforementioned five text screenshots. **Exhibit 6, 7**. Plaintiff requests that Defendant Gardiner confirm that this is the entirety of his electronic communications, and if the answer is yes, ask the Court to schedule a hearing similar to that requested above with regard to Defendant Sikanich's Response to this RFP.

II.     **PLAINTIFF'S REQUESTS ARE RELEVANT**

As noted above, the threshold consideration in a discovery dispute is one of relevance. Plaintiff's requests do not stray from this guidepost. He seeks impeachment material and 404(b) material related to prior arrests and social media activity, which could show motive, opportunity, preparation, plan, or other *modus operandi* evidence that is in this district discoverable and often

admissible.[1] Interrogatory 4, 7, 24; RFP 5; *see Hill v. City of Chicago*, No. 06 C 6772, 2011 WL 3840336, at *6 (N.D. Ill. Aug. 30, 2011) (allowing some non-propensity prior acts evidence to show preparation and plan in 1983 action where underlying conduct similar to that action); *see also Hunter v. WirelessPCS Chicago LLC*, No. 18 CV 980, 2021 WL 4621889, at *4 (N.D. Ill. Oct. 5, 2021) (Jantz., J) (allowing deposition questions into arrest histories as properly discoverable and noting that admissibility concerns as to this information are premature). He seeks information about other proceedings the Defendants have been involved with, including with witnesses to the events of this lawsuit. Interrogatory 4; *see Powerlift, Inc. v. Mark Indus., Inc.*, No. 86 C 2055, 1987 WL 12177, at *1 (N.D. Ill. June 9, 1987) (compelling deposition answers regarding a party's participation in other legal proceedings). He seeks records of disciplinary and oversight investigations into the Defendants' conduct that bear directly on his theories of the present case and that relate to contested legal issues related to scope of employment and color of law, and additionally implicate Rule 404(b). Interrogatory 23; RFP 8-10; *see Grayson v. City of Aurora*, No. 13–cv–01705, 2013 WL 6697769, at *3–6 (N.D.Ill. Dec. 19, 2013) (personnel files—including disciplinary records—of defendants in police misconduct lawsuit discoverable as they may lead to Rule 404(b) admissible evidence). These investigations further may contain documentation of other inquiries into Defendants' conduct toward Plaintiff that has been assembled by other entities, meaning that production would streamline discovery and promote efficiency by reducing the need for Plaintiff to duplicate efforts. He seeks information about

---

[1] By means of illustration, Plaintiff believes that Charles Sikanich has been arrested for impersonating a police officer, conduct that bears a similarity to his actions August 19, 2019. Further, there are many reports—both public and from a witness in this case—of Defendant Gardiner's traveling to the homes of people in the Ward in order to confront them after critical social media posts, similar to Defendant Gardiner's confrontation with Plaintiff's roommate and landlord at *his* home. There is also another 404(b) purpose—motive—given that witness testimony at deposition indicates that Defendants Gardiner and Sikanich coordinated harassment of critics on their cell phones, which suggests that their explosive response to Sikanich's lost phone was driven at least in part by fear of being discovered for prior misdeeds.

interactions among defendants, and communications about the lawsuit and the day's events, relevant to show how Defendants' stories have changed, whether they have, and who may know additional facts about the complained-of conduct. Interrogatory 12; RFP 2, 3, 7, 14-18.

At present, however, Plaintiff simply does not know the answers to any of these questions, and has no means to comprehensively prosecute his action as a result of it—this is not the manner of discovery anticipated by the rules. *See, e.g.*, *Est. of Daniels by Stover v. City of Indianapolis*, No. 120CV02280JRSMJD, 2021 WL 4844145, at *1 (S.D. Ind. Oct. 18, 2021) ("Under the Federal Rules of Civil Procedure, litigants are afforded liberal discovery"); *Rubin v. Islamic Republic of Iran*, 349 F. Supp. 2d 1108, 1111 (N.D. Ill. 2004) ("courts commonly look unfavorably upon significant restrictions placed upon the discovery process.")

### III. PLAINTIFF'S REQUESTS ARE PROPORTIONAL

Under the considerations enumerated by the Rules of Civil Procedure, Plaintiff's Requests are proportional, and Defendants' contentions do not offer any reason to conclude otherwise.

Federal Rule of Civil Procedure 26(b)(1), outlining the scope of discovery, reads:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

#### A. The Importance of the Issues at Stake in this Action is Great

Plaintiff's requests are proportional to the needs of the action considering the importance of the issues at stake, a fact favoring the granting of this motion. This is a police and official misconduct lawsuit brought under 42 U.S.C. § 1983 following a false arrest and pattern of

harassment that caused loss of property, liberty, catastrophic emotional injury, and that forced Plaintiff to leave the state. It features as Defendant Officers who have been repeatedly sued for misconduct, and Defendant officials who have repeatedly abused their authority. The judicial system's interest in ensuring that officers and public officials are held accountable for false arrest and violations of due process and equal protection rights are great, and the Civil Rights Act has been recognized by this Circuit as a critical tool both for ensuring justice for victims and deterring future violations of the constitution. *Cartwright v. Stamper*, 7 F.3d 106, 109 (7th Cir. 1993).

The records in dispute are a small matter when placed beside Plaintiff's interest in effectively prosecuting his action, society's interest in public life where the vindictive whim of a powerful official does not lead to wrongful arrest, and the court system's interest in seeing constitutional rights vindicated where violated. This factor tends towards compelled production.

### B. The Amount in Controversy is Significant

Plaintiff was arrested and subjected to serious emotional injury because of the unreasonable and otherwise culpable actions of Defendants. He briefly became homeless, was hospitalized, and eventually was forced to move from the state. His firearm was seized and not returned. His reputation, business ties, and social relationships were eviscerated in his community. The potential compensatory damages for the injuries he sustained are significant. A jury could also award punitive damages to Plaintiff based on the manner in which Defendants injured him—Defendants, including Defendants Gardiner and Sikanich, consistently seem to view official authority as a sword to swing at perceived threats or critics. This factor tends towards compelled production.

### C. The Parties' Relative Access to the Relevant Information Favors Disclosure

The third proportionality factor also favors Plaintiff. As a member of the public who experienced police abuse and official misconduct and subsequently filed suit, he has no access to,

13

for example, Defendants' text messages, emails, Facebook messages, or records with oversight or law enforcement investigations. With regard to the unanswered interrogatories, he does not know the contents of their minds or what happened that day. The Defendants, on the other hand, possess the sought records and know the answers to the simple questions Plaintiff has asked.

### D. The Sought Discovery is Important to Resolving Contested Issues

This proportionality factor also favors Plaintiff and disclosure is appropriate. It is difficult to point to a single response that would conclusively settle any material issue, but at present, Plaintiff is working with what is virtually a blank slate. He has almost no records or information about, for example, the interactions between Defendants Gardiner, Sikanich, and the Defendant Officers on August 19, 2019, information which plays a role in virtually all of his claims. He has no or incomplete evidence with which to impeach Defendants, or to prove that their actions fall within permissible Rule 404(b) uses. The discovery responses and conduct are wholly inadequate.

### E. The Benefit of the Proposed Discovery Outweighs the Burden or Expense

Burden to Defendants of producing these relevant records and answering the relevant interrogatories is minimal, while the benefits to Plaintiff are multiple. For example, Plaintiff's request for communications among defendants about the lawsuit may give valuable insight into their state of mind and intent, relevant to plaintiff's claims, or may provide a window into shifting justifications for their actions. They may contain evidence of retaliation. Plaintiff's requests for arrest, oversight, and disciplinary records may provide evidence later admissible under Fed. R. Evid. 404(b), may lead to the discovery of witnesses unknown to him, or may generate other evidentiary value. Defendants are amply resourced to provide the reasonable requested information, particularly given that it would not require, for example, extensive correspondence

with third parties or the retention of an e-discovery vender to satisfy and in many cases would simply require them to provide truthful answers to questions they already know the answers to.

## IV. AN AWARD OF EXPENSES IS APPROPRIATE UNDER RULE 37(a)(5)(A)

Courts must assess expenses incurred in making a successful Motion to Compel against the party or attorney whose conduct necessitated the Motion unless

    (i)    the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
    (ii)    the opposing party's nondisclosure, response, or objection was substantially justified; or
    (iii)    other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(a)(5)(A).

In this case, as outlined throughout the Motion, each factor counsels in favor of an award of expenses. Plaintiff repeatedly attempted in good faith and without success to obtain discovery. The non-disclosure and non-response, and objections, are not substantially justified. And there are no other circumstances (known to Plaintiff) that would render an award unjust. *See Rickels v. City of S. Bend, Ind.*, 33 F.3d 785, 786 (7th Cir. 1994) (Rule "presumptively requires every loser to make good the victor's costs"); *see also Lorillard Tobacco Co. v. Elston Self Serv. Wholesale Groceries, Inc.*, 259 F.R.D. 323, 328 (N.D. Ill. 2009) (awarding expenses where "record evince[d] strong scents of noncompliance and evasive conduct").

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter an Order compelling responses and production in response to the attached interrogatories and requests to produce, instructing Defendants Gardiner and Sikanich to make themselves available for deposition on three separate dates between February 9 and February 23, 2023, and awarding Plaintiff expenses incurred in the Motion, including reasonable attorney's fees, if it is granted.

Respectfully submitted,

/s/Daniel Massoglia

*One of Plaintiff's Attorneys*

Daniel Massoglia
First Defense Legal Aid
601 S. California Ave.
Chicago, IL 60612
P: 708-797-3066
E: daniel@first-defense.org
*One of Plaintiff's Attorneys*

## CERTIFICATE OF SERVICE

      I, Daniel Massoglia, an attorney, hereby certify that I served a copy of this document on December 30, 2022 on all counsel of record by filing it with the Court's CM/ECF system, which generates electronic notice to counsel.

      Respectfully submitted,

      /s/Daniel Massoglia
*One of Plaintiff's Attorneys*