# Exhibit 4 - Defendant Gardiner's and Sikanich's (second, verified) Responses to Plaintiff's Interrogatories

# Defendant Gardiner's (second, verified) Answers to Interrogatories

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **Benjamin George,** ) | |
| ) | Case No. 20-cv-06911 |
| **Plaintiff,** ) | |
| ) | Hon. Judge Blakey |
| v. ) | |
| ) | Hon. Magistrate Judge Jantz |
| **City of Chicago, James Gardiner,** ) | |
| **Charles Sikanich, Chicago Police Officers** ) | |
| **Solomon Ing, Peter Palka, Daniel Smith,** ) | |
| **Bilos, Joseph Ferrara, Sergio Corona,** ) | |
| **Ortiz, and Unknown Chicago Police** ) | |
| **Officers,** ) | |
| ) | |
| **Defendants.** ) | |

**DEFENDANT JAMES GARDINER'S ANSWERS
TO PLAINTIFF'S INTERROGATORIES**

Defendant James Gardiner ("Defendant"), by and through his attorneys, responds or objects to Plaintiff's Fed. R. Civ. P. Rule 33 Interrogatories as follows:

**INTERROGATORIES**

1. Please state the names and the addresses of each Person who participated in or was consulted regarding answering these interrogatories, the specific interrogatories as to which such Person answered or consulted, and, if applicable, the Person's official position or relationship with City of Chicago or the Alderman of the 45th Ward of the City of Chicago.

RESPONSE: James Gardiner (address available through counsel), who was assisted by his attorney, the undersigned.

2. Identify all, if any, disciplinary action taken by the City of Chicago against you during your tenure as Alderman for the 45th Ward of the City of Chicago and the dates of such disciplinary actions.

RESPONSE: None.

3. Please identify all, if any, disciplinary action taken by the Chicago Fire Department against you during your tenure in any other employment for the City of Chicago,

    including police, firefighters, or any other municipal agency, and the dates of such disciplinary actions.

RESPONSE:  None.

4. Have you ever been a party to a lawsuit? If so, state:
   i. The court in which the case(s) was/were filed;
   ii. The year(s) filed;
   iii. The title and docket number(s) of the case(s); and
   iv. The outcome of said case(s).

RESPONSE:  Aside from the instant lawsuit, Defendant has been or is currently involved in the following civil matters:
    *Czosnyka, et al., v. Gardiner*, 21-cv-3240, N.D. Illinois, 2021. Pending.
    *Suh v. Gardiner*, 2021CH05551, Circuit Court of Cook County, 2021. Pending.

5. Identify each of your employers, in chronological order, starting with your graduation from high school and including all current and part-time employment. In your answer include the following:

   i. The name and address of each employer;
   ii. The date you began such employment;
   iii. A general description of your job duties;
   iv. The date of termination of said employment;
   v. A general description of your job duties at the time of said termination;
   vi. The reason for your termination; and
   vii. Whether you were the subject of any employer discipline during your employment, and the facts and outcome thereof.

RESPONSE:  Objection. The interrogatory is overbroad and seeks information that is not reasonably calculated to lead to the discovery of admissible evidence. Defendant's entire work history since high school has nothing to do with the subject matter of this lawsuit, which focuses on discrete events during his time as an employee of the City of Chicago. Any instance of work-related discipline outside of that context would be inadmissible at trial. Notwithstanding the objection, Defendant states that he was employed by the following entities during the following approximate time periods:

    **Stationary Engineer**, Local Union 399, (1994 – 1998), operated stationary machinery based on union assignments.
    **Special Education Teacher**
        Sonia Shankman Orthogenic School, (2002 – 2003)
        De La Cruz Grammar School, (2003 – 2004)
        Marie Curie High School, (2004 – 2005)
        Taft High School, (substitute), (2005 – 2011)
    **Chicago Firefighter**, (2005 – May of 2019)
    **Alderman of Chicago's 45th Ward**, (May of 2019 – present).

2

6. List each high school, college, university, graduate school, trade or technical school attended. For each institution provided, please state:
   i. The name of educational institution attended;
   ii. The dates attended;
   iii. Whether you were the subject of any disciplinary proceedings or actions during your time at said institution, and the facts and outcome thereof; and
   iv. What degree or certificate you received, if any, from said institution.

RESPONSE: Objection. The interrogatory is overbroad and seeks information that is not reasonably calculated to lead to the discovery of admissible evidence. Specifically, any instance of school-related disciplinary actions would be inadmissible at trial, and have no bearing on the subject matter of this lawsuit. In addition, minor children are generally protected from having to share the contents of any school disciplinary records once they achieve the age of majority. Notwithstanding the objection, Defendant attended the following schools during the following approximate time periods:

**Notre Dame College Prep**, (1990 – 1994), high school diploma
**Triton College**, (1998 – 1999), associate's degree
**Northern Colorado University**, (1999 – 2000), no degree
**St. Xavier University**, (2000 – 2002), bachelor's degree, education

7. Have you ever been arrested, irrespective of whether the arrest has been expunged or sealed? If so, please state for each arrest:
   i. The date and location of arrest
   ii. The arresting authority and names of all arresting officers;
   iii. Whether any criminal charges were filed in connection with the arrest and, if so, the jurisdiction and disposition of the arrest; and
   iv. Whether the records of the arrest have been expunged or sealed.

RESPONSE: Objection. The interrogatory is overbroad and not reasonably calculated to lead to the discovery of admissible evidence. Defendant's arrest history is not germane to any direct allegation or issue within the complaint. According to Federal Rule of Evidence 609, the only sort of criminal background evidence that may be admitted at trial in order to impeach a defendant witness in a civil matter is evidence of criminal convictions within the last 10 years for felonies (crimes punishable by death or imprisonment for not less than one year), or crimes in which an element of the crime is an act of dishonesty. Even then, for defendant witnesses, the court must engage in a probative/prejudicial balancing test before deciding whether such evidence may be admitted. Arrest records or history standing alone are rarely admissible absent some direct nexus between a given arrest and the facts of the case at hand. No such nexus exists under these circumstances.

8. Identify, by full name any employees of yours who had any contact with Plaintiff Benjamin George on August 19, 2019.

3

RESPONSE: None, to Defendant's knowledge.

9. Identify all, if any, disciplinary you have taken against Defendant Sikanich during his tenure with Streets and Sanitation for the City of Chicago and/or as Ward Super for the 45th Ward of the City of Chicago, and the dates of such disciplinary actions.

RESPONSE: Defendant Sikanich was placed on administrative leave from the City of Chicago and his duties in Defendant's office as of April 27, 2022, and was dismissed for official misconduct on June 22, 2022.

10. Identify, by full name and badge number, which City of Chicago Police Officers had any contact with you on August 19, 2019, and describe the nature of these contacts.

RESPONSE: Sergio Corona, badge number unknown, called Defendant to discuss the events of the day regarding Sikanich's lost phone and Defendant briefly thanked him for his assistance in recovering the phone. The conversation took place at approximately 6:30 p.m.

Peter Palka, badge number unknown, texted, then called Defendant to discuss the events of the day regarding Sikanich's lost phone and Defendant briefly thanked him for his assistance in recovering the phone. The conversation took place at approximately 6:55 p.m.

11. Did you travel to Robert Cantrell's house on August 19, 2019, or call him on the phone, or otherwise have contact with Robert Cantrell? Please describe in detail any and all interactions with Robert Cantrell on that date, including, but not limited to, any discussion of his profession as a Chicago Firefighter, his living arrangements with Plaintiff, or any other matter. This request should be interpreted to include actions of any of your employers, employees, or coworkers, both current and former; these individuals should be identified by name and title.

RESPONSE: Objection. The interrogatory is overbroad and vague, in an improper compound form, seeking a lengthy narrative answer regarding a number of different topics that are not differentiated in a comprehensible way. Notwithstanding the objection, Defendant states that he traveled to Robert Cantrell's home on the date in question in order to talk with him about his roommate George's apparent possession of Sikanich's phone, George's choice to turn off the phone or otherwise disable location and calling functions, and his failure to turn it in immediately. Defendant expressed his belief that George should return the phone immediately so as to avoid any further trouble. He was aware that Cantrell was a firefighter and their common history in that regard may have come up during the conversation, but the conversation was primarily focused on encouraging Cantrell to convince his roommate to return Sikanich's phone.

12. Identify each person with whom you have had any non-privileged communications regarding the arrest and prosecution of Benjamin George, and/or the present lawsuit. As to each person identified:

        A. Set forth the date of the communication;
        B. Set forth the nature of the communication;

4

   C. Identify any other person present when the communication occurred;
   D. Identify each document relating to such communication; and
   E. Identify the present custodian of any document identified in your answer to (D).

RESPONSE: Objection. The request is overbroad and not reasonably calculated to result in the discovery of admissible evidence. Defendant is not obligated to provide a granular account, by date, of every discussion he may have had regarding this lawsuit. Notwithstanding the objection, Defendant is not in possession, custody or control of any non-privileged documents reflecting a written communication regarding the lawsuit or Benjamin George other than what has been produced.

13. Did you speak with Plaintiff, by phone or in person, at any point on August 19, 2019? If so, please describe any such interaction in detail, including any profanity used in such an interaction.

RESPONSE: No.

14. Did you have any interactions with Plaintiff prior to or after August 19, 2019? If so, please describe any such interaction in detail.

RESPONSE: No. Defendant had never heard of Plaintiff prior to the date in question and has never seen him in person or interacted with him directly, to his knowledge.

15. Did you have any interactions with or approach Robert Cantrell, Plaintiff's former roommate and landlord, by phone or in person, prior to or after August 19, 2019, including, but not limited to conversations regarding his work as a Chicago firefighter, his living arrangements with Plaintiff, or any other matter? If so, please describe any such interaction in detail.

RESPONSE: Defendant does not recall any such interactions, though it is possible they had crossed paths prior to August 19, 2019 in their respective capacities as firefighters. Aside from the interactions described above, they have never interacted since or discussed the subjects of this lawsuit.

16. Did you personally know any of the police officers of the 16th District police station prior to August 19, 2019? If so, please give the names of any such officer and describe the nature of the relationship.

RESPONSE: The only officers from that district with whom defendant was acquainted prior to the date in question were two officers, Steven and David Hoski. Defendant attended grammar school with both officers, and maintained cordial relations through mutual acquaintances over the years since they had grown up together.

17. Regarding the event in question, how were you made aware of Charles Sikanich's missing phone on August 19, 2019?

RESPONSE: Sikanich reported that his phone was missing and that he was unable to use location services or reach anybody when attempting to call it in the late morning of August 19, 2019. Defendant does not recall if this information was conveyed in person or over a phone call.

18. Did you obtain the home address of Plaintiff on August 19, 2019, and if so, how?

RESPONSE: Defendant was generally aware of where Mr. Cantrell lived by virtue of their shared background as firefighters and Defendant's frequent canvassing and activities in the Ward's neighborhoods. Defendant did not necessarily "obtain" the address, but upon hearing the name Robert Cantrell in connection with the missing phone, he knew where Mr. Cantrell lived.

19. Did you have any interactions with any of the police officers of the 16th District police station regarding this matter on or after August 19, 2019? If so, please describe such interactions in detail.

RESPONSE: All such interactions are described in the answer to interrogatory no. 10.

20. Did any of your employees have any interactions with any of the police officers of the 16th District police station regarding this matter on or after August 19, 2019? If so, please describe such interactions in detail to the best of your abilities.

RESPONSE: Not to Defendant's knowledge.

21. Did you provide any direction to any of your employees or to the police officers of the 16th District police station regarding how this case should be dealt with or charged? If so, please describe such instructions in detail.

RESPONSE: No, nor would it have been within Defendant's powers or duties to do so.

22. Did you make any posts on any social media or like messaging platforms (such as but not limited to Snapchat, Instagram Stories, Twitter Fleets) or direct any of your employees to do so regarding any of the following:
    i. A missing mobile phone;
    ii. Plaintiff's arrest;
    iii. Plaintiff's prosecution;
    iv. The instant lawsuit.

If so, please identify these posts by date and contents. This interrogatory serves as an instruction to preserve contents of said social media accounts

RESPONSE: No.

23. Identify all disciplinary, investigatory, or oversight inquiries began or concluded by a City of Chicago constituent entity into the conduct of Charles Sikanich or James

Gardiner. This interrogatory is limited to those actions begun after August 19, 2019 and continues to the present

RESPONSE: Objection. The interrogatory is vague. Defendant is uncertain of what Plaintiff means by a "City of Chicago constituent entity."

24. Have you used any social media or like messaging platforms (such as but not limited to Snapchat, Instagram Stories, Twitter Fleets) or directed any of your employees to do so to monitor critics of your work or tenure as 45th Ward Alderman for the City of Chicago?

RESPONSE: Objection. The interrogatory is vague. Defendant is uncertain of what is meant by "monitoring critics of [his] work" or what such actions might involve. Further, Defendant objects because this interrogatory is not germane to the subject matter of this lawsuit, and not reasonably calculated to lead to the discovery of admissible evidence.

25. Why did you instruct Charles Sikanich to report his lost phone as "stolen" on August 19, 2019?

RESPONSE: Defendant denies that any such instruction was given. Defendant states that when he first learned from Sikanich that his phone was missing, he understood that Sikanich had already contacted police.

Dated: October 4, 2022

        Respectfully Submitted,

        THOMAS R. RAINES ATTORNEY AT LAW, LLC

        /s/ Thomas D. Carroll
        Thomas D. Carroll
        Attorney
        Thomas R. Raines Attorney at Law, LLC
        20 N. Wacker Dr., Suite 556
        T: (312) 750-1166
        E: tcarroll@traalaw.com

**CERTIFICATE OF SERVICE**

The undersigned, an attorney of record for the Defendants Sikanich and Gardiner, hereby certifies that on October 13, 2022 he served a copy of the Defendant Gardiner's Answers to Interrogatories on all counsels of record via electronic mail.

/s/ Thomas D. Carroll
Thomas D. Carroll

# Defendant Sikanich's (second, verified) Answers to Interrogatories

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **Benjamin George,** | ) |
| | ) Case No. 20-cv-06911 |
| **Plaintiff,** | ) |
| | ) Hon. Judge Blakey |
| v. | ) |
| | ) Hon. Magistrate Judge Jantz |
| **City of Chicago, James Gardiner,** | ) |
| **Charles Sikanich, Chicago Police Officers** | ) |
| **Solomon Ing, Peter Palka, Daniel Smith,** | ) |
| **Bilos, Joseph Ferrara, Sergio Corona,** | ) |
| **Ortiz, and Unknown Chicago Police** | ) |
| **Officers,** | ) |
| | ) |
| **Defendants.** | ) |

## DEFENDANT CHARLES SIKANICH'S ANSWERS
## TO PLAINTIFF'S INTERROGATORIES

Defendant Charles Sikanich ("Defendant"), by and through his attorneys, responds or objects to Plaintiff's Fed. R. Civ. P. Rule 33 Interrogatories as follows:

### INTERROGATORIES

1. Please state the names and addresses of each Person who participated in or was consulted regarding answering these interrogatories, the specific interrogatories as to which such Person answered or consulted, and, if applicable, the Person's official position or relationship with City of Chicago, the Department of Streets and Sanitation for the City of Chicago, or the Alderman of the 45th Ward of the City of Chicago.

RESPONSE: Charles Sikanich (address available through counsel), who was assisted by his attorney, the undersigned.

2. Identify all, if any, disciplinary action taken by the City of Chicago and/or the Department of Streets and Sanitation for the City of Chicago, Including actions by James Gardiner, against you during your tenure with Streets and Sanitation, or in your role as Ward Super for the 45th Ward of the City of Chicago, and the dates of such disciplinary actions.

RESPONSE: Defendant was dismissed from his position as 45th Ward Superintendent, Department of Streets and Sanitation for the City of Chicago on June 22, 2022, having been

placed on leave on April 27, 2022 pending investigation, in connection with his arrest for possession of an illegal firearm, attempting to sell an illegal firearm, and official misconduct.

3. Please identify all, if any, disciplinary action taken by the City of Chicago and/or the Department of Streets and Sanitation for the City of Chicago, including actions by James Gardiner, against you during your tenure in any other employment for the City of Chicago, including any other municipal agency, and the dates of such disciplinary actions.

RESPONSE: Other than the events described in the answer to Interrogatory No. 2, none.

4. Have you ever been a party to a lawsuit? If so, state:
   i. The court in which the case(s) was/were filed;
   ii. The year(s) filed;
   iii. The title and docket number(s) of the case(s); and
   iv. The outcome of said case(s)

RESPONSE: Defendant has never been involved in a civil lawsuit prior to this one.

5. Identify each of your employers, in chronological order, starting with your graduation from high school and including all current and part-time employment. In your answer include the following:
   i. The name and address of each employer;
   ii. The date you began such employment;
   iii. A general description of your job duties;
   iv. The date of termination of said employment;
   v. A general description of your job duties at the time of said termination;
   vi. The reason for your termination; and
   vii. Whether you were the subject of any employer discipline during your employment, and the facts and outcome thereof.

RESPONSE: Objection. The interrogatory is overbroad and seeks information that is not reasonably calculated to lead to the discovery of admissible evidence. Defendant's entire work history since high school has nothing to do with the subject matter of this lawsuit, which focuses on discrete events during his time as an employee of the City of Chicago. Any instance of work-related discipline outside of that context would be inadmissible at trial. Notwithstanding the objection, Defendant states that he was employed by the following entities during the following approximate time periods:

**State of Illinois**, Student Intern, (2003 – 2004), responsible for performing clerking and filing duties.

**Archdiocese of Chicago**, Maintenance Worker, (2008 – 2011), responsible for performing maintenance and repair work at various Chicago Archdiocese properties.

2

**City of Chicago**, Department of Transportation Worker, (2011 – 2019), responsible for maintenance and public works-type duties related to City of Chicago transportation systems and conduits.

**City of Chicago**, Ward Superintendent, 45th Ward, Department of Streets and Sanitation, (May 2019 – June of 2022), responsible for attending to streets and sanitation maintenance, repairs and community/constituent interactions related to such duties within the 45th Ward. Information regarding discipline and termination appears in responses above.

6. List each high school, college, university, graduate school, trade or technical school attended. For each institution provided, please state:
    i. The name of educational institution attended;
    ii. The dates attended;
    iii. Whether you were the subject of any disciplinary proceedings or actions during your time at said institution, and the facts and outcome thereof; and
    iv. What degree or certificate you received, if any, from said institution.

RESPONSE: Objection. The interrogatory is overbroad and seeks information that is not reasonably calculated to lead to the discovery of admissible evidence. Specifically, any instance of school-related disciplinary actions would be inadmissible at trial, and have no bearing on the subject matter of this lawsuit. In addition, minor children are generally protected from having to share the contents of any school disciplinary records once they achieve the age of majority. Notwithstanding the objection, Defendant attended the following schools during the following approximate time periods:

**Weber High School**, (1997 – 1998), no degree obtained because the school closed.
**Holy Cross High School**, (1998 – 2001), high school diploma.
**Northeastern University**, (2001 – 2002), no degree obtained.

7. Have you ever been arrested, irrespective of whether the arrest has been expunged or sealed? If so, please state for each arrest:
    i. The date and location of arrest;
    ii. The arresting authority and names of all arresting officers;
    iii. Whether any criminal charges were filed in connection with the arrest and, if so, the jurisdiction and disposition of the arrest; and
    iv. Whether the records of the arrest have been expunged or sealed.

RESPONSE: Objection. The interrogatory is overbroad and not reasonably calculated to lead to the discovery of admissible evidence. Defendant's arrest history is not germane to any direct allegation or issue within the complaint. According to Federal Rule of Evidence 609, the only sort of criminal background evidence that may be admitted at trial in order to impeach a defendant witness in a civil matter is evidence of criminal convictions within the last 10 years for felonies (crimes punishable by death or imprisonment for not less than one year), or crimes in which an element of the crime is an act of dishonesty. Even then, for defendant witnesses, the court must engage in a probative/prejudicial balancing test before deciding whether such

evidence may be admitted. Arrest records or history standing alone are rarely admissible absent some direct nexus between a give arrest and the facts of the case at hand. No such nexus exists under these circumstances.

8. Identify, by full name any employees or coworkers of yours who had any contact with Plaintiff Benjamin George on August 19, 2019.

RESPONSE: Defendant is not aware of any coworkers who had contact with Benjamin George, and Defendant did not have any employees in his role as Ward Superintendent.

9. Identify all, if any, disciplinary taken against you by Alderman Gardiner or the Office of the 45th Ward Alderman of Chicago during your tenure with Streets and Sanitation for the City of Chicago and/or as Ward Super for the 45th Ward of the city of Chicago, and the dates of such disciplinary actions.

RESPONSE: This interrogatory is duplicative of interrogatory no. 2. See Defendant's answer, above.

10. Identify, by full name and badge number, which City of Chicago Police Officers had any contact with you on August 19, 2019, describe those contact and specify which officers assisted you in swearing out the criminal complaint against Plaintiff on August 19th, 2019.

RESPONSE: The only officer whom Defendant knows firsthand is Officer Palka, with whom he spoke during the morning on the day in question regarding the loss of his phone and the possible identity of the person who had taken it. Palka informed Sikanich that the phone might be in the possession of Robert Cantrell's roommate. On information and belief, Palka was one of the initial officers to investigate the theft of the phone at the 7/11 where it was initially misplaced. Defendant is not aware of Palka's badge number. Defendant is aware of the allegations of the complaint regarding which officers assisted him with the filing of the criminal complaint, but he does not have a firsthand knowledge of their names or badge numbers.

11. Did you travel to Robert Cantrell's house on August 19, 2019, or call him on the phone? Please describe in detail any and all interactions with Robert Cantrell on that date, including, but not limited to, any discussion of his profession as a Chicago Firefighter, his living arrangements with Plaintiff, or any other matter. This request should be interpreted to include actions of any of your employers, employees, or coworkers, both current and former; these individuals should be identified by name and title.

RESPONSE: Defendant did not travel to Robert Cantrell's home though he was in the vicinity of the home on the day in question for a brief time, performing official duties. He had frequent occasion to go to the block where Cantrell lived at that time. Defendant did speak with Cantrell on the phone once he was led by Officer Palka to believe that Cantrell's roommate, George, was in possession of the missing phone and had not returned it. They discussed the missing phone and Cantrell told him that he had been told that George would return the phone, but was uncertain why he had not done so. Defendant informed Cantrell that Plaintiff had apparently shut

4

off the phone, thereby disabling its tracking features, assuming he was in possession of the phone. Defendant does not have a specific recollection of discussing Cantrell's status or duties as a firefighter, or anything specific regarding his "living arrangements" with George, beyond a general understanding that George lived in the home.

12. Identify each person with whom you have had any non-privileged communications regarding the arrest and prosecution of Benjamin George, and/or the present lawsuit. As to each person identified:
    A. Set forth the date of the communication;
    B. Set forth the nature of the communication;
    C. Identify any other person present when the communication occurred;
    D. Identify each document relating to such communication; and
    E. Identify the present custodian of any document identified in your answer to (D).

RESPONSE: Objection. The request is overbroad and not reasonably calculated to result in the discovery of admissible evidence. Defendant is not obligated to provide a granular account, by date, of every discussion he may have had regarding this lawsuit. Notwithstanding the objection, Defendant is not in possession, custody or control of any non-privileged documents reflecting a written communication regarding the lawsuit or Benjamin George.

13. Did you speak with Plaintiff, by phone or in person, at any point on August 19, 2019? If so, please describe any such interaction in detail, including any profanity used in such an interaction.

RESPONSE: No.

14. Did you have any interactions with Plaintiff prior to or after August 19, 2019? If so, please identify any such interaction in detail.

RESPONSE: No.

15. Did you have any interactions with or approach Robert Cantrell, Plaintiff's former roommate and landlord, prior to or after August 19, 2019, including, but not limited to, returning to the area where he lived, even if you did not physically interact with him? If so, please describe any such interaction in detail.

RESPONSE: Objection. This interrogatory is vague and compound in nature. "Interactions" are not the same as being in proximity to a person's home without interaction. Notwithstanding the objection, Defendant states that he has not personally interacted with Robert Cantrell after August 19, 2019. Defendant also states that he has been in Mr. Cantrell's neighborhood near his home on occasion since the date in question as part of his duties as a Ward Superintendent. Defendant specifically states that Mr. Cantrell's black had a history of disturbances, some of which he was occasionally asked to deal with as part of his duties. Defendant was never on Mr. Cantrell's block with any specific purpose of being in proximity to or observing Mr. Cantrell's home, much less for purposes of interacting with Mr. Cantrell.

16. Did you personally know any of the police officers of the 16th District police station prior to August 19, 2019? If so, please give the names of any such officer and describe the nature of the relationship.

RESPONSE: Defendant was/is generally acquainted with Officer Palka prior to the date. They would exchange pleasantries, but were not acquainted on a personal level beyond general familiarity.

17. Regarding the event in question, at what point did you discover your missing phone on August 19, 2019? Describe in detail your actions when you made this discovery and the actions you took afterwards.

RESPONSE: Objection. The interrogatory's second question is vague and overbroad, and appears to request a narrative answer of uncertain specificity. Notwithstanding the objection, to the best of Defendant's recollection, he discovered that the phone was missing mid-morning, around 9:30 or 10 am. He initially tried calling the phone from another phone but the phone went straight to voicemail, implying that the call had been forwarded or the phone was shut down/powered-off. He then attempted to use the Apple phone tracking feature to see where his phone was physically located, via GPS features. This was unsuccessful, bolstering the inference that the phone feature was deactivated or the phone turned off. He then called the 45th Ward office to see if he had left the phone there or if they had some means of tracking it down. He then called the streets and sanitation department to report the problem and see what he should do about the missing phone. Later in the day, he spoke with Officer Palka regarding the phone, as described above. He was told that the phone might be in the possession of George/Cantrell's roommate, as described above, though he had no firsthand knowledge of who George was at the time. He spoke with Cantrell, as described above. Eventually, he went to the 16th District police station to complete a report of a stolen phone, reflected in Exhibit 1 to Plaintiff's First Amended Complaint.

18. Did you obtain the home address of Plaintiff on August 19, 2019, and if so, how?

RESPONSE: Defendant does not recall who informed him of Plaintiff's address or if he was given the specific address.

19. Did you have any interactions with any of the police officers of the 16th District police station regarding this matter on or after August 19, 2019? If so, please describe such interactions in detail.

RESPONSE: On information and belief, the Defendant interacted with some of the officers who are defendants to this Complaint by visiting the 16th District police station and filing out a criminal complaint on August 19, 2019. He is uncertain of precisely which officers he interacted with at that time, given that he did not know them firsthand. He also interacted with Officer Palka on the date in question, as described above. He did not interact with any 16th District officers regarding any matters related to this lawsuit after that date.

20. Did any of your employers, employees, or coworkers have any interactions with any of the police officers of the 16th District police station regarding this matter on or after August 19, 2019? If so, please describe such interactions in detail to the best of your abilities.

RESPONSE: Defendant is not aware of any such interactions.

21. Did you or any of your employers, employees, or coworkers provide any direction to the police officers of the 16th District police station regarding how this case should be dealt with or charged? If so, please describe such instructions in detail.

RESPONSE: Defendant did not personally direct officers at the 16th District to do anything, and it was not remotely within his duties or powers to do so while employed by the City of Chicago. He is not aware of any such directions provided by his employer, or coworkers, and he did not have any employees during his time of employment.

22. Did you make any posts on any social media or like messaging platforms (such as but not limited to Snapchat, Instagram Stories, Twitter Fleets) or direct any of your employees to do so regarding any of the following:
    i. A missing mobile phone;
    ii. Plaintiff's arrest;
    iii. Plaintiff's prosecution;
    iv. The instant lawsuit.

If so, please identify these posts by date and contents. This interrogatory serves as an instruction to preserve contents of said social media accounts

RESPONSE: No.

23. Identify all disciplinary, investigatory, or oversight inquiries began or concluded by a City of Chicago constituent entity into your conduct of that of your employer. This interrogatory is limited to those actions begun after August 19, 2019 and continues to the present.

RESPONSE: Objection. The interrogatory is vague. Defendant is uncertain of what Plaintiff means by a "City of Chicago constituent entity." Defendant has explained the circumstances of his termination from City employment above.

24. Have you used any social media or like messaging platforms (such as but not limited to Snapchat, Instagram Stories, Twitter Fleets) or directed any of your employees to do so to monitor critics of your work or tenure as 45th Ward Alderman for the City of Chicago?

RESPONSE: No.

25. When and where did you refer to Ben George as a "gypsy" or "fucking gypsy," and who was present?

RESPONSE: Defendant denies that he ever said any such thing.

Dated: October 5, 2022

                                                           Respectfully Submitted,

                                                           THOMAS R. RAINES ATTORNEY AT LAW, LLC

                                                           /s/ Thomas D. Carroll
                                                           Thomas D. Carroll
                                                           Attorney
                                                           Thomas R. Raines Attorney at Law, LLC
                                                           20 N. Wacker Dr., Suite 556
                                                           T: (312) 750-1166
                                                           E: tcarroll@traalaw.com

## CERTIFICATE OF SERVICE

The undersigned, an attorney of record for the Defendants Sikanich and Gardiner, hereby certifies that on October 13, 2022 he served a copy of the Defendant Sikanich's Answers to Plaintiff's Interrogatories on all counsels of record via electronic mail.

                                                           /s/ Thomas D. Carroll
                                                           Thomas D. Carroll