IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Benjamin George,<br>    Plaintiff,<br><br>v.<br><br>City of Chicago, *et al*,<br>    Defendants. | Case No: 20-cv-6911<br><br>Hon. Judge Blakey<br><br>Hon. Mag. Judge Jantz<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF'S REPLY TO DEFENDANTS GARDINER AND SIKANICH'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL**

Plaintiff Benjamin George, by and through his undersigned counsel, respectfully submits this Reply in support of his Motion pursuant to Fed. R. Civ. P. 26 and 37 for an Order compelling Defendants Gardiner and Sikanich to respond to written discovery issued upon them, and in support thereof states as follows:

**INTRODUCTION**

Defendants concede the "basic timeline of events" as presented in Plaintiff's Motion to Compel. Dkt. 99, ¶ 1. They dispute the relevance of a number of requests yet fail to address the specific relevance arguments in the Motion beyond repeating their objections. They twice state that Plaintiff is on a "fishing expedition" and, at points, prematurely argue inadmissibility. To the contrary, Plaintiff has no difficulty describing the relevance of the sought-after records to his allegations; he did so in the Motion and elaborates further below. Also, while the evidentiary question is not before the Court, the disputed criminal records and ethics investigations of Defendants' misconduct are admissible under several theories.

Additionally, the Response identifies several requests for which Defendants agreed to provide supplemental responses during the Rule 37.2 conference, however, Plaintiff has not received those records and respectfully seeks an Order compelling their production. After

1

granting (and receiving) several extensions on responses and supplemental responses, and conferring in good faith pursuant to rule 37.2, Plaintiff is still without many pieces of existent, discoverable information, leaving him no recourse other than his Motion to Compel. The delays and non-disclosures support an award of Plaintiff's expenses.

## ARGUMENT

### I. THE CONTESTED REQUESTS

**A. Interrogatories to Defendants Gardiner and Sikanich**

1. Plaintiff's Interrogatory 4 to Defendant Gardiner and Sikanich.

This is one of the requests which Defendants have agreed to supplement but have yet to produce the records. Dkt. 99, p.3, ¶ 1. Following a productive 37.2 conference on December 8, 2022, Defendants agreed to supplement their responses by December 21. On December 22, they requested, and received, additional time until December 28. When no responses were received after the 28th, this Motion became necessary. Plaintiff notes that Defendants could have supplemented their responses at any point during the pendency of this Motion, per their agreement, thereby mooting at least some of these issues. They have not done so.

2. Plaintiff's interrogatory 7 to Defendants Gardiner and Sikanich.

This interrogatory sought information regarding Defendants prior arrests, and they have objected, in part, based on Fed. R. Evid. 609. As argued in the Motion, the standard here is relevance, not admissibility. Fed. R. Civ. P. 26(b). Defendants' only salient argument is that request intrudes upon their privacy where "their conduct on the day in question is all that is at issue." Dkt. 99, p. 3-4. It is simply not true that the Defendants' conduct on one day is all that is at issue. The key events in this case occurred on August 19, 2019, but the wrongful criminal charges against Plaintiff were not terminated in his favor until September 5, 2019. While it is eminently likely that Defendants discussed the events of August 19 between that date and

2

Plaintiff's court date, they refuse to supply that information. Moreover, by Defendants' logic, character evidence would never be discoverable or admissible since it establishes that a party behaved a certain way prior to the date of injury. Defendants' habits, motives, mental states, and modus operandi are relevant issues and necessarily involve the discovery of records and information in existence prior to August 19, 2019.

Defendant Sikanich offers no response to the argument that records of his arrest and prosecution for impersonating a police officer are relevant based on the similarity to the instant case, where it is alleged that Sikanich surveilled Plaintiff's home, interrogated Plaintiff's roommate, and engaged in a conspiracy with the police to maliciously prosecute Plaintiff.

3. Plaintiff's Interrogatory 12 to Defendants Gardiner and Sikanich.

Defendants simply refuse to answer this interrogatory, however, the relevance of their non-privileged communications regarding the direct subject matter of the case is beyond dispute. Defendant's Response states, "Defendants are probably not capable of relating every non-privileged conversation they may have had between the time of Benjamin George's arrest and the present regarding his arrest or the instant lawsuit." Dkt. 99, p. 4, ¶ 3. In other words, because they "probably" cannot describe "every" responsive communication, they excuse themselves of the good faith effort to describe *any* of those communications. This position is even stranger in light of this comment in Defendants' Response:

> Based on the Motion, it sounds as if Plaintiff wishes to know things like whether the Defendants discussed the day's events with any Ward office employees on the day in question, which is plainly a much narrower and more appropriate inquiry than a request asking them to recount every conversation or communication they've had on the subject of this lawsuit or its subject matter over nearly 4 years. *Id.*

If Defendants can readily admit that discussions of Plaintiff's arrest and prosecution with "Ward office employees" is an "appropriate inquiry," the glaring question before the Court is why Defendants have refused to provide even a partial response months after receiving this

3

interrogatory (notwithstanding mutual extensions). To be clear, Plaintiff's request covers more than Ward employees, but reaches any individual with whom Defendants had a non-privileged discussion regarding the subject of this case. Those individuals are potential witnesses with personal knowledge of Defendants' statements, conduct, mental states, and other unknown factual details surrounding Plaintiff's allegations.

Finally, Defendants express perplexity whether the interrogatory asked for written as well as non-written communications; it seeks both. Plaintiff did not "assert" that he "had not asked for written communications." *Id.* Where the Motion stated, "After objections of breadth and relevance, Defendants stated that they had no written communications, which was not what the interrogatory asked," the point was that the interrogatory sought *both* written *and* unwritten communications. Dkt. 93, p.5. Therefore, Defendants' original interrogatory response answered a narrower question than was asked: "Notwithstanding the objection, Defendant is not in possession, custody or control of any non-privileged documents reflecting a **written communication** regarding the lawsuit or Benjamin George other than what has been produced" (emphasis added). Dkt. 93-4, p. 5. To reiterate, the interrogatory requested verbal and written communications and Defendants refuse to produce either. If Defendants cannot recall specific dates and times, they can still identify individuals, date ranges, and subject matter.

    4.   <u>Plaintiff's Interrogatory 23 to Defendants Gardiner and Sikanich</u>.

This is another request which Defendants agreed to supplement but have yet to produce the records as discussed regarding Interrogatory 4, *supra*.

    5.   <u>Plaintiff's Interrogatory 24 to Defendant Gardiner</u>.

Defendant Gardiner refuses to answer and does not substantively respond to Plaintiff's explanation of relevance. Both from the public record and through evidence discovered in this matter, Plaintiff knows that Defendant Gardiner and his agents both surveil and confront perceived

4

critics and political opponents in the 45th Ward, using social media to gather and disseminate information. Defendants followed a broad practice of retaliation and responded to a variety of innocent conduct by improperly initiating police action or engaging in quasi-police actions themselves. About six weeks after Defendants targeted Plaintiff Ben Geroge, Defendants improperly accessed and caused to be published on social media old criminal records pertaining to James Suh, in order to retaliate against him for organizing a protest (Mr. Suh has been deposed in this matter).[1] In 2021, another critic of Gardiner reported a confrontation following critical social media posts that the small business owner "thought would come to blows."[2] This past November, Defendant Gardiner was filmed harassing volunteers from an opponent's political campaign, triggering another Board of Ethics investigation.[3] Defendants mention in their response that it is "curious" for Plaintiff to bring up Fed. R. Evid. 404(b), stating "it is not at all clear why monitoring one's critics on social media would be deemed a crime or wrong in keeping with that rule." In reply, where Defendants' use of social media to monitor critics has often led them to take further retaliatory steps, such as in-person surveillance and direct confrontation, those incidents display strikingly similar motive, intent, and plans as the instant case, and these are just some permitted uses of character evidence under 404(b). It bears repeating that the question at this stage is relevance not admissibility, but it should be clear why these fertile sources of information are likely to lead to admissible evidence.

Furthermore, as stated in Plaintiff's Motion, Defendant Gardiner's use of social media to monitor his critics is relevant to the disputed issues of whether his actions complained of in this

---

[1] *Suh v. Gardiner*, 2021-CH-05551 (filed November 2, 2021, Circuit Court of Cook County).
[2] Ariel Parella-Aureli, "Ald. Jim Gardiner Used His Power To Seek Revenge Against Critics, New Texts Show," September 10, 2021, https://blockclubchicago.org/2021/09/10/ald-jim-gardiner used-his-power-to-seek-revenge-against-his-critics-new-texts-show/ (last visited February 1, 2023).
[3] Heather Cherone, "Chicago Ethics Board Asks Watchdog to Probe Ald. Gardiner for Harassing Opponent's Volunteers," January 24, 2023, https://news.wttw.com/2023/01/24/chicago-ethics-board-asks-watchdog-probe-ald-gardiner-harassing-opponent-s-volunteers (last visited February 1, 2023).

case were within his scope of employment and undertaken under color of law. Dkt. 93, p. 6.

### B. Requests for Production to Defendants Gardiner and Sikanich

1. <u>Plaintiff's RFP 2 to Defendants Gardiner and Sikanich</u>.

   This is another request which Defendants agreed to supplement but have not.

2. <u>Plaintiff's RFP 3 to Defendants Gardiner and Sikanich</u>.

   This is another request which Defendants agreed to supplement but have not.

3. <u>Plaintiff's RFP 5 to Defendants Gardiner and Sikanich</u>.

Defendant Sikanich argues in his Response that documentary evidence of his criminal conviction would be inadmissible at trial, which is not a rebuttal of relevance. As to relevance, he says the records, "have nothing to do with the subject matter of this lawsuit." Dkt. 99. The subject matter of this lawsuit includes allegations of official misconduct that shock the conscience and violate the Constitution. The Cook County State's Attorney is prosecuting Defendant Sikanich for different official misconduct occurring closely in time to the allegations of this case. The similarity creates a strong likelihood that records of the criminal case would lead to valuable information regarding Defendant Sikanich's tenure as Ward Superintendent, which in turn might shed light on the extraordinary actions Defendants took to prosecute Plaintiff for finding a phone.

4. <u>Plaintiff's RFP 7 to Defendants Gardiner and Sikanich</u>.

Defendant Gardiner's Response does not address Plaintiff's point that the five screenshots of text messages produced appear to be truncated. Though, neither Defendant objects to Plaintiff's requests for full descriptions of the searches performed. Plaintiff still desires a description of those searches. If Defendant Sikanich's phone – the phone at the center of this case – is in the possession of Defendant City, Plaintiff requests that Defendant state specifically when they turned the phone over and to whom they turned it over, so that Plaintiff may send appropriate subpoenas or discovery requests to the person(s) in question.

    5.   <u>Plaintiff's RFPs 8 and 10 to Defendants Gardiner and Sikanich</u>.

Records of Chicago Board of Ethics and Cook County Democratic Party investigations into both Defendants are plainly relevant. Defendants characterize this request as a "fishing expedition" because the investigations are not necessarily limited to Plaintiff's allegations. First, Plaintiff has no way of knowing whether these investigations have reached his allegations because Defendants will not produce or describe records in their possession. Further, even investigations into other matters are likely to lead to admissible evidence regarding Defendants' use of their governmental authority. How Defendant Gardiner runs the office; how frequently Defendant Sikanich finds himself circling residents' homes; how frequently Defendant Gardiner travels around the Ward on quasi-police business (as he did in the instant case confronting Plaintiff's room mate Robert Cantrell at his home); all of this is relevant. Dkt. 93-4, p. 4 (Defendant Gardiner admitting to going to Plaintiff's house on August 19, 2019 and "encouraging Cantrell to convince his roommate to return Sikanich's phone").

Finally, these records would almost certainly pertain to scope of employment and color of law issues which remain disputed.

    6.   <u>Plaintiff's RFP 9 to Defendants Gardiner and Sikanich</u>.

Defendants refuse to respond for "the same reasons" as RFP 8 and 10, stating further that records of the FBI investigation would be "incredibly sensitive." Dkt. 99, p. 6. As such, Defendants do not meaningfully rebut Plaintiffs' position that documents relating to the FBI investigation are relevant where Plaintiff has alleged shocking misuse of their governmental authority. With Defendants refusing to respond, Plaintiff does not know whether either Defendant has discussed the events of August 19, 2019 with the FBI; whether the FBI is investigating other instances where Defendants initiated police investigations and prosecutions for personal reasons; when exactly either Defendant became aware of FBI investigations and

whether that might shed light on their extreme actions regarding the lost cell phone (which presumably contained evidence of interest to the FBI); or any number of other specific details which go to the proof of his claims and the context of Defendants' tortious conduct.

    7. <u>Plaintiffs RFP 14-18 to Defendants Gardiner and Sikanich</u>.

Defendants state "they have done nothing to warrant such undue suspicion" that they have not produced all of their electronic communications regarding the subject of this lawsuit. Dkt. 99. Plaintiff's suspicions that responsive records exist and have not been produced are warranted by the fact that Defendants' responses are riddled with gaps. Neither Defendant is willing to directly respond to requests which encompass those first communications with Defendant Officers that set these events in motion. For example, Interrogatory 10 asked Defendant Gardiner to identify Chicago Police Officers with whom he had any contact on August 19, 2019. Dkt. 93-4, p.4. He responded only that he called Defendants Corona and Palka at 6:30pm and 6:55pm, respectively, to "thank [them] for [their] assistance in recovering the phone." *Id.* These texts imply at least one earlier conversation regarding the phone – otherwise, how did Defendant Gardiner know these particular officers were involved? Did he already have their phone numbers?[4] Defendant Palka texted Defendant Gardiner, "your superintendent [Defendant Sikanich] told me to give you a call," but Defendant Sikanich chose not to describe that conversation with Defendant Palka in response to Interrogatory 12.

Defendant Gardiner had a text conversation with Robert Cantrell's supervisor in the Chicago Fire Department, Jim McKeag. Dkt. 93-4, JG 1-2. Defendant Gardiner said, "We called off the dogs on yr guy," [sic] to which Mr. McKeag replied, "I don't know what that means Jimmy. He didn't do anything." *Id.* At his deposition, Mr. Cantrell testified that Mr. McKeag

---

[4] Presumably he did not, since Defendant Gardiner also answered the question, "Did you personally know any of the police officers of the 16h District police station prior to August 19, 2019?" by saying the only officers he was acquainted with are non-parties. Dkt. 93-4, p. 5.

later assured him not to worry about this incident. The evidence suggests at least one telephone, or in-person conversation took place wherein Defendant Gardiner discussed the events of August 19 with Jim McKeag – and Defendant Gardiner refuses to fill in that information.

In another example, both Plaintiff and Julian Devan have testified to Defendants' presence at the 16th District police station on the evening of August 19, 2019, yet neither Defendant describes any in-person communications with any officers at that time. Also, Defendant Gardiner was asked if any of his employees had interactions with the police, with one obvious answer being Defendant Sikanich, and he answered, "Not to Defendant's knowledge." Dkt 93-4, p.6.

These types of inconsistencies are to be expected where a party is selectively answering questions and withholding documents based on their own private criteria, irrespective of the duties spelled out in the Federal Rules of Civil Procedure.

## II. DEPOSITION SCHEDULING

It is true that Plaintiff has not issued Notices of Deposition to Defendants Gardiner and Sikanich which they then ignored. As is the standard practice – in fact, the practice employed with the other parties in the case – both Plaintiff and an opposing counsel have asked Defendants Gardiner and Sikanich for their deposition availability. For their part, Defendants state that they have never "refused to provide available dates." Dkt. 99, p.2. They may not have ever refused – but they also have never provided the dates. On November 2, 2022, in response to counsel for Defendant Officers Corona and Ing, counsel for Defendants Gardiner and Sikanich stated he would provide his clients' availability through the end of the year, and never followed up. In Defendants' Response, he mentions an agreement from 37.2 to provide dates that *did not* work – but Defendants did not do that either.

The implication in Defendant's Response ("neither Gardiner nor Sikanich has ever suggested that they would not attend a noticed deposition") is that Plaintiff ought to pick dates at

9

random. Out of respect for Defendant Gardiner's aldermanic responsibilities, and Defendant Sikanich's other pending legal matters, this seemed an inefficient course of action. Plaintiff would still request that this Court instruct Defendants to provide three separate dates between February 9 and February 23, 2023.

### III. DEFENDANTS HAVE NOT MET THEIR BURDEN

The "burden rests upon the objecting party to show why a particular discovery request is improper." *Clark v. Ruck*, 2014 WL 1477925, at 2 (N.D. Ill. Apr. 15, 2014). Defendants have not met their burden. The only assert certain records have "nothing to do" with this case; Plaintiff has explained why they are wrong. Defendants rely heavily on *Trainauskus v. Jacob*, 21-cv 04311, 2023 WL 121818 (January 6, 2023), a case involving denial of visitation rights to a prisoner in the Illinois Department of Corrections. Dkt. 99, p.7-9. Defendants find the case "closely on-point" even though the facts and legal claims at issue are miles apart. Plaintiff has provided specific explanations of the relevance and proportionality of his requests for communications, social media records, criminal records, and disciplinary investigations to the claims and defenses of this case.

### IV. EXPENSES ARE APPROPRIATE UNDER 37(a)(5)(A)

Plaintiff is sympathetic to Defendants' counsel's health and family issues. Yet, regardless of the source of the delay, there has been unjustifiable nondisclosure, evasion, and delay here, supporting an award of expenses. *See Lorillard Tobacco Co. v. Elston Self Serv. Wholesale Groceries, Inc.* 259 F.R.D. 323, 328 (N.D. Ill. 2009).

**WHEREFORE**, Plaintiff respectfully renews the detailed request for relief from his initial Motion. Dkt. 93, p. 15.

| | |
|---|---|
| Joseph DiCola<br>First Defense Legal Aid<br>601 S. California Ave.<br>Chicago, IL 60612<br>P: 708-967-3334<br>E: joseph@first-defense.org | Respectfully submitted,<br><br>/s/ Joseph DiCola<br>*One of Plaintiff's Attorneys* |

## CERTIFICATE OF SERVICE

      I, Joseph DiCola, an attorney, hereby certify that I served a copy of this document on February 1, 2023 on all counsel of record by filing it with the Court's CM/ECF system, which generates electronic notice to counsel.

      Respectfully submitted,

      /s/ Joseph DiCola
      *One of Plaintiff's Attorneys*